# UNITED STATES DISTRICT COURT

# DISTRICT OF DELAWARE

| | |
|---|---|
| TERRY BLASINGAME, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   vs.<br><br>MALIBU BOATS, LLC, a Delaware Limited Liability Company; and MALIBU BOATS, INC., a Delaware Corporation,<br><br>     Defendants. | Civil Action No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>DEMAND FOR A JURY TRIAL |

I.      **INTRODUCTION**

1.      Plaintiff Terry Blasingame ("Plaintiff") brings this action individually and on behalf of all persons in the United States, and in the alternative on behalf of all persons in the state of California, who purchased or leased a 1986–2002 Sunsetter; 1989–1994 Euro-f3 Sunsetter; 1990–1993 Mystere 215LX Euro-f3; 1993–1998 Echelon LX; 1995–2014 Response LX; 1998–2003 Sportster LX; 1999–2006 Sunsetter LXi; 2002–2007 Sunsetter (23) XTi; 2003–2008 Sunsetter 21 XTi; and 2003–2011 Response LXi ("Class Vehicles") against Defendants Malibu Boats, LLC ("MBL") formerly known as Malibu Boats West, Inc., and Malibu Boats, Inc. ("MBI", and together with MBL, "Defendants").  The allegations herein are based on personal knowledge as to Plaintiff's own conduct and as to other matters based on an investigation by counsel, including analysis of publicly available information.

2.      This is a consumer class action concerning the misrepresentation of material facts and the failure to disclose material facts and safety concerns to consumers.

3.      Defendants manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles were being sold with a safety defect that materially affects the vehicles' ability to operate as intended and to provide safe and reliable transportation.  Instead, Defendants sold the vehicles with seating capacities exceeding the capacities that were in fact safe by placing a portion of the seats in the Class Vehicles in a portion of the boats that was easily swamped by water and where any seated passengers could be injured or pulled from the boat while it is in motion (the "Defect"). Defendants refer to this as a "Bow Seating Hazard" in a Service Advisory issued in July 2023, which informed dealers of the Class Vehicles that "Malibu now prohibits passengers in the bow area…while in motion. This reduces the total capacity of these models by two (2) passengers."

1

4.      As early as 1996, Defendants knew of the existence and severity of the Defect. However, Defendants failed to disclose the Defect, and instead touted the quality, durability, reliability and performance of the Class Vehicles via its public statements and marketing campaigns. Defendants also advertised that the vehicles were of high quality, with exceptional performance and seating capacity that was safe for passengers to use that the vehicles did not in fact have due to the Defect.

5.      Discovery will show that the Defect is the result of defective design and/or manufacturing, as well as poor quality-control procedures which fail to prevent such defectively manufactured and/or designed components from being installed in the Class Vehicles.  The Defect causes passengers in seats located in the bow of the Class Vehicles to be dangerously exposed to water swamping over the side of the boats and puts them in danger of being pushed overboard.

6.      The Defect is inherent in each of the Class Vehicles and was present at the time of sale or lease to each Class Member.  Each of the Class Vehicles has identical or substantially similar bow design to which Defendants did not make changes over time.

7.      The Defect has no repair. Instead, Plaintiff and Class Members have paid for Class Vehicles which do not have the seating capacity advertised and cannot use the seats in the bow due to the associated safety risk of the Defect.

8.      The Defect decreases the value of the Class Vehicles, because there is no permanent repair, and endangers any passenger who sits in the bow area of the boats.  The Class Vehicles cannot be operated safely with passengers in the bow area seating.

9.      Despite knowing that the Class Vehicles are defectively designed and/or manufactured with a defect that causes the boat to be swamped on the bow, endangering passengers seated there, Defendants failed to disclose such information about the Defect to the public until

July 18, 2023 and has further failed to offer a permanent remedy for the Defect. Rather, despite knowing of the Defect since at least 2006, Defendants represented that the Class Vehicles were high-quality and reliable and the seats in the bow were safe to be used.  Defendants' intentional non-disclosure and omission of the Defect and its associated safety risk artificially inflated the purchase and lease prices for the Class Vehicles. Had Defendants disclosed the Defect, Plaintiff and the Class Members would not have purchased their boats and would have paid less for them.

10.     Federal law imposes a duty upon the manufacturers of recreational vessels such as the Class Vehicles, including Defendants, to ensure that, before selling the boats, they function properly, safely, and conform to all United States and state regulations.  Federal law specifically prohibits the manufacture, construction, assembly, or sale of any recreational vehicle unless it does not contain a defect which has been identified as creating a substantial risk of personal injury to the public. *See* Federal Boat Safety Act of 1971, 46 U.S.C. § 4307(a).  Further, when a company provides a warranty, it must honor that warranty.  Defendants deceived their customers when they promised to stand by their warranties issued to purchased boats when they had no intent to do so, when they sold vehicles that were not capable of providing safe transportation and when they failed to disclose the Class Vehicles' safety defect.

11.     Plaintiffs and members of the Classes reasonably expected that Defendants' representations—specifically that the Class Vehicles were properly engineered and equipped to handle ordinary, recreational boating for which they were advertised and that all of the seats within the Class Vehicles could be occupied safely by passengers—would be true and complete and would not omit material information. In reality, however, Defendants concealed and failed to disclose to Plaintiff and the Class members the Defect and its significant safety

risk, including the risk of passengers being swept overboard as the bow swamps and suffering serious injury or death.

12.     Based on their experience in recreational boating design and manufacture, including pre-production testing, the review of any processor corporations design files, design failure mode analysis, warranty claims, ongoing communications with dealers and customers including complaints, as well as other sources of internal data not available to consumers, Defendants were aware of the Defect in Class Vehicles but concealed the Defect from Plaintiff and Class Members.  Indeed, despite being aware of the Defect, Defendants knowingly, actively and affirmatively omitted and/or concealed the existence of the Defect to increase profits by selling additional Class Vehicles at inflated costs to Plaintiff and members of the Class.

13.     Defendants have exclusive knowledge of, and has been in exclusive possession of, information pertaining to the Defect, which was material to Plaintiffs and Class Members, who could not reasonably know of the Defect prior to Defendants' announcement in July 2023. Defendants had not disclosed the Defect to the purchasers or lessees, like Plaintiffs, at the point of purchase or through advertisements or marketing materials. Such full and complete disclosures would have influenced Class Members' purchase decisions and the purchase price they paid. Under all circumstances, Defendants had a duty to disclose the latent Defect at the point of sale of the Class Vehicles. Instead, Defendant failed and refused to disclose the Defect and provide a meaningful remedy to those who have suffered economic harm as a result of the Defect.

14.     The Defect is latent and presents substantial safety risk to passengers.  It renders the Class Vehicles unfit for the ordinary and advertised use of providing safe, recreational boating transportation, and further prevents Plaintiff and Class Members from enjoying the full seating

capacity of their boats.  As such, the Defect presents a breach of the implied warranty of merchantability.

15.     Additionally, because Defendants concealed and failed to disclose the Defect, owners have suffered and continue to suffer substantial damages and should be entitled to the benefits of all tolling and estoppel doctrines.

16.     As a direct and proximate result of Defendants' concealment of, and failure to disclose, the Defect, Plaintiffs and Class members: (1) overpaid for the Class Vehicles because the Defect significantly diminishes the value of the Vehicles; (2) have vehicles that cannot seat the number of passengers safely in the advertised capacity;  (3) have vehicles that have a lower resale value; and (4) are not able to use their Vehicles for their intended purpose and in the manner Defendants advertised.

17.     Defendants provide warranty coverage for Class Vehicles under one or more warranties.  For illustrative purposes, Defendants currently offer a five-year full factory warranty for every vehicle.

18.     Defendants breached their express and implied warranties through which Defendants promised to, *inter alia*, provide Class Vehicles fit for the ordinary and advertised purpose for which they were sold.  Because the Defect was present at the time of sale or lease of the Class Vehicles and concealed from Plaintiffs and members of the Classes, Defendants were required to compensate the Plaintiff and members of the Class under the terms of the warranties.

19.     Defendants' decision to sell the Class Vehicles without disclosing their specialized knowledge of the Defect also violates consumer state laws.

20.     Plaintiffs and Class members have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known of the Defect at the point of sale.  Plaintiffs and Class members have consequently suffered ascertainable losses and actual damages. Moreover, Plaintiffs seek equitable remedies, including *inter alia*, an order that the Class Vehicles are defective and injunctive relief from Defendants in the form of restitution.

## II.     **JURISDICTION AND VENUE**

21.     This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than Defendants, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

22.     In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.  Further, this Court may also exercise supplemental jurisdictions over Plaintiff's Magnusson-Moss Warranty Act claims.

23.     This Court has personal jurisdiction over Defendants because they are incorporated in the State of Delaware; have consented to jurisdiction by registering to conduct business in the state; maintain sufficient minimum contacts in Delaware; and otherwise intentionally avails itself of the markets within Delaware through promotion, sale, marketing and distribution of their vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as Defendants are "at home" in Delaware.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiffs may properly sue Defendants in this District, Defendants' state of incorporation.

## III.   THE PARTIES

**Plaintiff Terry Blasingame**

25.     Plaintiff Terry Blasingame is a citizen of California, domiciled in Riverside County, California.

26.     On or about April or May 2005, Plaintiff purchased a new 2005 Malibu Sunsetter LXi from Paradise Watersports, an authorized dealer of Malibu-branded boats located in Lake Elsinore, California.  She paid over $39,000 for the boat, which included a charge for the extra seating capacity of the boat of up to ten.  Two of those seats were located in the bow of the boat.

27.     Plaintiff purchased her Class Vehicle primarily for personal, family, or household use.

28.     Passenger safety was an important factor in Plaintiff Blasingame's decision to purchase the boat. Before making her purchase, Plaintiff visited a boat show for research purposes, on or about December 2004. At the boat show, she saw various boats, including various Malibu-branded boats, and spoke with representatives from or authorized by "Malibu Boats." It is unknown which Defendant's representatives were at the boat show. Plaintiff selected and purchased her Class Vehicle because the vehicle was represented to be and was marketed as a high-quality vehicle capable of providing safe transportation.  The purchase was in part on the advertised safety and qualify of the vehicle, as well as its ability to seat ten. At this boat show, Plaintiff Blasingame placed an order with the representative from or

7

authorized by "Malibu Boats," who arranged to have the sale take place through the authorized dealership, Paradise Watersports.

29.     None of the information provided to Plaintiff Blasingame disclosed any defects in the boat.  Defendants' omissions were material to Plaintiff Blasingame.

30.     Had Defendants disclosed the Defect before Plaintiff Blasingame purchased her boat, she would have seen such disclosures and been aware of them.  Indeed, Defendants' misstatements and omissions were material to Plaintiff Blasingame.  Like all members of the Class, Plaintiff Blasingame would have not purchased her Class Vehicle, or would have paid less for the vehicle, had she known of the Defect.

31.     In addition, at the time Plaintiff Blasingame purchased her vehicle, and in purchasing her vehicle, she relied upon representations from Defendants and its authorized representatives, as well as the authorized dealership, which she saw during the boat show that the vehicle was fully functional, safe, and capable of seating ten. Plaintiff Blasingame also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of 10 persons, including room for 4 persons in the bow area.  *See* Exhibit A, Excepts from Owner's Manual.  Plaintiff Blasingame relied on those representations and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid less for it.

32.     At all times during their ownership of the vehicle, Plaintiff Blasingame properly maintained and serviced the Class Vehicle according to the recommended maintenance guidelines.

33.     Soon after July 18, 2023, Plaintiff Blasingame received a Safety Advisory from Defendant MBL, stating that MBL had determined that the seating of passengers in the bow

area of Class Vehicles, including Plaintiff Blasingame's vehicle, was unsafe while the vehicle was in motion and potentially deadly due to the potential for "bow swamping."  *See* Exhibit B.  Plaintiff Blasingame immediately stopped allowing anyone to sit in the bow seating area of her boat while it was in motion.  Accordingly, the seating capacity of Plaintiff Blasingame's boat while in motion is reduced from ten (10) to six (6).

34.    To date, Plaintiff Blasingame has received no notification from Defendants about any potential repair or modification for the Defect.

35.    As a result of the Defect, Plaintiff Blasingame no longer has a vehicle capable of seating ten while the boat is in motion and lost confidence in the ability of her boat to provide safe transportation for its ordinary and advertised purpose.  Plaintiff Blasingame will be unable to rely on future advertising of labeling of the Class Vehicle or other Malibu Boats-branded vehicles, and so will not purchase another Class Vehicle although she would like to do so.

36.    At all times, Plaintiff Blasingame, like all Class Members, has attempted to use her boat in a foreseeable manner and in a manner in which it was intended to be used.

**Defendants**

37.    Defendant Malibu Boats, LLC, is a Delaware limited liability company with its principal place of business located at 5075 Kimberly Drive, Loudon, Tennessee.  MBL is registered to do business in the State of Delaware and California.  MBL is owned in part by MBH and is the successor in interest to Malibu Boats West Inc., the original manufacturer of Plaintiff Blasingame's Class Vehicle.  MBL is a "mere continuation" of Malibu Boats West, as found by a jury and upheld on appeal in *Batchelder v. Malibu Bost West, Inc. See* Exhibit

C.[1] MBL is the manufacturer of Class Vehicles beginning in the 2006 model year, using designs from Malibu Boats West Inc. MBL maintains manufacturing facilities in Tennessee and Australia. MBL is also the warrantor of the Class Vehicles, along with MBI.

38.     Defendant Malibu Boats Inc. is a Delaware corporation with its principal place of business located in 5075 Kimberly Drive, Loudon, Tennessee.   MBI advertises and distributes Malibu-branded and Cobalt-branded recreational boats, among others. It also holds itself out as a warrantor of the Class Vehicles.  *See* https://www.malibuboats.com/warranty. MBI is a publicly traded company and is the brand-manager for Malibu-branded boats.

39.     At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing and selling recreational boats in California, Delaware and throughout the United States of America.

40.     In order to sell Malibu-branded boats to the general public, Defendant MBI enters into agreements with dealerships who then authorized to sell Malibu-branded vehicles such as the Class Vehicles to consumers such as Plaintiff. These agreements also designated the authorized dealerships to conduct warranty and recall repairs on MBI and MBL's behalf. All service and repairs performed at an authorized dealership are also completed according to Defendants' explicit instructions, issued through service manuals and technical service bulletins.  Per the agreements between Defendants and the authorized dealers, consumers such as Plaintiff can receive services under Defendants' issued warranties at dealer locations that

---

[1] Evidence presented at trial showed that all of the shareholder remained the same, the two companies shared the same CEO, kept virtually all of the same employees and manufactured boats using the same designs. *Id*. At 3. One former executive even testified that they were the "same company." *Id*. At 4.

are convenient to them. Defendants also produce marketing materials for the Class Vehicles and provide them to the dealerships to be distributed to consumers such as Plaintiff.

41.    MBL also develops and disseminates the owners' manuals, in coordination with MBH and MBI.

42.    MBL and MBI warrant the Class Vehicles and are the drafters of those warranties, the terms of which unreasonable favor MBL and MBI. The warranties given by Defendants MBL and MBI are presented on a "take it or leave it" basis and Plaintiff and consumers are not given a meaningful choice in terms of the warranties provided to them.

## IV.    FACTUAL ALLEGATIONS

43.    Defendants designed, assembled, manufactured, marketed, distributed, and/or sold the Class Vehicles.  Their revenues are over $1 billion a year from these activities and tout themselves as being "recognized for having world-class innovation and operational excellence" and that being committed "to delivering the best on-water performance experience has drive Malibu Boats to be the largest and most successful producer of inboard towboats in the world."  As a result, Defendants acknowledge that "[t]oday, 5 of every 10 towboats sold worldwide is produced by Malibu."[2]

44.    Defendants have numerous obligations under federal and state laws, including: (1) ensuring that their products are not unreasonably dangerous, including a continuing duty to monitor their products for safety issues and hazards; (2) that their products conform to design specifications; (3) that they are safe for their intended and foreseeable use; (4) that they comply with federal, state, and local industry standards; (5) that their customers are educated about the proper use of their boats and how to spot problems that could pose a

---

[2] *See* https://www.malibuboats.com/discover-malibu/story/.

danger; and (6) that their customers are warned about any danger or hazard arising from the use of Malibu boats.

45.     One of the hazards of using a recreational boat such as the Class Vehicles is when the freeboard of the boat is lower than the wake created by the boat.  The freeboard is the distance between the front tip of the boat, or the bow, and the surface of the water. When the freeboard of the boat is lower than the water, water enters the boat and causes swamping, also known as bow swamping.  In this situation, the boat takes on a large amount of water, which results in the bow itself going under the surface of the water.

46.     The design of the Class Vehicles is such that the freeboard of the boats can be lower than the wake created by the Class Vehicles.  Specifically, if there are passengers in the bow area where Defendants have installed seats, the Class Vehicles can and do experience bow swamping.  Moreover, this occurs during the normal, foreseeable, and indeed, intended use of the Class Vehicles, including when the boat crosses its own wake at low speeds.

47.     Each of the Class Vehicles is designed to have a low-slung bow, which is a bow which is low to the water.  Further, their bows angle downwards towards the water.  This design decision, which discovery will show was made for aesthetic reasons, has major safety implications about which Defendants failed to warn Plaintiff and Class Members prior to July 18, 2023.

48.     Defendants, as experienced recreational boat designers, manufacturers and distributes, knew of this Defect and its associated safety risk, that passengers could be injured or swept overboard, since at least 1996.  Defendants should have known about the Defect and its associated safety risk from the time of their design and manufacture of the earliest of the Class Vehicles, in 1986.

49.     However, at no time prior to July 18, 2023, did Defendants warn Plaintiff, Class Members or the public of the Defect, through any marketing campaign, their appearances at boat shows, via communications sent to Class Vehicle owners, or through any other type of outreach.

50.     Following a loss at trial in Georgia regarding the wrongful death of a 7 year-old child who was seated in the bow of one of the Class Vehicles when he was tragically swept overboard, Defendants finally acknowledged that they had known all along: that the Class Vehicles all suffered from the Defect and that Defect had an associated safety risk that could cause serious injury or death.

51.     As described by Defendants:

A tragic incident occurred with a Malibu Response LX boat. A passenger was washed out of the bow seating area during a bow swamping incident (when water comes over the front of the boat). The passenger was then hit by the propeller and died. The accident involved a 2000 model year Response LX boat that was manufactured by Malibu Boats West, Inc. ("West")…

To prevent this from occurring again, Malibu now prohibits passengers in the bow area of similar boats while the boat is in motion. This reduces the boat capacity by two (2) passengers. Malibu will provide updated capacity labels and warnings stickers reflecting this new safety policy.

Ex. B.

52.     Defendants further indicated that tens of thousands of boats manufactured, designed, distributed, warranted, and sold by Defendants were substantially similar to the Malibu Response LX boat to warrant being included in the new seating prohibition. Specifically, Defendants stated:

53. Malibu has determined that the Response LX and similar models* designed by Malibu Boats West, Inc., may be particularly susceptible to this kind of accident. Therefore, for the following models, Malibu now prohibits passengers in the bow area while in motion:

• 1986 – 2002 Sunsetter

• 1989 – 1994 Euro-f3 Sunsetter

• 1990 – 1993 Mystere 215LX Euro-f3

• 1993 – 1998 Echelon LX

• 1995 – 2014 Response LX

• 1998 – 2003 Sportster LX

• 1999 – 2006 Sunsetter LXi

• 2002 – 2007 Sunsetter (23) XTi

• 2003 – 2008 Sunsetter 21 XTi

• 2003 – 211 Response LXi

* * *

*\* It is possible that a combination of design factors of the 2000 Response LX may increase the likelihood or severity of bow swamping incidents in certain conditions, and that these factors may be shared by other boats designed in a similar time period.*
*See* Ex. B (emphasis in the original)

54.     However, Defendants misleadingly attempted to distance themselves from previous knowledge of the Defect and its associated safety risk by falsely claiming that:

West is not, and has never been, a subsidiary of the Company but was a separate legal entity whose assets were purchased by Malibu Boats LLC in 2006. Malibu was not involved in the design and testing of this model and other models developed by the other company prior to 2006.

*Id.*

55.     However, this is false. "West" and MBL are, in fact, the same company, one that was reorganized in 2006 when a hedge fund purchased the company.  The two companies employed the same personnel, had the same chief executive officer, designed and produced

the same boats, kept the majority owners who became a director in the new company, and further kept of West's shareholders and owners. *See* Ex. C, 3-4.

56.     Defendants also characterized the new prohibition on seating in the bow area as a mere "inconvenience," thought one "important for your safety."

57.     At no time did Defendants acknowledge that: 1) they were well aware of the Defect by at least 1996; 2) that they failed to warn anyone about the Defect and its associated safety risk until after a child died as a result of the Defect *and* they lost at trial regarding that child's death; 3) that they had knowingly exposed tens of thousands of people to a high risk of serious injury and death; or 4) that they had overcharged tens of thousands of people for recreational boats that were not able to seat the number of people they had previously claimed the boats could hold.

## V.     TOLLING OF THE STATUE OF LIMITATIONS

### A.     Fraudulent Concealment

58.     As previously described, any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the nature of the Defect prior to this class action litigation being commenced.

59.     Defendants are and remain under the continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, and it poses a safety concern, and diminished the resale value of the Class Vehicles. As a result of the active concealment by Defendants, including their misleading July 2023 statements, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

60.     Defendants have known of the Defect in the Class Vehicles since at least 1996, and likely since 1986, and have concealed from, or failed to, notify Plaintiff, Class Members, and the public of the full and complete nature of the Defect.  Defendants continue to mislead Plaintiff and Class Members to this day regarding Defendants' conduct and knowledge of the Defect.

### B.     Estoppel

61.     Defendants were, and are, under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Vehicles.  Defendants actively concealed – and continue to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality and durability of the Class Vehicles.  Plaintiffs and Class members reasonably relied upon Defendants' knowing and affirmative representations and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

### C.     Discovery Rule

62.     The causes of action alleged herein did not accrue until Plaintiff and Class members discovered that their Class Vehicles suffered from the Defect.

63.     However, Plaintiff and Class members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – when Defendants began to acknowledge the existence of the Defect in July 2023.

64.     Even then, Plaintiff and Class members had no reason to know that the Defect and its associated safety risk were well-known to Defendants since at least 1996.  Not only did Defendants fail to notify Plaintiff or Class members about the Defect, Defendants have

tried to mislead Plaintiff and Class members about their knowledge of the Defect despite the fact that they were aware of the Defect and its associated safety risk for years prior to Plaintiff and Class Member's purchase of the Class Vehicles.

65.    Thus, Plaintiff and Class members were not reasonably able to discover the Defect until after July 2023, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, July 18, 2023.

## VI.    CLASS ALLEGATIONS

66.    Plaintiff brings this action pursuant to Rule 23(a), 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and as the following proposed classes:

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) that purchased or leased a Class Vehicle.

**California Sub-Class:**

All persons or entities that purchased or leased a Class Vehicle within California.

**CLRA Sub-Class:**

All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761 (d).

67.    Excluded from the Class are Defendants; their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Defendants; Defendants' dealers; Class Counsel and their employees; the judicial officers

and their immediate family members and associated court staff assigned to this case; and all persons within the third degree of relationship to any such persons.

68.     Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

69.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

70.     **Numerosity**.  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough that such joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, and/or control as well as from records kept by the Department of Motor Vehicles.

71.     **Commonality and Predominance**.  Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to the following:

a.     Whether Class Vehicles suffer from the Defect;

b.     Whether Defendants engaged in the conduct alleged herein;

c.     Whether the Defect constituted an unreasonable safety risk;

d.     Whether the Defect constitutes a material fact;

e.     Whether Defendants designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

f.     Whether Defendants designed, manufactured, marketed, and distributed Class Vehicles with the Defect;

g.     Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class Members;

h.     Whether Plaintiff and Class members overpaid for their Class Vehicles and/or did not receive the benefit of the bargain;

i.     Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles;

j.     Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

k.     Whether Defendants' alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

l.     Whether Defendants have been unjustly enriched under applicable state laws;

m.     Whether Defendant have violated its express warranties to Plaintiffs and Class members;

n.     Whether Defendants breached the implied warranty of merchantability pursuant to the laws governing each of the Sub-Class jurisdictions;

o.     Whether Defendants violated the consumer protection acts of California;

p.     Whether Defendants actively concealed the Defect in order to maximize profits to the detriment of Plaintiffs and Class members; and

q.    Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

72.    **Typicality**.  Plaintiff's claims are typical of the claims of the Class and Sub-Classes in the Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Defendants. The representative Plaintiff, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur loss of the benefit of their bargain. Rule 23(a)(3) of the Federal Rules of Civil Procedure: Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.  All claims seek recovery on the same legal theories and are based upon Defendants' common course of conduct.

73.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and their counsel.

74.    **Declaratory Relief**.  Rule 23(b)(2) of the Federal Rules of Civil Procedure: Defendants have acted or refused to act on grounds generally applicable to Plaintiff and Class members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

75.    **Superiority**.  Rule 23(b)(3) of the Federal Rules of Civil Procedure:  A class action is superior to any other available means for the fair and efficient adjudication of this

controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLASS ALLEGATIONS

**Nationwide Claims**

### FIRST CAUSE OF ACTION
**FRAUD BY OMISSION OR FRAUDULENT CONCLEALMENT**
**(By Plaintiff Blasingame, on her own behalf and on behalf of the Class, and against Defendants)**

76.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 above as if fully set forth herein.

77.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class, or in the alternative, on behalf of each of the State Sub-Classes, against Defendants.

78.    Defendants knew that the Class Vehicles suffered from an inherent Defect, were defectively designed and/or manufactured and were not suitable for their intended use.

79.    Defendants concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

80.     Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

      a.     Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

      b.     The omitted facts were material because they directly impact the safety of the Class Vehicles;

      c.     Defendants knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

      d.     Defendants made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

      e.     Defendants actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

81.     The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Whether a passenger can be seriously injured or swept overboard by bow swamping is a material safety concern for purchases of recreational boats. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

82.     Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendants'

omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendants' defective Class Vehicles.

83.     Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal their involvement and knowledge of the problem today.

84.     As a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

85.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT
**(By Plaintiff Blasingame, on her own behalf and on behalf of the Class, and against Defendants)**

86.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 above as if fully set forth herein.

87.     Plaintiff brings this count on behalf of herself and the Class or, alternatively, on behalf of all State Sub-Classes against Defendants.

88.     Defendants have received and retained a benefit from Plaintiff and all Class Members and inequity has resulted.

89.     Defendants have benefitted from selling and leasing defective boats whose value was artificially inflated by Defendants' concealment of the Defect, and Plaintiff and Class Members have overpaid for the boats and have been forced to pay other costs.

90.     As a result of its wrongful acts, concealments, and omissions of the defect in its Class Vehicles, as set forth above, Defendants charged higher prices for their boats than the boats' true value. Plaintiff and Class Members paid than higher price for their boats to Defendants' authorized distributors and dealers, which are in Defendants' control.

91.     All Class members conferred a benefit on Defendants.

92.     It is inequitable for Defendants to retain these benefits.

93.     Plaintiff and all Class members were not aware of the true facts about the Class Vehicles and did not benefit from Defendants' conduct.

94.     Defendants knowingly accepted the benefits of its unjust conduct.

95.     As a result of the Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages.

96.     Plaintiff do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

97.     Additionally, Plaintiff seeks injunctive relief to enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to acknowledge their role as manufacturer and distributor of the Class Vehicles as well as their knowledge of the Defect prior to the sale of any Class Vehicle.

Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**Individual Claims**

## THIRD CAUSE OF ACTION
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
15 U.S.C. § 2301
(By Plaintiff Blasingame, on her own behalf class, and against Defendants MBL and MBI)**

98.     Plaintiff repeats and re-alleges each and every allegation contained above in paragraphs 1 through 75 above as if fully set forth herein.

99.     This claim is brought on behalf of Plaintiff individually against Defendants MBL and MBL.

100.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

101.     Defendants MBL and MBL are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

102.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

103.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

104.     Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

105.     Defendants' express warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

106.    Defendants breached the implied warranty and the express warranty by virtue of the above-described acts.

107.    Plaintiff notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect.

108.    Defendants' breach of the implied warranty and express warranty deprived Plaintiff of the benefits of her bargain.

109.    Privity is not required here because Plaintiff is the intended third-party beneficiary of contracts between Defendants and its dealers, included the dealer from which Plaintiff purchased her Class Vehicle, and specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

110.    Defendants breached these warranties, as described in more detail above. Without limitation, the Class Vehicles contain a Defect that puts vehicle occupants' safety in jeopardy. The Class Vehicles share a common defect in that they are all designed with the same low bow, and manufactured with defective materials and/or with poor workmanship. Contrary to Defendants' representations about its vehicles, the Class Vehicles are defective in manufacture, materials and/or workmanship and are unsafe. The Class Vehicles share a common defect.

111.    Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Defendants have long been on notice of the claims of Plaintiff and has refused to provide a remedy.

112.    At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

113.    Plaintiff would suffer economic hardship if she returned her Class Vehicle but did not receive the return of all payments. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff has not re-accepted her boat by retaining it.

114.    Plaintiff provided notice to Defendants of their objectionable conduct on February 28, 2024.

115.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

116.    Plaintiff, individually seek all damages permitted by law, in an amount to be proven at trial.

**California Sub-Class Claims**

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE §§ 2313 and 10210**
**(By Plaintiff Blasingame, on her own behalf and on behalf of the California Class, and against Defendants MBL and MBI)**

117.    Plaintiff repeats and re-alleges each and every allegation contained above in paragraphs 1 through 75 above as if fully set forth herein.

118.    Plaintiff Blasingame (hereafter "California Plaintiff") brings this count on behalf of herself and the California Sub-Class against Defendant

119.    Defendants MBL and MBI are and were at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

120.    With respect to leases, Defendants are and were at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

121.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

122.    The Class Vehicles were manufactured and warranted in the Class Vehicles by Defendants and are covered by the express warranty.

123.    Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California state law.

124.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or

28

workmanship supplied by it during construction of the boat" for a period of three to five years. The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

125.    Defendants' Limited Warranty and other warranties regarding the Class Vehicles formed a basis of the bargain that was breached when California Plaintiff and members of the California Sub-Class purchased or leased the Class Vehicles with the Defect.

126.    California Plaintiff and members of the California Sub-Class experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform California Plaintiff and members of the California Sub-Class that the Class Vehicles defective and unsafe for the use for which they were sold.  There is no permanent repair for the Defect.

127.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles materials defects.

128.    Privity is not required here because California Plaintiff and members of the California Sub-Class are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

129.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect California Plaintiff and the members of the California Sub-Class. Among other things, California Plaintiff and members of the California Sub-Class did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the California Sub-Class.

130.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make California Plaintiff and the members of the California Sub-Class whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

131.    California Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, California Plaintiff and members of the California Sub-Class provided notice to Defendants of the breach of express warranties when they took their

vehicles to Defendant-authorized providers of warranty repairs.   Plaintiff Blasingame also provided notice to Defendants of its conduct by letter dated February 28, 2024.

132.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles.

133.    As a direct and proximate result of Defendants' breach of express warranties, California Plaintiff and members of the California Sub-Class have been damaged in an amount to be determined at trial.

134.    As a result of Defendants' breach of the express warranty, California Plaintiffs and California Sub-Class Members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIVIL CODE §§ 1792 and 1791.1, *et seq.***
**(By Plaintiff Blasingame, on her own behalf and on behalf of the California Sub-Class, and against Defendants MBI and MBL)**

132.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

133.    California Plaintiff brings this count on behalf of herself and the California Sub-Class against Defendants MBL and MBI.

134.    Defendants were and are at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

135.    Defendants provided California Plaintiff and the California Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

136.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

137.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing California Plaintiff and the California Sub-Class members with safe transportation. Instead, the Class Vehicles are defective.

138.    The Defect is inherent and was present in each Class Vehicle at the time of sale.

139.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, California Plaintiff and the California Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' cannot be used for their intended purpose, including the seating of passengers in the bow.

140.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### CAL. CIVIL CODE § 1750, *et seq.*
### (By Plaintiff Blasingame, on her own behalf and on behalf of the CLRA Sub-Class, and against Defendants)

141.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

142.    California Plaintiff brings this count on behalf of herself and the California Sub-Class against Defendants MBL and MBI.

143.    Plaintiff and CLRA Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

144.    The purchase and leases of Class Vehicles by Plaintiff and the CLRA Class Members constitute "transactions" as defined by the Cal. Civ. Code § 1761(e).

145.    The Class Vehicles constitute "goods" or "services" as defined by Cal. Civ. Code § 1761(a) and (b).

146.    Defendants' representations, active concealment, omissions, and failure to disclose the Defect and its associated safety risk violated California's Consumer Legal Remedies Act ("CLRA") in the following ways:

   a.    Defendants misrepresnted that the Class Vehicles had characteristics, uses or benefits they did not in fact have (Cal. Civ. Code § 1770(a)(5));

b.  Defendants mispresented that the Class Vehicles were of a particular standand, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.  Defendants advertised the Class Vehicles with the intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

d.  Defendants misrepresented that the Class Vehicles and warranties conferred or involved rights, remedies, or obligations that they did not (Cal. Civ. Code § 1770(a)(14); and

e.  Defendants misrepresneted that the Class Vehicles were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16).

147.  Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Vehicles, including Plaintiff.

148.  Defendants participated in unfair or deceptive trade practices that violated the CLRA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Defendants

systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the Defect in the course of their businesses.

149.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Vehicles.

150.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

151.    Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

152.    Defendants knew or should have known that their conduct violated the CLRA.

153.    Defendants were under a duty to Plaintiff and the CLRA Class Members to disclose the defective nature of the Class Vehicles because:

a.    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Vehicles;

b.    Defendants made partial disclosures about the safe seating capacity and quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and

c.    Defendants actively concealed the defective nature of the Class Vehicles from Plaintiff and CLRA Class Members at the time of sale and thereafter.

154.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

155.    The facts concealed or not disclosed by Defendants to Plaintiff and the CLRA Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Plaintiff and the Class members known that the Class Vehicles suffered from the Defect described herein, they would have not purchased or leased the Class Vehicles or would have paid less for them.

156.    Plaintiff and CLRA Class members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

157.    As of result of Defendants' misconduct, Plaintiff and the CLRA Class members have been harmed and suffered actual damages in that the Class Vehicles are defective and Plaintiff and the CLRA Class Members have overpaid for their Class Vehicles.

158.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the CLRA Class Members have suffered and will continue to suffer actual damages.

159.    Defendants' violations present a continuing risk to Plaintiff and the CLRA Class Members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

160.    Pursuant to California Civil Code § 1780, Plaintiff seeks an order enjoining Defendants from their unlawful practices described above and a declaration that their conduct violations the Consumer Legal Remedies Act, as well as statutory and actual damages, punitive damages, and reasonable attorneys' fees and costs of litigation.

161.    On February 28, 2024, pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent a letter by mail to Defendants informing them of their violation of the Consumer Legal Remedies Act and describing the steps to take to correct their unlawful business practices. Defendants have not responded with any such changes.

162.    Pursuant to the provisions of Cal. Civ. Code § 1780(d), Plaintiff attached an Affidavit of Venue as Exhibit D.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. CIVIL CODE § 17200, *et seq.***
**(By Plaintiff Blasingame, on her own behalf and on behalf of the California Sub-Class, and against Defendants)**

163.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

164.    California Plaintiff brings this count on behalf of herself and the California Sub-Class against Defendants.

165.    California Business & Professions Code § 17200 prohibits "unfair competition," including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Defendants engaged in conduct that violated each of this statute's three prongs.

166.    Defendants committed an unlawful business act or practice in violation of Cal. Bus. Prof. Code § 17200, *et seq.*, by systematically breaching its warranties, both express

and implied, by violation the CLRA, the Song-Beverly Consumer Warranty Act, and the Magnusson-Moss Warranty Act as alleged throughout the Complaint.

167.    Defendants committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., because the acts and practices described herein, including but not limited to selling vehicles with seating Defendants knew or should have known was unsafe to use while the vehicles were in motion, as well Defendants failure to provide any remedy or compensation to alleviate the effects of the Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and California Class Members. Defendants' acts and practices were additionally unfair because the harm to Plaintiff and California Class Members is substantial and is not outweighed by an any countervailing benefits to consumers or competition.   Further, Defendants' acts and practices were unfair in that they were contrary to legislatively declared or public policy.

168.    Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when its concealed the existence and nature of the Defect, while representing in its marketing, advertising, and other broadly disseminated representations including the Class Vehicles' Owner's Manuals, that the Class Vehicles were safe and that it was safe to seat passengers in the bow seats when, in fact, the Defect creates a significant and material safety hazard and inhibits the quality and functionality of the Class Vehicles.   Defendants' representations, omissions, and active concealments about the Defect are likely to mislead the public with regard to the true defective nature of Class Vehicles.

169.    Defendants' unfair or deceptive acts or practices occurred repeatedly in the course of Defendants' trade or business and were likely to mislead a substantial portion of the purchasing public.

170.    Plaintiff related on Defendants' material representation and nondisclosures and would not have purchased, or would have paid less for, the Class Vehicle had she known the truth.

171.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent practices, Plaintiff has lost money.

172.    Plaintiff would consider purchasing or leasing Malibu Boats vehicles in the future if she could rely on Defendants' representations regarding the vehicles.

173.    Plaintiff and California Class members seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. CIVIL CODE § 17200, *et seq.***
**(By Plaintiff Blasingame, on her own behalf and on behalf of the California Sub-Class, and against Defendants)**

174.    Plaintiff repeats and re-allege each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

175.    California Plaintiff brings this count on behalf of herself and the California Sub-Class against Defendants.

176.    California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq*. provides that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or

by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

177.   Defendants advertised at boat shows, via their website, brochures, and other materials, including the owner's manuals disseminated with the Class Vehicles that the seating in the bow area was safe and available for use while the boat was in motion.

178.   California Plaintiff and California Class members reasonably relied on this advertising that their Class Vehicles had seating capacity in the bow that was safe to use while the boat was in motion.

179.   Prior to receiving the Safety Advisory in July 2023, California Plaintiff and California Class members had no way of knowing that seating passengers in the bow area while their boats are in motion is unsafe and potentially deadly due to the potential for "bow swamping."

180.   Defendants knew or should have known, at least as early as 1996 and likely earlier, that Class Vehicles contained the Defect and associated safety risk as detailed in this Complaint.  However, despite this knowledge, Defendants marketed and advertised the Class Vehicles as safe, high-quality boats with bow seating.

181.    California Plaintiff and the California Class purchased and continue to purchase the Class Vehicles because of Defendants' overstated safe seating capacities. The safe seating capacities of the Class Vehicles is not an incidental part of the Class Vehicles or the purchases made by California Plaintiff and the California Class members, who paid a premium for more seating on the Class Vehicles.

182.    California Plaintiff and the California Class relied on Defendants' claims, advertisements, and/or other representations when deciding to purchase the Class Vehicles. California Plaintiff and the California Class did not have any reason to suspect that the statements contained in Defendants' advertisements, websites, owner's manuals, brochures, and other materials were inaccurate.

183.    The facts concealed or not disclosed by Defendants to California Plaintiff and the California Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.

184.    Had Plaintiff and the Class members known that the Class Vehicles suffered from the Defect described herein, they would have not purchased or leased the Class Vehicles or would have paid less for them. California Plaintiff and California Class members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

185.    As of result of Defendants' misconduct, Plaintiff and the CLRA Class members have been harmed and suffered actual damages in that the Class Vehicles are defective and California Plaintiff and the California Class Members have overpaid for their Class Vehicles.

186.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, California Plaintiff and the California Class Members have suffered and will continue to suffer actual damages.

187.    California Plaintiff and the California Class Members seeks civil penalties, restitution, and disgorgement from Defendants as authorized by Cal. Bus. & Prof. Code § 17500, *et seq*.

188.    California Plaintiff and the California Class Members also seek an order enjoining from continuing to engage in the methods, acts, and practices violating Cal. Bus. & Prof. Code § 17500, *et seq*. as well as costs, attorneys' fees and any other relief that the Court deems proper.

## VIII.  **PRAYER FOR RELIEF**

189.    WHEREFORE, Plaintiff, individually and on behalf of the members of the Nationwide and State Classes, respectfully request that the Court certify the proposed Nationwide and State Classes, including designating the named Plaintiff as a representative of the Nationwide Class and their respective State Class and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiff's, the Nationwide Classes' and State Classes' favor and against Defendants including the following relief:

      i.     A declaration that any applicable statues of limitations are tolled due to Defendants' fraudulent concealment and that Defendants are estopped from relying on any statutes of limitations in defense;

     ii.     Restitution, compensatory damages, and costs for economic loss and out-of- pocket costs;

iii.   Punitive and exemplary damages under applicable law;

iv.   Reimbursement and compensation of the full purchase price for any repairs or replacements purchased by Plaintiffs or Class member to remedy the Defect;

v.   A determination that Defendants are financially responsible for all Class notices and the administration of Class relief;

vi.   Any applicable statutory or civil penalties;

vii.   An order requiring Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded;

viii.   An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts;

ix.   Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

x.   Any such other and further relief the Court deems just and equitable.

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

Dated: May 31, 2024                    Respectfully submitted,

Attorneys for Plaintiff,

By: /s/ *Russell D. Paul*
Russell D. Paul (Bar No. 4647)
**BERGER MONTAGUE PC**
800 N. West Street, Suite 200
Wilmington, DE 19801
Tel.:    (302) 691-9545
Email: rpaul@bm.net

Abigail Gertner (PHV app. forthcoming)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:    (215) 875-3000

Fax:     (215) 875-4604
Email:  agertner@bm.net


Mark Ozzello (PHV app. forthcoming)
Calvin Marshall (PHV app. forthcoming)
**THE OZZELLO PRACTICE PC**
400 Continental Blvd., 6th Floor
El Segundo, California 90245
Telephone:     (844) 774-2020
Facsimile:      (844) 774-2020
cmarshall@ozzellolaw.com
mark@ozzellolaw.com