# UNITED STATES DISTRICT COURT

# DISTRICT OF DELAWARE

| | |
|---|---|
| TERRY BLASINGAME, MICHAEL FERRANDO, KATHRYN AND BRIAN HART, JOHN PRINDLE, DOUGLAS SNOW, MIKE LUCERO, COLBY MARTINO, NICK MOHLER, DANIEL ORR, and PATRICK CHAFFIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MALIBU BOATS, LLC, a Delaware Limited Liability Company; and MALIBU BOATS, INC., a Delaware Corporation,<br><br>Defendants. | Civil Action No. 1:24-cv-00648-RGA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR A JURY TRIAL |

## I.    INTRODUCTION

1.    Plaintiffs Terry Blasingame, Michael Ferrando, Kathryn and Brian Hart, John Prindle, Douglas Snow, Mike Lucero, Colby Martino, Nick Mohler, Daniel Orr, and Patrick Chaffin ("Plaintiffs") bring this action individually and on behalf of all persons who purchased or leased a 1986–2002 Sunsetter; 1989–1994 Euro-f3 Sunsetter; 1990–1993 Mystere 215LX Euro-f3; 1993–1998 Echelon LX; 1995–2014 Response LX; 1998–2003 Sportster LX; 1999–2006 Sunsetter LXi; 2002–2007 Sunsetter (23) XTi; 2003–2008 Sunsetter 21 XTi; and/or 2003–2011 Response LXi (collectively, the "Class Boats"), against Defendants Malibu Boats, LLC ("MBL") formerly known as Malibu Boats West, Inc., and Malibu Boats, Inc. ("MBI", and together with MBL, "Defendants"). The allegations herein are based on personal knowledge as to each Plaintiff's own conduct and as to other matters based on an investigation by their undersigned counsel.

1

2.      This is a consumer class action concerning the misrepresentation of material facts and the failure to disclose material facts and safety concerns to consumers, as well as a recall by Defendants that has substantially reduced the value of the Class Boats purchased by Plaintiffs and Class members without any consideration provided.

3.      Defendants manufactured, marketed, distributed, and sold the Class Boats without disclosing that the Class Boats were being sold with a serious safety defect that materially affects the vehicles' ability to operate as intended and to provide safe and reliable usage and transportation.

4.      Instead, Defendants sold the vehicles with seating capacities exceeding the capacities that were in fact safe by placing a portion of the seats in the Class Boats in a portion of the boats that was easily swamped by water and where any seated passengers could be injured or pulled from the boat while it is in motion (the "Defect"). Defendants refer to this Defect as a "Bow Seating Hazard" in their own written materials including, without limitation, a Service Advisory issued in July 2023, that informed Defendants' dealers of the Class Boats that "**Malibu now prohibits passengers in the bow area…while in motion. This reduces the total capacity of these models by two (2) passengers**" (emphasis added).

5.      As early as 1986, Defendants knew of the existence and severity of the Defect. However, Defendants failed to disclose the Defect, and instead touted the quality, durability, reliability, and performance of the Class Boats via its public statements and marketing campaigns. Defendants also advertised that the vehicles were of high quality, with exceptional performance and seating capacity that was safe for passengers to use. This was untrue given the Defect.

6.      Facts have already been adduced that the Defect is the result of Defendants' defective design and/or manufacturing of the Class Boats, as well as poor quality-control

procedures that fail to prevent such defectively manufactured and/or designed components from being installed in the Class Boats. The Defect causes passengers in seats located in the bow of the Class Boats to be dangerously exposed to water swamping over the side of the boats and puts them in danger of being pushed overboard.

7.      This Defects affects both adult and child passengers in the bow of the Class Boats similarly.

8.      The Defect is inherent in each of the Class Boats and was present at the time of sale or lease to each Class Member. Each of the Class Boats has identical or substantially similar bow design to which Defendants did not make changes over time, making this case particularly susceptible to class certification.

9.      Moreover, the Defect affects every current owner of the Class Boats since July 2023 similarly as it has dramatically affected and reduced the value of the Class Boast. All owners of the Class Boats since the Service Advisory was issued in July 2023 are similarly situated and all have been damaged and have standing as a result of the Defect.

10.      The Defect has no repair. Instead, Plaintiffs and Class members as defined below have overpaid for their Class Boats as the Class Boats they purchased or leased: (a) do not have the seating capacity that was advertised; and (b) they now cannot use the seats in the bow due to the serious material safety risk of the Defect while their boat is in motion.

11.      The Defect significantly has decreased the value of the Class Boats as there is no permanent repair or remedy to this situation. The Defect endangers any passenger who sits in the bow area of the boats while the boat is in motion. The Class Boats cannot be operated safely with passengers in the bow area seating.

12.     Despite knowing that the Class Boats are defectively designed and/or manufactured with the Defect, Defendants failed to disclose such information about the Defect to the public until July 18, 2023. Defendants have further failed to offer a permanent remedy for the Defect by making a cash payment to every Class member for the significant diminution in value caused by the Defect to their boat.

13.     Rather, despite knowing of the Defect since at least 1996, and discovery will show Defendants' knowledge since 1986, Defendants represented that the Class Boats were high-quality and reliable and that the seats in the bow were safe to be used during the operation of the Class Boats.

14.     Defendants even specifically advertised the Class Boats as a family-friendly model of boat and encouraged customers to put their children in the bow of the boat, and even referred to the bow as the "play-pen" seating because it was intended for children. Exh. C, p. 13.

15.     Defendants' intentional non-disclosure and omission of the Defect and its associated material safety risk artificially inflated the purchase and lease prices for the Class Boats, including in the secondary market. Had Defendants disclosed the Defect, Plaintiffs and the Class members would not have purchased their boats or would have paid less for them.

16.     Federal law imposes a duty upon the manufacturers of recreational vessels such as the Class Boats, including Defendants, to ensure that, before selling the boats, they function properly, safely, and conform to all United States and state regulations. Federal law specifically prohibits the manufacture, construction, assembly, or sale of any recreational vehicle unless it does not contain a defect which has been identified as creating a substantial risk of personal injury to the public. *See* Federal Boat Safety Act of 1971, 46 U.S.C. § 4307(a).

17.     Further, when a company provides a warranty, it must honor that warranty. Defendants deceived their customers when they promised to stand by their warranties issued to purchased boats when they had no intent to do so, when they sold vehicles that were not capable of providing safe use and transportation, and when they failed to timely disclose the Class Boats' safety Defect.

18.     Plaintiffs and Class members reasonably expected that Defendants' representations—specifically including (a) that the Class Boats were properly engineered and equipped to handle ordinary, recreational boating for which they were advertised, and (b) that all of the advertised seats within the Class Boats could be occupied safely by passengers— would be true and complete and would not omit material information. In particular, the number of seats advertised in a vehicle is a material factor in setting the price for the vehicle, including with respect to the Class Boats.

19.     Defendants, however, concealed and failed to disclose to Plaintiffs and the Class members the Defect and its significant safety risk, including the risk of passengers being swept overboard as the bow swamps and suffering serious injury or death.

20.     Based on their experience in recreational boating design and manufacture, including pre-production testing, the review of predecessor companies' design files, design failure mode analysis, warranty claims, ongoing communications with dealers and customers including complaints, as well as other sources of internal data not available to consumers, Defendants were keenly aware of the Defect in the Class Boats but concealed the Defect from Plaintiffs and Class members until July 2023. Indeed, despite being aware of the Defect, Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the Defect to increase profits

by selling additional Class Boats at inflated costs to Plaintiffs and Class members through Defendants' dealer network.

21.     Defendants have exclusive knowledge of, and have been in exclusive possession of, information pertaining to the Defect, which was material to Plaintiffs and Class members, who could not reasonably know of the Defect prior to Defendants' announcement in July 2023. Defendants had not disclosed the Defect to the purchasers, lessees, or secondary buyers, either at the point of purchase or through advertisements, marketing materials, or written notice, such as was finally issued in July 2023 including to the secondary market which Defendants had access to as a result of boat registrations, albeit that Plaintiffs challenge that Defendants' notice process with respect to the Service Advisory was adequate.

22.     Such full and complete disclosures would have influenced Class members' purchase decisions and the purchase price that they paid for their Class Boats. Under all circumstances, Defendants had a duty to disclose the latent Defect at the point of sale of the Class Boats, and each person who purchased a Class Boat was therefore injured directly at the point of sale, did not receive their benefit of the bargain, and purchased a boat for far more than they would have if the Defect would have been disclosed.

23.     Defendant, moreover, has failed and refused to properly disclose and provide notice of the Defect to every Class member, and has also failed to provide a meaningful remedy to those who have suffered economic harm as a result of the Defect, including by issuing a cash payment to Plaintiffs and every Class member to make them whole for their damages caused at the point of sale by: (a) buying a boat that was not what was advertised; (b) buying a boat that did not have the number of seats that were advertised; and (c) owning

a boat that has suffered significant diminution of cash value as a result of the disclosed and admitted Defect as set forth in the Service Advisory.

24.     The Defect is latent and presents substantial safety risk to passengers. It renders the Class Boats unfit for the ordinary and advertised use of providing safe, recreational boating transportation, and it prevents Plaintiffs and Class members from using the full advertised seating capacity of their boats. As such, the Defect presents a breach of the implied warranty of merchantability.

25.     Additionally, because Defendants concealed and failed to disclose the Defect, owners of the Class Boats have suffered and continue to suffer substantial damages and should be entitled to the benefits of all tolling and estoppel doctrines.

26.     As a direct and proximate result of Defendants' concealment of, and failure to disclose the Defect, Plaintiffs and Class members: (a) overpaid for the Class Boats  because the Defect significantly diminishes the value of the Vehicles; (b) have vehicles that cannot seat the number of passengers safely in the advertised capacity; (c) have vehicles that have a lower resale value; and (d) are not able to use their Class Boats for their intended purpose and in the manner Defendants advertised.

27.     Defendants provide warranty coverage for Class Boats under one or more warranties. Defendants currently offer a five-year full factory warranty for every vehicle.

28.     Defendants breached their express and implied warranties through which Defendants promised to, *inter alia*, provide Class Boats that are fit for the ordinary and advertised purpose for which they were sold. Because the Defect was present at the time of sale or lease of the Class Boats and concealed from Plaintiffs and Class members, Defendants were required to compensate Plaintiffs and the Class under the terms of the warranties.

29.    Defendants' decision to sell the Class Boats without disclosing their specialized knowledge of the Defect also violates state consumer laws.

30.    Plaintiffs and Class members have purchased and leased Class Boats that they would not otherwise have purchased or leased, or would have paid less for, had they known of the Defect at the point of sale. Plaintiffs and Class members have consequently suffered ascertainable losses and actual damages. Moreover, Plaintiffs seek equitable remedies, including *inter alia*, an order that the Class Boats are defective and injunctive relief from Defendants in the form of restitution.

## II.    <u>JURISDICTION AND VENUE</u>

31.    This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than Defendants, the number of proposed Class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

32.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims pleaded herein are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding. Further, this Court may also exercise supplemental jurisdictions over Plaintiffs' Magnuson-Moss Warranty Act claims.

33.    This Court has personal jurisdiction over Defendants because they are incorporated in the State of Delaware; have consented to jurisdiction by registering to conduct business in the State of Delaware; maintain sufficient minimum contacts in Delaware; and otherwise intentionally avail themselves of the markets within Delaware through promotion,

sale, marketing, and distribution of their vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as Defendants are "at home" in Delaware.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiffs may properly sue Defendants in this District, Defendants' state of incorporation.

## III.     THE PARTIES

### Plaintiff Terry Blasingame

35.     Plaintiff Terry Blasingame is a citizen of California, domiciled in Riverside County, California.

36.     In April or May 2005, Ms. Blasingame purchased a new 2005 Malibu Sunsetter LXi from Paradise Watersports, an authorized dealer of Defendants located in Lake Elsinore, California. Ms. Blasingame paid over $39,000 for the boat, which included a seating capacity of the boat of up to ten, with two of those seats located in the bow of the boat.

37.     Plaintiff purchased her boat primarily for personal, family, or household use.

38.     Passenger safety was an important factor in Ms. Blasingame's decision to purchase the boat. Before making her purchase, Plaintiff visited a boat show for research purposes in or about December 2004, at which she saw various boats including Malibu-branded boats and spoke with representatives from or authorized by "Malibu Boats." It is unknown which of Defendants' representatives were at the boat show. Plaintiff selected and purchased her boat because it was represented to be and was marketed as a high-quality vehicle capable of providing safe use and transportation. The purchase was also in reliance on the advertised safety and quality of the vehicle as well as its ability to seat 10 passengers, which was relevant to the purchase price of the boat. At the boat show, Ms. Blasingame placed

an order with the representative from or authorized by "Malibu Boats" who arranged to have the sale take place through the authorized dealership, Paradise Watersports.

39.    None of the information provided to Ms. Blasingame prior to or at the time of sale disclosed the Defect. Had Defendants disclosed the Defect at the time of purchase, Plaintiff would have received notice of such disclosures and been aware of them, and would not have purchased the boat. Defendants' misstatements and omissions were material to Plaintiff Blasingame. Like all Class members, Plaintiff would have not purchased her boat, or would have paid dramatically less for it, had she known of the Defect that was finally disclosed by Defendants in July 2023.

40.    In addition, at the time Plaintiff purchased her vehicle, Plaintiff relied on representations from Defendants and its authorized representatives, as well as Defendants' authorized dealer, who she saw during the boat show, and who represented that the vehicle was fully functional, safe, and capable of seating ten passengers. Plaintiff also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of ten persons (*See* Exhibit A, Excepts from Owner's Manual), including room for two persons in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle, or would have paid dramatically less for it.

41.    At all times during her ownership of the vehicle, Plaintiff Blasingame properly maintained and serviced her boat according to the recommended maintenance guidelines.

42.    Soon after July 18, 2023, Ms. Blasingame received a Safety Advisory from Defendant MBL (the "Safety Advisory"), stating that MBL had determined that the seating of passengers in the bow area of Class Boats, including Ms. Blasingame's vehicle, was unsafe

while the vehicle was in motion, and potentially deadly due to the potential for "bow swamping." *See* Exhibit B. Plaintiff Blasingame immediately stopped allowing anyone to sit in the bow seating area of her boat while it was in motion. Accordingly, the seating capacity of Plaintiff's boat while in motion has been reduced by at least two, from ten to eight passengers.

43.    To date, Ms. Blasingame has received no notification from Defendants about any potential repair or modification for the Defect.

44.    As a result of the Defect, Ms. Blasingame no longer has a vehicle capable of seating ten while the boat is in motion and has further lost confidence in the ability of her boat to provide safe use and transportation for its ordinary and advertised purpose.

45.    At all times, Ms. Blasingame has attempted to use her boat in a foreseeable manner and in a manner in which it was intended to be used at all times.

### Plaintiff Michael Ferrando

46.    Plaintiff Michael Ferrando is a citizen of California, domiciled in Arbuckle, California.

47.    On or about June 2020, Mr. Ferrando purchased a used 2004 Malibu Response LXI with approximately 200 hours from a private seller in California.

48.    Mr. Ferrnado purchased his boat primarily for personal, family, or household use.

49.    Passenger safety was an important factor in Plaintiff's decision to purchase the boat, as he planned to use the boat for family outings and would frequently seat his children in the bow of the boat. Plaintiff selected and purchased his boat because it was represented and marketed as a high-quality vehicle capable of providing safe transportation. The purchase was in reliance on the advertised safety and quality of the vehicle, as well as its ability to seat nine passengers.

50.     None of the information provided to Mr. Ferrando disclosed the Defect. Had Defendants disclosed the Defect by issuing the Service Advisory or otherwise before Mr. Ferrando purchased his boat, he would have seen such disclosures and been aware of them and would not have purchased this boat. Defendants' misstatements and omissions were material to Plaintiff. Like all Class members, Plaintiff would have not purchased his boat, or would have paid substantially less for the vehicle, had he known of the Defect.

51.     In addition, at the time Mr. Ferrando purchased his boat, he relied on representations from Defendants and its authorized representatives that the vehicle was fully functional, safe, and capable of seating nine passengers. For example, Plaintiff relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of nine persons, including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in purchasing his boat, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

52.     At all times during his ownership of the vehicle, Mr. Ferrando properly maintained and serviced his boat according to the recommended maintenance guidelines.

53.     To date, Mr. Ferrando has received no notification from Defendants about any potential repair or modification for the Defect.

54.     As a result of the Defect, Plaintiff no longer has a vehicle capable of seating nine passengers while the boat is in motion, but can, based on the July 18, 2023 Safety Advisory, only seat seven passengers while the boat is in motion. As a result, Plaintiff has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

55.     At all times, Mr. Ferrando, has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

**Plaintiffs Kathryn and Brian Hart**

56.    Plaintiffs Kathryn and Brian Hart are citizens of Florida, domiciled in Lake Placid, Florida.

57.    On or about February 2000, Plaintiffs Hart purchased a new 2000 Malibu Response LX from Munson Marine, an authorized dealer of Malibu-branded boats located in Volo, Illinois.

58.    Plaintiffs purchased the boat primarily for personal, family, or household use.

59.    Passenger safety was an important factor in Mr. and Mrs. Hart's decision to purchase the boat, as Plaintiffs Hart planned to use the boat for family outings and would frequently seat their children in the bow area of the boat.  Before making the purchase, Plaintiffs conducted extensive online research on the boat.  Plaintiffs selected and purchased their boat because the vehicle was represented to be and was marketed as a high-quality vehicle capable of providing safe use and transportation.  The purchase was made in reliance on the advertised safety and quality of the vehicle, as well as its ability to seat eight passengers.

60.    None of the information provided to Plaintiffs Hart disclosed any defects in the boat. Had Defendants disclosed the Defect before Plaintiffs purchased their boat, they would have seen such disclosures and been aware of them.  Indeed, Defendants' misstatements and omissions were material to Plaintiffs.  Like all members of the Class, Plaintiffs would have not purchased their Class Vehicle, or would have paid less for the vehicle, had they known of the Defect.

61.    In addition, at the time Plaintiffs purchased their boat, they relied upon representations from Defendants and its authorized representatives, as well as the authorized dealer, that the vehicle was fully functional, safe, and capable of seating eight. Plaintiffs also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight persons, including seating in the bow area.  Plaintiffs relied on those representations

and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

62.    At all times during their ownership of the vehicle, Plaintiffs properly maintained and serviced the boat according to the recommended maintenance guidelines.

63.    To date, Plaintiffs have received no notification from Defendants about any potential repair or modification for the Defect.

64.    As a result of the Defect, Plaintiffs no longer have a vehicle capable of seating eight while the boat is in motion, but can, based on Defendants' July 18, 2023 Safety Alert, only safely seat six, and possibly fewer passengers while the boat is in motion.  As a result, Plaintiffs have lost confidence in the ability of their boat to provide safe use and transportation for its ordinary and advertised purpose.

65.    At all times, Plaintiffs haves attempted to use their boat in a foreseeable manner and in a manner in which it was intended to be used.

### Plaintiff John Prindle

66.    Plaintiff John Prindle is a citizen of Texas, domiciled in Kemah, Texas.

67.    On or about 2001, Mr. Prindle purchased a new 2001 Malibu Response LX from Malibu of New Orleans, an authorized dealer of Malibu-branded boats located in New Orleans, Louisiana.

68.    Plaintiff purchased the boat primarily for personal, family, or household use.

69.    Passenger safety was an important factor in Mr. Prindle's decision to purchase the boat. Before making the purchase, Plaintiff conducted extensive online research on the boat as well as read multiple writeups and features in magazines. Plaintiff selected and purchased his boat

14

because it was represented and marketed as a high-quality vehicle capable of providing safe use and transportation. The purchase was made in reliance on the advertised safety and quality of the vehicle, as well as its ability to seat eight passengers.

70.    None of the information provided to Plaintiff disclosed the Defect. Had Defendants disclosed the Defect to Mr. Prindle before he purchased his boat, he would have seen and had notice of the Defect and been aware of it. Indeed, Defendants' misstatements and omissions were material to Plaintiff Prindle. Like all Class members, Plaintiff would have not purchased the boat, or would have paid substantially less for it, had he known of the Defect.

71.    In addition, at the time Plaintiff purchased his boat, he relied upon representations from Defendants and its authorized representatives, as well as the authorized dealer, that the vehicle was fully functional, safe, and capable of seating eight passengers. Plaintiff also relied, for example, on the representations in the boat's Owner's Manual that the boat had a seating capacity of up to eight persons, including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

72.    At all times during his ownership of the boat, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

73.    Mr. Prindle became aware of a change of seating capacity after seeing a notification concerning the Defect on Facebook around November or December 2023. Plaintiff then called Defendants regarding the change in seating capacity and was sent a new warning sticker reducing seating capacity in or around January 2024.

74.     To date, Plaintiff has received no notification from Defendants about any potential repair or modification for the Defect.

75.     As a result of the Defect, Plaintiff no longer has a vehicle capable of seating eight while the boat is in motion but can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six, and possibly fewer passengers while the boat is in motion. As a result, Plaintiff has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

76.     At all times, Mr. Prindle has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

**Plaintiff Douglas Snow**

77.     Plaintiff Douglas Snow is a citizen of Rhode Island, domiciled in Charlestown, Rhode Island.

78.     On or about September 1999, Plaintiff purchased a new, custom-ordered 2000 Malibu Sportster LX from East Coast Flightcraft, an authorized dealer of Malibu-branded boats located in Danvers, Massachusetts.

79.     Plaintiff purchased his boat primarily for personal, family, or household use.

80.     Passenger safety was an important factor in Plaintiff's decision to purchase the boat. Before making his purchase, Plaintiff test drove the boat at the dealership. Plaintiff also reviewed all the safety features of the boat with the salesman at the authorized dealership. Plaintiff selected and purchased his boat because it was represented and marketed as a high-quality vehicle capable of providing safe transportation. At the time of purchase, Plaintiff relied on the advertised safety and quality of the vehicle, as well as its ability to seat eight passengers.

81.     None of the information provided to Plaintiff before or during the purchase disclosed the Defect. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would have seen and had notice of the Defect. Indeed, Defendants' misstatements and omissions were material to Plaintiff. Like all Class members, Plaintiff would have not purchased his boat, or would have paid substantially less for it, had he known of the Defect.

82.     At the time Plaintiff purchased his boat, he relied upon representations from Defendants and its authorized representatives, as well as the authorized dealership, that the vehicle was fully functional, safe, and capable of seating eight passengers. Plaintiff also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight passengers, including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

83.     At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

84.     To date, Plaintiff has received no notification from Defendants about any potential repair or modification for the Defect.

85.     As a result of the Defect, Plaintiff no longer has a vehicle capable of seating eight while the boat is in motion and can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six passengers, or possibly fewer. As a result, he has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

86.     At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

**Plaintiff Mike Lucero**

87.     Plaintiff Mike Lucero is a citizen of Michigan, domiciled in West Branch, Michigan.

88.     In or about late 2020 or early 2021, Plaintiff purchased a used 2000 Malibu Response LX from a private seller in Michigan.

89.     Plaintiff purchased his boat primarily for personal, family, or household use.

90.     Passenger safety was an important factor in Mr. Lucero's decision to purchase the boat. Before making his purchase, Plaintiff performed online searches on the boat and reviewed materials that were posted concerning the boat. Plaintiff selected and purchased his boat because the vehicle was represented by Defendants to be and was marketed as a high-quality vehicle capable of providing safe transportation. The purchase was also made in reliance on the advertised safety and quality of the vehicle, as well as its ability to seat eight passengers.

91.     None of the information provided to Plaintiff or that Plaintiff reviewed disclosed the Defect. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would likely have seen such disclosures and been aware of them. Defendants' misstatements and omissions were material to Plaintiff's decision to purchase his boat. Like all Class members, Plaintiff would have not purchased his boat, or would have paid substantially less for it, had he known of the Defect.

92.     At the time Plaintiff purchased his boat, he relied upon representations from Defendants and its authorized representatives, that the vehicle was functional, safe, and capable of seating eight passengers. Plaintiff also reviewed and relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight persons including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in

purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

93.    At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

94.    Plaintiff received a letter in the mail from Defendants regarding the reduced bow seating capacity. This indicates that Defendants had the ability to reach owners who bought the Class Boats on the secondary market, and that they were similarly affected by the Defect.

95.    To date, Plaintiff Lucero has received no notification from Defendants about any potential repair or modification for the Defect.

96.    As a result of the Defect, Plaintiff no longer has a vehicle capable of seating eight passengers while the boat is in motion but can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six passengers and possibly fewer. As a result, Plaintiff has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

97.    At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

### Plaintiff Colby Martino

98.    Plaintiff Colby Martino is a citizen of Vermont, domiciled in Bradford, Vermont.

99.    On or about September 2022, Plaintiff purchased a used 2000 Malibu Sunsetter from a private seller located in Newbury, New Hampshire.

100.    Plaintiff purchased his boat primarily for personal, family, or household use.

101.    Passenger safety was an important factor in Plaintiff's decision to purchase the boat. Before making his purchase, Plaintiff performed online searches on the boat as well as reviewed

information on Defendants' website. Plaintiff selected and purchased his boat because it was represented and marketed as a high-quality vehicle capable of providing safe transportation. Plaintiff also relied on the advertised safety and quality of the vehicle, as well as its ability to seat ten passengers.

102.    None of the information provided to Plaintiff or that he reviewed disclosed the Defect, because Defendant had not disclosed the Defect at this time. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would have likely seen such disclosures and been aware of them. Defendants' misstatements and omissions were material to Plaintiff. Like all Class members, Plaintiff would have not purchased his boat, or would have paid substantially less for it had he known of the Defect.

103.    In addition, at the time Plaintiff purchased his vehicle, he relied on representations from Defendants and its authorized representatives that the vehicle was fully functional, safe, and capable of seating ten passengers. Plaintiff also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of ten passengers including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect in purchasing the boat, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

104.    At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

105.    To date, Plaintiff has received no notification from Defendants about any potential repair or modification for the Defect.

106.    Plaintiff made numerous attempts to sell his boat beginning in August 2023, after the bow swamping and reduced seating capacity information was released to him, but multiple

potential buyers were not interested due to the Defect and the bow swamping concerns and safety issue. As a result, Plaintiff was forced to take a significant financial loss once his boat finally sold in or around June 2024.

107.    As a result of the Defect, Plaintiff Martino no longer has a vehicle capable of seating the number of ten passengers that was advertised and represented while the boat is in motion, but that can only seat eight passengers or possibly fewer following the issuance of the Service Advisory. Plaintiff sold the boat because he understandably lost confidence in the ability of the boat to provide safe use and transportation for its ordinary and advertised purpose.

108.    At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

### Plaintiff Nick Mohler

109.    Plaintiff Nick Mohler is a citizen of Ohio, domiciled in Avon, Ohio.

110.    On or about April 2009, Plaintiff purchased a used 1999 Malibu Response LX from No Wake Marine, an authorized dealer of Malibu-branded boats located in LaFollette, Tennessee.

111.    Plaintiff purchased his boat primarily for personal, family, or household use.

112.    Passenger safety was an important factor in Mr. Mohler's decision to purchase the boat. Before making his purchase, Plaintiff performed online searches regarding the boat as well as reviewed the manufacturer's website and online owners' forums. Plaintiff also test drove the boat at the authorized dealership. Plaintiff selected and purchased his boat because it was represented to be and was marketed as a high-quality vehicle capable of providing safe transportation. Plaintiff relied on the advertised safety and quality of the vehicle, as well as its ability to seat eight passengers.

113.    None of the information provided to Plaintiff disclosed the Defect. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would have likely seen such disclosures and been aware of them. Defendants' misstatements and omissions were material to Plaintiff. Like all Class members, Plaintiff would have not purchased the boat, or would have paid substantially less for it, had he known of the Defect.

114.    In addition, at the time Plaintiff purchased his vehicle, he relied upon representations from Defendants and its authorized representatives that the vehicle was fully functional, safe, and capable of seating eight passengers. Plaintiff Mohler also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight passengers, including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

115.    At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

116.    To date, Plaintiff has received no notification from Defendants about any potential repair or modification for the Defect.

117.    As a result of the Defect, Plaintiff Mohler no longer has a vehicle capable of seating eight passengers while the boat is in motion but can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six passengers, and possibly fewer. As a result, he has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

118.    At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

Plaintiff Daniel Orr

119.    Plaintiff Daniel Orr is a citizen of Tennessee, domiciled in Dayton, Tennessee.

120.    In or about 2007, Mr. Orr purchased a used 2004 Malibu Response LX from a private party in Tennessee, with a seating capacity of eight passengers. He paid approximately $21,500 for the boat, which included seating capacity of eight passengers with two seats in the bow area.

121.    Plaintiff purchased his boat primarily for personal, family, or household use.

122.    Passenger safety was an important factor in Mr. Orr's decision to purchase the boat. Before making his purchase, Plaintiff performed online searches on the boat as well as took a tour of the factory where the boats are manufactured. Plaintiff also read the boat manual and advertisement for the model of boat he purchased. Plaintiff selected and purchased his boat because it was represented and marketed as a high-quality vehicle capable of providing safe transportation. Plaintiff relied on the advertised safety and quality of the vehicle, as well as its capacity to seat eight passengers.

123.    None of the information provided to Plaintiff disclosed the Defect. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would have likely seen such disclosures and been aware of them. Defendants' misstatements and omissions were material to Plaintiff.  Like all Class members, Plaintiff would have not purchased his boat, or would have paid substantially less for it, had he known of the Defect.

124.    At the time Mr. Orr purchased his vehicle, he relied upon representations from Defendants and its authorized representatives that the vehicle was fully functional, safe, and

capable of seating eight passengers. Plaintiff also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight passengers including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect, in purchasing the vehicle, and absent those representations and omissions, would not have purchased the vehicle or would have paid substantially less for it.

125.    At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

126.    Following the issuance of the Service Advisory, Plaintiff received a letter from Defendants notifying him of the reduced capacity of the boat and not to let anyone ride in the bow. This demonstrates that individuals who purchased affected Class Boats on the secondary market were subject to the Service Advisory and similarly affected by it, the same as individuals who purchased directly from Defendants or their authorized dealers.

127.    To date, Plaintiff has received no notification from Defendants about any potential repair or modification for the Defect.

128.    As a result of the Defect, Mr. Orr no longer has a vehicle capable of seating eight passengers while the boat is in motion but can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six passengers or possibly fewer. As a result, Plaintiff has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

129.    At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

**Plaintiff Patrick Chaffin**

130.     Plaintiff Patrick Chaffin is a citizen of Virginia, domiciled in Locust Grove, Virginia.

131.     On or about 2022, Plaintiff purchased a used 2004 Malibu Response LXi from a private party in Virginia.

132.     Plaintiff purchased his boat primarily for personal, family, or household use.

133.     Passenger safety was an important factor in Mr. Chaffin's decision to purchase the boat. Before making his purchase, Plaintiff preformed online research on the boat. Plaintiff selected and purchased his boat because the vehicle was represented and marketed as a high-quality vehicle capable of providing safe transportation. The purchase was in part on the advertised safety and quality of the vehicle, as well as its capacity to seat eight passengers. Plaintiff also decided to purchase the boat due to the seating in the bow.

134.     None of the information reviewed by or provided to Plaintiff at the time of sale disclosed the Defect. Had Defendants disclosed the Defect before Plaintiff purchased his boat, he would have likely seen such disclosures and been aware of them. Defendants' misstatements and omissions were material to Plaintiff. Like all Class members, Plaintiff would have not purchased the boat, or would have paid substantially less for it had he known of the Defect.

135.     At the time Mr Chaffin purchased his vehicle, he relied on representations from Defendants and its authorized representatives that the vehicle was fully functional, safe, and capable of seating eight passengers. Plaintiff also relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of eight persons, including seating in the bow area. Plaintiff relied on those representations and the omission of the disclosure of the Defect in

purchasing the vehicle, and absent those representations and omissions, would not have purchased the boat or would have paid substantially less for it.

136.    At all times during his ownership of the vehicle, Plaintiff properly maintained and serviced the boat according to the recommended maintenance guidelines.

137.    To date, Plaintiff Chaffin has received no notification from Defendants about any potential repair or modification for the Defect.

138.    As a result of the Defect, Mr. Chaffin no longer has a vehicle capable of seating eight passengers while the boat is in motion but can, based on Defendants' July 18, 2023 Safety Advisory, only safely seat six passengers and possibly fewer. As a result, he has lost confidence in the ability of his boat to provide safe use and transportation for its ordinary and advertised purpose.

139.    At all times, Plaintiff has attempted to use his boat in a foreseeable manner and in a manner in which it was intended to be used.

## **Defendants**

140.    Defendant Malibu Boats, LLC ("MBL"), is a Delaware limited liability company with its principal place of business located at 5075 Kimberly Drive, Loudon, Tennessee. MBL is registered to do business in the State of Delaware and California. MBL is owned in part by MBI and is the successor in interest to Malibu Boats West, Inc. ("Malibu Boats West"), the original manufacturer of Plaintiffs' Class Boats. MBL is a "mere continuation" of Malibu Boats West, as found by a jury and upheld on appeal in *Batchelder v. Malibu Boats West, Inc. See* Exhibit C (Order on Malibu Boats, LLC's Post-Trial Motions, *Batchelder v. Malibu Boats Wext, Inc., No. 24-cv-00648 (Ga. Sup. Ct. May 31, 2024) (Doc 1-*

3).[1] MBL is the manufacturer of the Class Boats beginning in the 2006 model year, using designs from Malibu Boats West which was the manufacturer of the Class Boats prior to 2006. MBL maintains manufacturing facilities in Tennessee and Australia. MBL is also the warrantor of the Class Boats, along with MBI. MBL and its predecessor, Malibu Boats West, are and were engaged in the design, engineering, manufacturing, and marketing of the Class Boats at all relevant times to this Complaint.

141.    Defendant Malibu Boats, Inc. ("MBI") is a Delaware corporation with its principal place of business located at 5075 Kimberly Drive, Loudon, Tennessee. MBI advertises, markets, and distributes Malibu-branded and Cobalt-branded recreational boats, among others. It also holds itself out as a warrantor of the Class Boats. *See* https://www.malibuboats.com/warranty. MBI is a publicly traded company and is the brand-manager for Malibu-branded boats. MBI is the sole managing member of Malibu Boats Holdings, LLC ("MBH"), a Delaware limited liability company that is the parent of MBL. MBI operates and controls all of the business and affairs of MBH and MBL.

142.    At all relevant times, Defendants have been engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling recreational boats in California, Delaware, and throughout the United States.

143.    In order to sell Malibu-branded boats to the public, Defendant MBI enters into agreements with dealerships who are then authorized to sell Malibu-branded vehicles, including, without limitation, the Class Boats, to consumers. These agreements also designate

---

[1] Evidence presented at trial showed that all of the shareholders remained the same, the two companies shared the same CEO, kept virtually all of the same employees, and manufactured boats using the same designs. *Id*. at 3. One former executive even testified that they were the "same company." *Id*. at 4.

the authorized dealerships to conduct warranty and recall repairs on MBI's and MBL's behalf. All service and repairs performed at an authorized dealership are also completed according to Defendants' explicit instructions, issued through service manuals and technical service bulletins. Pursuant to the written agreements between Defendants and their authorized dealers, purchasers of the boats can receive services under Defendants' issued warranties at dealer locations convenient to them. Defendants also produce marketing materials for the Class Boats and provide them to the dealerships to be distributed to consumers such as many of the Plaintiffs here who purchased their boats from Defendants' dealers.

144.    Defendant MBL also develops and disseminates the owners' manuals for Defendants' boats in coordination with MBI.

145.    MBL and MBI warrant the Class Boats and are the drafters of those warranties, the terms of which unreasonably favor MBL and MBI. The warranties given by MBL and MBI are presented on a "take it or leave it" basis and Plaintiffs and consumers are not given a meaningful choice in terms of the warranties provided to them.

## IV.    **FACTUAL ALLEGATIONS**

146.    Defendants designed, assembled, manufactured, marketed, distributed, and/or sold the Class Boats. Their revenues are over $1 billion per year from these activities and they tout themselves as being "recognized for having world-class innovation and operational excellence" and that being committed "to delivering the best on-water performance experience has driven Malibu Boats to be the largest and most successful producer of inboard towboats in the world." As a result, Defendants acknowledge that "[t]oday, 5 of every 10 towboats sold worldwide is produced by Malibu."[2]

---

[2] *See* https://www.malibuboats.com/discover-malibu/story/.

147.    Defendants have numerous obligations under federal and state laws including, without limitation: (a) ensuring that their products are not unreasonably dangerous, including a continuing duty to monitor their products for safety issues and hazards; (b) ensuring that their products conform to design specifications; (c) ensuring that their products are safe for their intended and foreseeable use; (d) ensuring that their products comply with federal, state, and local industry standards; (e) ensuring that their customers are educated about the proper use of their boats and how to spot problems that could pose a danger; and (f) ensuring that their customers are warned about any danger or hazard arising from the use of Malibu boats, including the Class Boats.

148.    One of the hazards of using a recreational boat, including the Class Boats, is when the freeboard of the boat is lower than the wake created by the boat. The freeboard is the distance between the front tip of the boat, or the bow, and the surface of the water. When the freeboard of the boat is lower than the water, water enters the boat and causes swamping, also known as bow swamping. In this situation, the boat can take on a large amount of water which results in the bow itself going under the surface of the water.

149.    The design of the Class Boats is defective and dangerous such that the freeboard of the boats can be lower than the wake created by the Class Boats. Specifically, if there are passengers in the bow area where Defendants have installed seats, the Class Boats can and do experience bow swamping. Moreover, this occurs during the normal, foreseeable, and intended use of the Class Boats, including when the boat crosses its own wake at low speeds.

150.    Each of the Class Boats is designed to have a low-slung bow, which is a bow which is low to the water. Further, their bows angle downwards toward the water. This design decision, which discovery will show was made for aesthetic reasons, has major safety

implications about which Defendants failed to warn Plaintiffs and Class members prior to July 18, 2023, and constitutes a serious design defect with the Class Boats that was not disclosed at the time of sale to Plaintiffs and Class members.

151.    Defendants, as experienced recreational boat designers, manufacturers, and distributers, knew of the Defect with the Class Boats and its associated safety risk that passengers could be swept overboard and injured, since at least 1996 (Exh. C, p. 3).

152.    In fact, discovery will show that Defendants knew and should have known about the Defect and its associated safety risk from the time of their design and manufacture of the earliest of the Class Boats in 1986. Indeed, multiple Malibu employees admitted to experiencing numerous occasions of water coming over the bow of at least one of the Class Boat models. Exh. C, p. 14.

153.    However, at no time prior to July 18, 2023, did Defendants warn Plaintiffs, Class members or the public of the Defect, through any notice or marketing campaign, their appearances at boat shows, via communications sent to Class Boat owners, or through any other type of outreach.

154.    Following a loss at trial in the State of Georgia regarding the wrongful death of a 7 year-old child who was seated in the bow of one of the Class Boats when he was tragically swept overboard as a result of the Defect, Defendants finally acknowledged that they had known that the Class Boats suffered from the Defect and that the Defect had an associated safety risk that could cause serious injury or death.

155.    Specifically, as described by Defendants:

A tragic incident occurred with a Malibu Response LX boat. A passenger was washed out of the bow seating area during a bow swamping incident (when water comes over the front of the boat). The passenger was then hit by the propeller and died. The accident involved a 2000 model year

Response LX boat that was manufactured by Malibu Boats West, Inc. ("West")…

To prevent this from occurring again, Malibu now prohibits passengers in the bow area of similar boats while the boat is in motion. This reduces the boat capacity by two (2) passengers. Malibu will provide updated capacity labels and warnings stickers reflecting this new safety policy.

Exhibit B.

156.    Defendants further indicated that tens of thousands of boats manufactured, designed, distributed, warranted, and sold by Defendants were substantially similar to the Malibu Response LX boat to warrant being included in the new seating prohibition. Specifically, Defendants stated:

Malibu has determined that the Response LX and similar models* designed by Malibu Boats West, Inc., may be particularly susceptible to this kind of accident. Therefore, for the following models, Malibu now prohibits passengers in the bow area while in motion:

• 1986 – 2002 Sunsetter

• 1989 – 1994 Euro-f3 Sunsetter

• 1990 – 1993 Mystere 215LX Euro-f3

• 1993 – 1998 Echelon LX

• 1995 – 2014 Response LX

• 1998 – 2003 Sportster LX

• 1999 – 2006 Sunsetter LXi

• 2002 – 2007 Sunsetter (23) XTi

• 2003 – 2008 Sunsetter 21 XTi

• 2003 – 211 Response LXi

\* \* \*

> *\* It is possible that a combination of design factors of the 2000 Response LX may increase the likelihood or severity of bow swamping incidents in certain conditions, and that these factors may be shared by other boats designed in a similar time period.*

Exhibit B (emphasis in original).

157.    Defendants misleadingly attempted to distance themselves from previous knowledge of the Defect and its associated safety risk by falsely claiming that:

> West is not, and has never been, a subsidiary of the Company but was a separate legal entity whose assets were purchased by Malibu Boats LLC in 2006. Malibu was not involved in the design and testing of this model and other models developed by the other company prior to 2006.

*Id.*

158.    This is false. "West" and MBL are, in fact, the same company, which was simply reorganized in 2006 when a hedge fund invested in Malibu. The two companies employed the same personnel, had the same chief executive officer, designed and produced the same boats, had the same majority shareholders and owners, kept the same majority owner who became a director in the new company, and further had virtually the same employees, including the Vice President of Design who designed the Response LX line of boats. *See* Exhibit C, at 3-4.

159.    Defendants also characterized the new prohibition on seating in the bow area as a mere "inconvenience," though one "important for your safety."

160.    At no time did Defendants acknowledge that: (a) they were well aware of the Defect by at least 1996 (Exh. C, at p. 3), and discovery will show Defendants' knowledge dating back to at least 1986; (b) that Defendants, despite their knowledge of the Defect, failed to warn anyone about the Defect and its associated safety risk until after a child died as a

result of the Defect in horrific fashion *and* they lost at trial regarding that child's death; (c) that Defendants knowingly exposed tens of thousands of people to a high risk of serious injury and death; (d) that Defendants overcharged tens of thousands of purchasers for recreational boats that had the Defect, and that the Class Boats were not able to safely seat the number of people that Defendants had advertised and priced their boats accordingly to sell based on the available seating; and (e) that the Safety Advisory would substantially diminish the value of the Class Boats going forward.

## V.    TOLLING OF THE STATUE OF LIMITATIONS

### A.    Fraudulent Concealment

161.    Based upon the preceding factual allegations, any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment of the Defect and denial and concealment of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered the Defect prior to July 18, 2023, when Defendants issued the Service Advisory. Thus, any statute of limitations would begin running on the claims alleged in this Complaint, on July 18, 2023, or when a Plaintiff or Class member actually learned of the Service Advisory, since Defendants' notice program regarding the Service Advisory has been inadequate.

162.    Defendants are and remain under the continuing duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Boats, and that they inherently have a serious Defect and corresponding safety concern, as well as severely diminished resale value, as a result of the Defect. As a result of the active concealment by Defendants, including their misleading July 2023 statements, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

163.    Defendants have known of the Defect in the Class Boats since 1996 (Exhibit C, p. 3), and discovery will show since 1986, and have concealed from and failed to notify Plaintiffs, Class members, and the public of the full and complete nature of the Defect. Defendants continue to mislead Plaintiffs and Class members to this day regarding Defendants' conduct and knowledge of the Defect. Throughout the time period relevant to this litigation, Defendants made multiple, repeated, and conscious decisions to conceal the Defect from the public. Exh. C, p. 3.

### B.    Estoppel

164.    Defendants were, and are, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Boats. Defendants actively concealed – and continue to conceal – the true character, quality, and nature of the Class Boats, and knowingly made affirmative misrepresentations concerning the quality and durability of the Class Boats. Plaintiffs and Class members reasonably relied upon Defendants' knowing and affirmative misrepresentations as well as Defendants' material omissions and active concealment of the relevant facts. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

### C.    Discovery Rule

165.    The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their Class Boats suffered from the Defect.

166.    Plaintiffs and Class members had no realistic ability to learn of the Defect until – at the earliest – when Defendants began to acknowledge the existence of the Defect in July 2023 with the issuance of the Service Advisory.

167.    Even then, Plaintiffs and Class members had no reason to know that the Defect and its associated safety risk were well-known to Defendants since before the purchase of their boats.

Not only did Defendants fail to notify Plaintiffs and Class members about the Defect, Defendants have tried to mislead Plaintiffs and Class members about their knowledge of the Defect despite the fact that they were aware of the Defect and its associated safety risk for years prior to Plaintiffs and Class Members' purchase of their Class Boats.

168.    Thus, Plaintiffs and Class members were not reasonably able to discover the Defect until after the Service Advisory was issued in July 2023, despite their exercise of due diligence, and their causes of action did not accrue until, at the earliest, July 18, 2023, or when they later learned of the Defect by receiving some form of notice of the Defect.

## VI.    CLASS ACTION ALLEGATIONS

169.     Plaintiffs bring this action pursuant to Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the classes and subclasses defined below:

### Nationwide Class (brought on behalf of all Plaintiffs)

All persons or entities in the United States (including its territories and the District of Columbia) who owned or leased a Class Boat as of July 18, 2023, to whom Defendants' Service Advisory was directed (the "Nationwide Class").

### California Subclass (brought on behalf of Plaintiffs Terry Blasingame and Michael Ferrando)

All members of the Nationwide Class who reside in California or purchased or leased their Class Boat in California.

### CLRA Subclass (brought on behalf of Plaintiff Terry Blasingame)

All members of the California Subclass who are "consumers" within the meaning of California Civil Code § 1761(d).

### Illinois Subclass (brought on behalf of Plaintiffs Kathryn and Brian Hart)

All members of the Nationwide Class who reside in Illinois or purchased or leased a Class Boat in Illinois.

**Louisiana Subclass (brought on behalf of Plaintiff John Prindle)**

All members of the Nationwide Class who reside in Louisiana or purchased or leased their Class Boat in Louisiana.

**Massachusetts Subclass (brought on behalf of Plaintiff Douglas Snow)**

All members of the Nationwide Class who reside in Massachusetts or purchased or leased their Class Boat in Massachusetts.

**Michigan Subclass (brought on behalf of Plaintiff Mike Lucero)**

All members of the Nationwide Class who reside in Michigan or purchased or leased their Class Boat in Michigan.

**New Hampshire Subclass (brought on behalf of Plaintiff Colby Martino)**

All members of the Nationwide Class who reside in New Hampshire or purchased or leased their Class Boat in New Hampshire.

**Ohio Subclass (brought on behalf of Plaintiff Nick Mohler)**

All members of the Nationwide Class who reside in Ohio or purchased or leased their Class Boat in Ohio.

**Rhode Island Subclass (brought on behalf of Plaintiff Douglas Snow)**

All members of the Nationwide Class who reside in Rhode Island or purchased or leased their Class Boat in Rhode Island.

**Tennessee Subclass (brought on behalf of Plaintiffs Nick Mohler and Daniel Orr)**

All members of the Nationwide Class who reside in Tennessee or purchased or leased their Class Boat in Tennessee.

**Texas Subclass (brought on behalf of Plaintiff John Prindle)**

All members of the Nationwide Class who reside in Texas or purchased or leased their Class Boat in Texas.

**Vermont Subclass (brought on behalf of Plaintiff Colby Martino)**

All members of the Nationwide Class who reside in Vermont or purchased or leased their Class Boat in Vermont.

**Virginia Subclass (brought on behalf of Plaintiff Patrick Chaffin)**

All members of the Nationwide Class who reside in Virginia or purchased or leased their Class Boat in Virginia.

170.    Excluded from the Class and Subclasses are Defendants and their dealers, and their respective employees, officers, directors, and legal representatives.

171.    The Classes and Subclasses defined above are referred to collectively in this Complaint as the "Class."

172.    Class certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

173.    The Class and each Subclass defined above meets all of the requirements of FED. R. CIV. P. 23.

174.    **Numerosity**. Although the exact number of Class members is uncertain, it can be ascertained through appropriate discovery, and the number is great enough that joinder of all Class members is impracticable. The Nationwide Class numbers in the tens of thousands. The disposition of the claims of all Class members in a single action will provide substantial benefits to all parties and the Court. The Class members are readily identifiable from information and records in

Defendants' possession, custody, and/or control as well as from records kept by the Department of Motor Vehicles, including by way of boat registration information.

175.     **Commonality and Predominance**. Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure are met in this action. This action involves numerous common questions of law and fact that predominate over any questions affecting individual Class members, including, but not limited to the following:

a.     Whether the Class Boats suffer from the Defect;

b.     Whether Defendants engaged in the conduct alleged herein;

c.     Whether the Defect constituted an unreasonable safety risk;

d.     Whether the Defect constitutes a material fact to a reasonable consumer at the time of sale;

e.     Whether Defendants designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Boats into the stream of commerce in the United States;

f.     Whether Defendants designed, manufactured, marketed, and distributed the Class Boats with the Defect;

g.     Whether Defendants had a duty to disclose the Defect in the Class Boats to Plaintiffs and Class members, and at what time;

h.     Whether Plaintiffs and Class members overpaid for their Class Boats at the time of sale or lease;

i.     Whether Plaintiffs and Class members did not receive the benefit of the bargain when they acquired their Class Boats;

j. Whether Defendant should be declared financially responsible for notifying all Class members of the Defect;

k. Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

l. Whether Defendants' alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

m. Whether Defendants concealed and omitted material information from Plaintiffs and Class members;

n. Whether Defendants have been unjustly enriched under applicable state laws;

o. Whether Defendants violated their express warranties to Plaintiffs and Class members under applicable state laws;

p. Whether Defendants breached the implied warranty of merchantability under applicable state laws;

q. Whether Defendants violated the consumer protection statutes under applicable state laws;

r. Whether Defendants actively concealed the Defect in order to maximize profits to the detriment of Plaintiffs and Class members; and

s. Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

176.    **Typicality**. Plaintiffs' claims are typical of the claims of the Class in the Plaintiffs like all Class members, purchased or leased a Class Boat designed, manufactured, and distributed by Defendants. Plaintiffs, like all Class members, have been damaged by Defendants' misconduct in that they have incurred or will incur loss of the benefit of their bargain, and suffered diminution of value of their boats. Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.  All claims seek recovery on the same legal theories and are based upon Defendants' common course of conduct.

177.    **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

178.    **Declaratory Relief**. Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making appropriate declaratory relief, with respect to all Class members.

179.    **Superiority**.  Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.    CAUSES OF ACTION

**Nationwide Claims**

### FIRST CAUSE OF ACTION
### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
**(By all Plaintiffs, on their own behalf and on behalf of the Nationwide Class and the Subclasses, and against Defendants)**

180.    Plaintiffs realleges each and every allegation contained in paragraphs 1 through 168 above as if fully set forth herein.

181.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or in the alternative, on behalf of each of the State Subclasses, against Defendants.

182.    Defendants knew that the Class Boats suffered from an inherent Defect, were defectively designed and/or manufactured and were not suitable for their intended use.

183.    Defendants concealed from and failed to disclose to Plaintiffs and Class members the defective nature of the Class Boats.

184.    Defendants were under a duty to Plaintiffs and Class members to disclose the defective nature of the Class Boats because:

  a.    Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Boats;

      b.     The omitted facts were material because they directly impact the safety of the Class Boats;

      c.     Defendants knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class members;

      d.     Defendants made partial disclosures about the quality of the Class Boats without revealing their true defective nature; and,

      e.     Defendants actively concealed the defective nature of the Class Boats from Plaintiffs and Class members.

185.   The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Boats or pay a lesser price for them. Whether a passenger can be seriously injured or swept overboard by bow swamping is a material safety concern for purchases of recreational boats. Had Plaintiffs and Class members known about the defective nature of the Class Boats, they would not have purchased or leased the Class Boats or would have paid less for them.

186.   Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Boats to induce Plaintiffs and Class members to act thereon. Plaintiffs and the other Class members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class members' purchase or lease of Defendants' defective Class Boats.

187.   Defendants continued to conceal the defective nature of the Class Boats even after Class members began to report the problems. Indeed, Defendants continue to cover up and conceal their involvement and knowledge of the problem today.

188.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Class Boats and obtain restitution or (b) affirm their purchase or lease of the Class Boats and recover damages.

189.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(By all Plaintiffs, on their own behalf and on behalf of the Nationwide Class and the Subclasses, and against Defendants)**

190.    Plaintiffs repeats and re-alleges each and every allegation contained in paragraphs 1 through 168 above as if fully set forth herein.

191.    Plaintiffs brings this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of all State Subclasses against Defendants.

192.    Defendants have received and retained a benefit from Plaintiffs and all Class members and inequity has resulted.

193.    Defendants have benefitted from selling and leasing defective boats whose value was artificially inflated by Defendants' concealment of the Defect, and Plaintiffs and Class members have overpaid for the boats and have been forced to pay other costs.

194.    As a result of its wrongful acts, concealments, and omissions of the Defect in its Class Boats, as set forth above, Defendants charged higher prices for their boats than the boats' true value. Plaintiffs and Class members paid that higher price for their boats to Defendants' authorized distributors and dealers, which are in Defendants' control.

195.     All Class members conferred a benefit on Defendants.

196.     It is inequitable for Defendants to retain these benefits.

197.     Plaintiffs and all Class members were not aware of the true facts about the Class Boats and did not benefit from Defendants' conduct.

198.     Defendants knowingly accepted the benefits of its unjust conduct.

199.     As a result of the Defendants' unjust enrichment, Plaintiffs and Class members have suffered damages.

200.     Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

201.     Additionally, Plaintiffs seek injunctive relief to enjoin Defendants from further deceptive distribution, sales, and lease practices with respect to Class Boats, enjoining Defendants from selling the Class Boats with the misleading information; compelling Defendants to acknowledge their role as manufacturer and distributor of the Class Boats as well as their knowledge of the Defect prior to the sale of any Class Boat. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**Individual Claims**

### THIRD CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301
### (By all Plaintiffs, on their own behalf and on behalf of the Nationwide Class and Subclasses, and against Defendants MBL and MBI)

202.     Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

203.    This claim is brought on behalf of Plaintiffs individually against Defendants MBL and MBI and on behalf of the Nationwide Class and the Subclasses.

204.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

205.    Defendants MBL and MBI are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

206.    The Class Boats are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

207.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

208.    Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

209.    Defendants' express warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

210.    Defendants breached the implied warranty and the express warranty by virtue of the above-described acts.

211.    Plaintiffs notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints from consumers and litigation against them for injuries and wrongful death as a result of the Defect.

212.    Defendants' breach of the implied warranty and express warranty deprived Plaintiffs of the benefits of their bargain.

213.    Privity is not required here because Plaintiffs are the intended third-party beneficiaries of contracts between Defendants and their dealers, included the dealers from which Plaintiffs purchased their Class Boat or from which the third parties (from whom Plaintiffs purchased their Class Boats) purchased those same Class Boats, and specifically, of Defendants' express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Boats and have no rights under the warranty agreements provided with the Class Boats to purchasers and subsequent purchasers; the warranty agreements were designed for and intended to benefit the consumer only.

214.    Defendants breached these warranties, as described in more detail above. Without limitation, the Class Boats contain a Defect that puts vehicle occupants' safety in jeopardy. The Class Boats share a common defect in that they are all designed with the same low bow, and manufactured with defective materials and/or with poor workmanship. Contrary to Defendants' representations about its vehicles, the Class Boats are defective in manufacture, materials and/or workmanship and are unsafe. The Class Boats share a common defect.

215.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here. Indeed, Defendants have long been on notice of the claims of Plaintiffs and have refused to provide a remedy.

216.    At the time of sale or lease of each Class Boat, Defendants knew, should have known, or were reckless in not knowing of its misrepresentations and omissions concerning the Class Boats' Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to

an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

217.     Plaintiffs would suffer economic hardship if they returned their Class Boats but did not receive the return of all payments. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their boats by retaining them.

218.     Plaintiffs provided notice to Defendants of their objectionable conduct on February 28, 2024, July 30,2024, and March 10, 2025.

219.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

220.     Plaintiffs seek all damages permitted by law, in an amount to be proven at trial.

**California Subclass Claims**

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE §§ 2313 and 10210**
**(By Plaintiff Blasingame and Plaintiff Ferrando, on their own behalf and on behalf of the California Subclass, and against Defendants MBL and MBI)**

221.     Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

222.     Plaintiff Blasingame and Plaintiff Ferrando (hereafter "California Plaintiffs") brings this count on behalf of themselves and the California Subclass against Defendants.

223.     Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

224.    With respect to leases, Defendants are and were at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

225.    The Class Boats are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

226.    The Class Boats were manufactured and warranted by Defendants and are covered by the express warranty.

227.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California state law.

228.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

229.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when California Plaintiffs and members of the California Subclass purchased or leased the Class Boats with the Defect.

230.    California Plaintiffs and members of the California Subclass experienced the Defect within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform California Plaintiffs and members

of the California Subclass that the Class Boats were defective and unsafe for the use for which they were sold. There is no permanent repair for the Defect.

231. Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendants and then failing to do so. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Boats materials defects.

232. Privity is not required here because California Plaintiffs and members of the California Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

233. Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect California Plaintiffs and the members of the California Subclass. Among other things, California Plaintiffs and members of the California Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonably favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the California Subclass.

234.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make California Plaintiffs and the members of the California Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

235.    California Plaintiffs were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints from consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, California Plaintiffs and members of the California Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs.   Plaintiff Blasingame also provided notice to Defendants of its conduct by letter dated February 28, 2024.  Plaintiff Ferrando provided notice to Defendants of its conduct by letter dated July 30, 2024.

236.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

237.    As a direct and proximate result of Defendants' breach of express warranties, California Plaintiffs and members of the California Subclass have been damaged in an amount to be determined at trial.

238.    As a result of Defendants' breach of the express warranty, California Plaintiffs and California Subclass members are entitled to legal and equitable relief against Defendants,

including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIVIL CODE §§ 1792 and 1791.1, *et seq.***
**(By Plaintiff Blasingame and Plaintiff Ferrando, on their own behalf and on behalf of the California Subclass, and against Defendants MBI and MBL)**

239.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

240.    California Plaintiffs bring this count on behalf of themselves and the California Subclass against Defendants MBL and MBI.

241.    Defendants were and are at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Boats. Defendants knew or had reason to know of the specific use for which the Class Boats were purchased or leased.

242.    Defendants provided California Plaintiffs and the California Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation via waterways because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

243.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

51

244.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing California Plaintiff and the California Subclass members with safe transportation. Instead, the Class Boats are defective.

245.    The Defect is inherent and was present in each Class Boat at the time of sale.

246.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, California Plaintiffs and the California Subclass members were harmed and suffered actual damages in that the Class Boats cannot be used for their intended purpose, including the seating of passengers in the bow.

247.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### CAL. CIVIL CODE § 1750, *et seq.*
**(By Plaintiff Blasingame and Plaintiff Ferrando, on their own behalf and on behalf of the CLRA Subclass, and against Defendants)**

248.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

249.    California Plaintiffs bring this count on behalf of themselves and the CLRA Subclass against Defendants MBL and MBI.

250.    Plaintiffs and CLRA Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they purchased their Class Boats primarily for personal, family, or household use.

251.    The purchase and leases of Class Boats by Plaintiffs and the CLRA Class members constitute "transactions" as defined by the Cal. Civ. Code § 1761(e).

252.    The Class Boats constitute "goods" or "services" as defined by Cal. Civ. Code § 1761(a) and (b).

253.    Defendants' representations, active concealment, omissions, and failure to disclose the Defect and its associated safety risk violated California's Consumer Legal Remedies Act ("CLRA") in the following ways:

(a)    Defendants misrepresnted that the Class Boats had characteristics, uses or benefits they did not in fact have (Cal. Civ. Code § 1770(a)(5));

(b)    Defendants mispresented that the Class Boats were of a particular standand, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

(c)    Defendants advertised the Class Boats with the intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

(d)    Defendants misrepresented that the Class Boats and warranties conferred or involved rights, remedies, or obligations that they did not (Cal. Civ. Code § 1770(a)(14); and

(e)    Defendants misrepresented that the Class Boats were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16).

254.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a

substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiffs.

255.    Defendants participated in unfair or deceptive trade practices that violated the CLRA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

256.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

257.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

258.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

259.    Defendants knew or should have known that their conduct violated the CLRA.

260.    Defendants were under a duty to Plaintiff and the CLRA Class members to disclose the defective nature of the Class Boats because:

    (a)     Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

    (b)     Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

    (c)     Defendants actively concealed the defective nature of the Class Boats from Plaintiff and CLRA Class members at the time of sale and thereafter.

261.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

262.    The facts concealed or not disclosed by Defendants to Plaintiffs and the CLRA Class members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Plaintiffs and the Class members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

263.    Plaintiffs and CLRA Class members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

264.    As of result of Defendants' misconduct, Plaintiffs and the CLRA Class members have been harmed and suffered actual damages in that the Class Boats are defective and Plaintiffs and the CLRA Subclass members have overpaid for their Class Boats.

265.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the CLRA Subclass members have suffered and will continue to suffer actual damages.

266.    Defendants' violations present a continuing risk to Plaintiffs and the CLRA Subclass members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

267.    Pursuant to California Civil Code § 1780, Plaintiffs seek an order enjoining Defendants from their unlawful practices described above and a declaration that their conduct violations the Consumer Legal Remedies Act, as well as statutory and actual damages, punitive damages, and reasonable attorneys' fees and costs of litigation.

268.    On February 28, 2024 and July 30, 2024, pursuant to Cal. Civ. Code § 1782(a), Plaintiffs sent letters by mail to Defendants informing them of their violation of the Consumer Legal Remedies Act and describing the steps to take to correct their unlawful business practices. Defendants have not responded with any such changes.

269.    Pursuant to the provisions of Cal. Civ. Code § 1780(d), Plaintiffs attached an Affidavit of Venue as Exhibits D and Exhibit E.

## SEVENTH CAUSE OF ACTION
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. CIVIL CODE § 17200, *et seq.***
**(By Plaintiff Blasingame and Plaintiff Ferrando, on their own behalf and on behalf of the California Subclass, and against Defendants)**

270.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

271.     California Plaintiffs bring this count on behalf of themselves and the California Subclass against Defendants.

272.     California Business & Professions Code § 17200 prohibits "unfair competition," including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Defendants engaged in conduct that violated each of this statute's three prongs.

273.     Defendants committed an unlawful business act or practice in violation of Cal. Bus. Prof. Code § 17200, *et seq*., by systematically breaching its warranties, both express and implied, and by violating the CLRA, the Song-Berverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act as alleged throughout the Complaint.

274.     Defendants committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., because the acts and practices described herein, including but not limited to selling vehicles with seating Defendants knew or should have known was unsafe to use while the vehicles were in motion, as well Defendants failure to provide any remedy or compensation to alleviate the effects of the Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Class members. Defendants' acts and practices were additionally unfair because the harm to Plaintiffs and California Subclass members is substantial and is not outweighed by an any countervailing benefits to consumers or competition.  Further, Defendants' acts and practices were unfair in that they were contrary to legislatively declared or public policy.

275.    Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the existence and nature of the Defect, while representing in its marketing, advertising, and other broadly disseminated representations including the Class Boats' Owner's Manuals, that the Class Boats were safe and that it was safe to seat passengers in the bow seats when, in fact, the Defect creates a significant and material safety hazard and inhibits the quality and functionality of the Class Boats.  Defendants' representations, omissions, and active concealments about the Defect are likely to mislead the public with regard to the true defective nature of Class Boats.

276.    Defendants' unfair or deceptive acts or practices occurred repeatedly in the course of Defendants' trade or business and were likely to mislead a substantial portion of the purchasing public.

277.    Plaintiffs and California Subclass members relied on Defendants' material representation and nondisclosures and would not have purchased, or would have paid less for, the Class Boats had they known the truth.

278.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent practices, Plaintiffs have lost money.

279.    Plaintiffs would consider purchasing or leasing Malibu Boats vehicles in the future if they could rely on Defendants' representations regarding the vehicles but at present they cannot so rely.

280.    Plaintiffs and California Class members seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW

## CAL. CIVIL CODE § 17200, *et seq.*
### (By Plaintiff Blasingame and Plaintiff Ferrando, on their own behalf and on behalf of the California Subclass, and against Defendants)

281.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

282.    California Plaintiffs bring this count on behalf of themselves and the California Subclass against Defendants.

283.    California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq.* provides that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

284.    Defendants advertised at boat shows, via their website, brochures, and other materials, including the owner's manuals disseminated with the Class Boats that the seating in the bow area was safe and available for use while the boat was in motion.

285.    California Plaintiffs and California subclass members reasonably relied on this advertising that their Class Boats had seating capacity in the bow that was safe to use while the boat was in motion.

286.    Prior to receiving the Safety Advisory in July 2023, California Plaintiffs and California Subclass members had no way of knowing that seating passengers in the bow area while their boats are in motion is unsafe and potentially deadly due to the potential for "bow swamping."

287.    Defendants knew and should have known since 1996 (Exh C, p. 3) and discovery will show as early as 1986, that Class Boats contained the Defect and associated safety risk as detailed in this Complaint. However, despite this knowledge, Defendants marketed and advertised the Class Boats as safe, high-quality boats with bow seating.

288.    California Plaintiffs and the California Subclass purchased and continue to purchase the Class Boats because of Defendants' overstated safe seating capacities. The safe seating capacities of the Class Boats is not an incidental part of the Class Boats or the purchases made by California Plaintiffs and the California Subclass members, who paid a premium for more seating on the Class Boats.

289.    California Plaintiffs and the California Subclass relied on Defendants' claims, advertisements, and/or other representations when deciding to purchase the Class Boats. California Plaintiffs and the California Subclass did not have any reason to suspect that the statements contained in Defendants' advertisements, websites, owner's manuals, brochures, and other materials were inaccurate.

290. The facts concealed or not disclosed by Defendants to California Plaintiffs and the California Subclass members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them.

291. Had Plaintiffs and the California Subclass members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them. California Plaintiffs and California Subclass members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

292. As of result of Defendants' misconduct, Plaintiffs and the California Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and California Plaintiffs and the California Subclass members have overpaid for their Class Boats.

293. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, California Plaintiffs and the California Subclass members have suffered and will continue to suffer actual damages.

294. California Plaintiffs and the California Subclass members seeks civil penalties, restitution, and disgorgement from Defendants as authorized by Cal. Bus. & Prof. Code § 17500, *et seq*.

California Plaintiffs and the California Subclass members also seek an order enjoining from continuing to engage in the methods, acts, and practices violating Cal. Bus. & Prof. Code § 17500, *et seq*. as well as costs, attorneys' fees and any other relief that the Court deems proper.

**Illinois Subclass Claims**

## NINTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### 810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210
### (By Plaintiffs Hart, on their own behalf and on behalf of the Illinois Subclass, and against Defendants MBL and MBI)

295.    Plaintiffs repeats and re-alleges each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

296.    Plaintiffs Kathryn and Brian Hart (hereafter "Illinois Plaintiffs") bring this count on behalf of themselves and the Illinois Subclass against Defendants.

297.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

298.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

299.    The Class Boats are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

300.    The Class Boats were manufactured and warranted by Defendants and are covered by the express warranty.

301.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Illinois state law.

302.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty," Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years. The "Limited Warranty" also

provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

303.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when Illinois Plaintiffs and members of the Illinois Subclass purchased or leased the Class Boats with the Defect.

304.    Illinois Plaintiffs and members of the Illinois Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform Illinois Plaintiffs and members of the Illinois Subclass that the Class Boats defective and unsafe for the use for which they were sold.  There is no permanent repair for the Defect.

305.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

306.    Privity is not required here because Illinois Plaintiffs and members of the Illinois Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

307.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is

unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Illinois Plaintiffs and the members of the Illinois Subclass.  Among other things, Illinois Plaintiffs and members of the Illinois Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the Illinois Subclass.

308.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Illinois Plaintiffs and the members of the Illinois Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

309.    Illinois Plaintiffs were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, Illinois Plaintiff and members of the Illinois Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs. Notice was sent for the Illinois claims made by Plaintiffs by letter dated March 10, 2025.

310.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

311.    As a direct and proximate result of Defendants' breach of express warranties, Illinois Plaintiffs and members of the Illinois Subclass have been damaged in an amount to be determined at trial.

312.    As a result of Defendants' breach of the express warranty, Illinois Plaintiffs and Illinois Subclass members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## TENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.
### (By Plaintiffs Hart, on their own behalf and on behalf of the Illinois Subclass, and against Defendants MBI and MBL)

313.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

314.    Illinois Plaintiffs bring this count on behalf of themselves and the Illinois Subclass against Defendants MBL and MBI.

315.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

316.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

317.    The Class Boats are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

318.    A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

319.    Defendants provided Illinois Plaintiffs and the Illinois Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

320.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

321.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Illinois Plaintiffs and the Illinois Subclass members with safe transportation. Instead, the Class Boats are defective.

322.    The Defect is inherent and was present in each Class Boat at the time of sale.

323.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, Illinois Plaintiffs and the Illinois Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

324.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

## ELEVENTH CAUSE OF ACTION
### VIOLATION OF ILLINOIS CONSUMER FRUAD AND DECEPTIVE BUISINESS PRACTICES ACT
### 815 ILCS 505/1, *et seq.*
### (By Plaintiffs Hart, on their own behalf and on behalf of the Illinois Subclass, and against Defendants)

325.    Plaintiffs repeat and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

326.    Illinois Plaintiffs bring this count on behalf of himself and the Illinois Subclass against Defendants MBL and MBI.

327.    Defendants MBL and MBI are "persons" as that term is defined in 815 ILCS 505/1(c).

328.    Illinois Plaintiffs and the Illinois Subclass members are "consumers" as that term is defined in 815 ILCS 505/1(e).

329.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

330.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a substantial

portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiffs.

331.    Defendants participated in unfair or deceptive trade practices that violated the Illinois CFA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

332.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

333.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

334.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

335.    Defendants knew or should have known that their conduct violated the Illinois CFA.

336.    Defendants were under a duty to Plaintiffs and the Illinois Subclass members to disclose the defective nature of the Class Boats because:

      (a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

      (b)    Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

      (c)    Defendants actively concealed the defective nature of the Class Boats from Plaintiffs and Illinois Subclass members at the time of sale and thereafter.

337.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

338.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Illinois Subclass members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Illinois Plaintiffs and the Illinois Subclass members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

339.    Plaintiffs and Illinois Subclass members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

340.    As of result of Defendants' misconduct, Plaintiffs and the Illinois Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and Plaintiffs and the Illinois Subclass Members have overpaid for their Class Boats.

341.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Illinois Subclass members have suffered and will continue to suffer actual damages.

342.    Defendants' violations present a continuing risk to Plaintiffs and the Illinois Subclass members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

343.    Pursuant to 815 ILCS 505/10a(a), Plaintiff seeks an order enjoining Defendants from their unlawful practices described above and a declaration that their conduct violations the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as statutory and actual damages, punitive damages, and reasonable attorneys' fees and costs of litigation.

344.    Illinois Plaintiffs and the Illinois Subclass members also seek attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1, *et seq*.

**Louisiana Subclass Claims**

**<u>TWELTH CAUSE OF ACTION</u>**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/ WARRANTY AGAINST REDHIBITORY DEFECTS**
**La. Civ. Code Art. 2520, 2524**
**(By Plaintiff Prindle, on his own behalf and on behalf of the Louisiana Subclass, and against Defendants MBI and MBL)**

345.    Plaintiffs repeats and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

346.    Plaintiff Jon Prindle ("Louisiana Plaintiff") brings this count on behalf of himself and the Louisiana Subclass against Defendants MBL and MBI.

347.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under La. Civ. Code Art. 2520, 2524.

348.    Under La. Civ. Code Art. 2520 and 2524, a warranty that the Class Boats did not have redhibitory defects was implied by law in the transactions when Louisiana Plaintiff and the Louisiana Subclass members purchased or leased their Class Boats from MBL and MBI.

349.    Defendants provided Louisiana Plaintiff and the Louisiana Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

350.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

351.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Louisiana Plaintiff and the Louisiana Subclass members with safe transportation. Instead, the Class Boats are defective.

352.    The Defect is inherent and was present in each Class Boat at the time of sale.

353.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value

of their Class Boats. Additionally, as a result of the Defect, Louisiana Plaintiffs and the Louisiana Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

354.    Louisiana Plaintiffs and members of the Louisiana Subclass were not required to notify MBL and MBI of the breach because affording MBL and MBI a reasonable opportunity to cure its breach of warranty would have been futile. Louisiana Plaintiff provided notice to MBL and MBI of its breach of express warranty by letter dated July 30, 2024.

355.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of La. Civ. Code Art. 2520 and 2524.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION LOUISIANA PRODUCT LIABILITY ACT**
**La. Stat. Ann. § 9:2800.51, *et seq.***
**(By Plaintiff Prindle, on his own behalf and on behalf of the Louisiana Subclass, and against Defendants)**

356.    Plaintiffs repeat and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

357.    Louisiana Plaintiff brings this count on behalf of himself and the Louisiana Subclass against Defendants MBL and MBI.

358.    Defendants MBL and MBI are each "manufacturers" within the meaning of La. Stat. Ann. § 9:2800.53(1)

359.    Louisiana Plaintiff and the Louisiana Subclass members are "claimants" as that term is defined in La. Stat. Ann. § 9:2800.53(4).

360.    The Louisiana Product Liability Act ("LPLA") makes manufacturers liable for the damages caused by their products which are "unreasonably dangerous" in one of four ways: (1) in

construction or composition; (2) design; (3) inadequate warning; and (4) nonconformity to express warranty. La. Stat. Ann. § 9:2800.55-58.

361.    Defendants manufactured, sold, and distributed the Class Boats, including their defects, which render the Class Boats unreasonably dangerous with an associated safety risk og bow swamping which can lead injury or death of passengers seated in the bow, and putting vehicle operators, other passengers, and other boaters at risk for injury.  Louisiana Plaintiffs and the Louisiana Subclass used the Class Boats in a reasonably foreseeable manner by using the vehicles to transport themselves and others through waterways.

362.    The Class Boats are unreasonable dangerous in design, construction and/or composition which renders the bow to be prone to swamping, which can cause injury to or death of passengers seated in the bow, and putting vehicle operators, other passengers, and other boaters at risk for injury.

363.    The Class Boats are unreasonably dangerous due to the Defect and Defendant's failure to disclose the Defect as well as its associated safety risk to Louisiana Plaintiffs and the Louisiana Subclass.  At the time Louisiana Plaintiffs and the Louisiana Subclass purchased their Class Boats, Defendants knew, or should have known, that the Defect in the Class Boats would cause the Class Boats to malfunction and the bow to swamp.  Further, Defendants knew, or should have known, that this associated safety risk would cause the Class Boats to contain an inherent safety risk, putting drivers, passengers, and other boaters at risk for injury. However, Defendants provided no warnings or otherwise conveyed these risks to Louisiana Plaintiff and the Louisiana Subclass.

364.    The Class Boats are also unreasonably dangerous because the existence of the Defect and its associated safety risk, and Defendants' failure to disclose either violates the express

warranty Defendant provided that the Class Boats were safe, reliable, and functional vehicles capable of providing transportation and that Defendant's warranties would correct any known defects in the Class Boat' materials and/or workmanship. Such warranties induced Louisiana Plaintiff and the Louisiana Subclass to purchase the Class Boats. These representations were untrue at the time of the purchase and/or lease of the Class Boats because Defendants knew that the Class Boats contained the Defect and its associated safety risk and further knew they would not honor the warranty for the Defect by remedying the Defect. Defendants' failure to provide Class Boats that conformed with their representations lead to the injuries sustained by Louisiana Plaintiff and the Louisiana Subclass.

365.    Defendants knowingly concealed, suppressed, and/or omitted the existence of the Defect and its associated safety risk in the Class Boats at the time of their sale or lease and at all relevant times thereafter. Defendants failed to inform Louisiana Plaintiff and the Louisiana Subclass of the Defect in their Class Boats at the time of purchase or lease and all times thereafter and Louisiana Plaintiffs and the Louisiana Subclass had no independent knowledge that the Class Boats incorporate the Defect.

366.    Had Defendants disclosed that the Class Boats had the Defect and associated safety risk, Louisiana Plaintiff and the Louisiana Subclass would not have purchased or leased the Class Boats, or would have paid less for their vehicles.

367.    As a proximate and direct result of Defendants' conduct as described herein, Louisiana Plaintiff and the Louisiana Subclass members have suffered and continue to suffer harm by the loss of seating in the bows of their vehicles, , and other damages to be determined at trial. Louisiana Plaintiff and the Louisiana Subclass have also suffered the ascertainable loss of the

benefit of the bargain they reached at the time of purchase or lease, and the diminished value of their Class Boats.

368.    The conduct of Defendants caused unavoidable and substantial injury to Class Boat owners and lessees (who were unable to have reasonably avoided injury due to no fault of their own and Defendants' concealment of the Defect) without any countervailing benefit to consumers.

369.    Although not required, Louisiana Plaintiff provided notice to Defendants of their claims via letter dated July 30, 2024.

370.    The applicable period of prescription of the LPLA has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

371.    Pursuant to La. Civ. Ann. Art. 2315, Louisiana Plaintiffs and the Louisiana Subclass seek to recover compensatory damages for past and future harms in an amount to be determined at trial, and any other just and proper relief available.

**Massachusetts Subclass Claims**

**FOURTEENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Mass. Gen. Laws ch. 106 §§ 2-313 and 2A-210**
**(By Plaintiff Snow, on his own behalf and on behalf of the Massachusetts Subclass, and against Defendants MBL and MBI)**

372.    Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

373.    Plaintiff Snow (hereafter "Massachusetts Plaintiff") brings this count on behalf of himself and the Massachusetts Subclass against Defendants.

374.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Mass. Gen. Laws ch. 106 §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

375.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Mass. Gen. Laws ch. 106 § 2A-103(1)(p).

376.    The Class Boats are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

377.    The Class Boats were manufactured and warranted by Defendants and are covered by the express warranty.

378.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Massachusetts state law.

379.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendants' express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

380.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when Massachusetts Plaintiff and members of the Massachusetts Subclass purchased or leased the Class Boats with the Defect.

381.    Massachusetts Plaintiff and members of the Massachusetts Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform Massachusetts Plaintiff and

members of the Massachusetts Subclass that the Class Boats were defective and unsafe for the use for which they were sold.  There is no permanent repair for the Defect.

382.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendants and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

383.    Privity is not required here because Massachusetts Plaintiff and members of the Massachusetts Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty  The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

384.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Massachusetts Plaintiff and the members of the Massachusetts Subclass.  Among other things, Massachusetts Plaintiff and members of the Massachusetts Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the Massachusetts Subclass.

385.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Massachusetts Plaintiff and the members of the Massachusetts Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

386.    Massachusetts Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, Massachusetts Plaintiff and members of the Massachusetts Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs.    Plaintiff Snow also provided notice to Defendants of its conduct by letter dated March 10, 2025.

387.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

388.    As a direct and proximate result of Defendants' breach of express warranties, Massachusetts Plaintiff and members of the Massachusetts Subclass have been damaged in an amount to be determined at trial.

389.    As a result of Defendants' breach of the express warranty, Massachusetts Plaintiff and Massachusetts Subclass members are entitled to legal and equitable relief against Defendants,

including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**FIFTEENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mass. Gen. Laws ch. 106 §§ 2-314 and 2A-212**
**(By Plaintiff Snow, on his own behalf and on behalf of the Massachusetts Subclass, and against Defendants MBI and MBL)**

390.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

391.    Massachusetts Plaintiff brings this count on behalf of himself and the Massachusetts Subclass against Defendants MBL and MBI.

392.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Mass. Gen. Laws ch. 106 §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

393.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Mass. Gen. Laws ch. 106 § 2A-103(1)(p).

394.    The Class Boats are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

395.    A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Mass. Gen. Laws ch. 106 §§ 2-314 and 2A-212.

396.    Defendants provided Massachusetts Plaintiff and the Massachusetts Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe use and

transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

397.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

398.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended use and purpose of providing Massachusetts Plaintiff and the Massachusetts Subclass members with safe transportation. Instead, the Class Boats are defective.

399.    The Defect is inherent and was present in each Class Boat at the time of sale.

400.    Massachusetts Plaintiffs and members of the Massachusetts Subclass were not required to notify MBL and MBI of the breach because affording MBL and MBI a reasonable opportunity to cure its breach of warranty would have been futile.  Nonetheless, Massachusetts Plaintiff provided Notice to MBL and MBI of its breach of express warranty by letter dated March 10, 2025.

401.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, Massachusetts Plaintiff and the Massachusetts Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

402.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of Mass. Gen. Laws ch. 106 §§ 2-314 and 2A-212.

### SIXTEENTH CAUSE OF ACTION
### VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT
#### Mass. Gen. Laws 93A, § 1, *et seq.*
#### (By Plaintiff Snow, on his own behalf and on behalf of the Massachusetts Subclass, and against Defendants)

403.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

404.    Massachusetts Plaintiff brings this count on behalf of himself and the Massachusetts Subclass against Defendants MBL and MBI.

405.    Defendants MBL and MBI, Massachusetts Plaintiff and the Massachusetts Subclass are "persons" within the meaning of Mass. Gen. Laws 93A, § 1(a).

406.    The Massachusetts Consumer Protection Act ("MCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws 93A, § 2(a). MBL and MBI engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the MCPA.

407.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses. The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Massachusetts Plaintiff.

408.    Defendants participated in unfair or deceptive trade practices that violated the Massachusetts MCPA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-

designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

409.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

410.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

411.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

412.    Defendants knew or should have known that their conduct violated the Massachusetts MCPA.

413.    Defendants were under a duty to Massachusetts Plaintiff and the Massachusetts Subclass members to disclose the defective nature of the Class Boats because:

      (a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

(b)     Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

(c)     Defendants actively concealed the defective nature of the Class Boats from Plaintiff and Massachusetts Subclass members at the time of sale and thereafter.

414.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

415.    The facts concealed or not disclosed by Defendants to Massachusetts Plaintiff and the Massachusetts Subclass members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Massachusetts Plaintiff and the Class members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

416.    Massachusetts Plaintiff and Massachusetts Class members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

417.    As of result of Defendants' misconduct, Massachusetts Plaintiff and the Massachusetts Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and Massachusetts Plaintiff and the Massachusetts Subclass members have overpaid for their Class Boats.

418.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Massachusetts Plaintiff and the Massachusetts Subclass members have suffered and will continue to suffer actual damages.

419.    Defendants' violations present a continuing risk to Plaintiff and the Massachusetts Subclass members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

420.    Massachusetts Plaintiff provided notice of his claims by letter dated March 10, 2025.

421.    Pursuant to Mass. Gen. Laws 93A, § 9, Massachusetts Plaintiff and members of the Massachusetts Subclass seek monetary relief against Defendant measures as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts Plaintiff and each member of the Massachusetts Subclass. Because Defendant's conduct was committed willfully and knowingly, Massachusetts Plaintiff and members of the Massachusetts Subclass are entitled to recover, for Massachusetts Plaintiff and each member of the Massachusetts Subclass, up to three times actual damages, but no less than two times actual damages.

**Michigan Subclass Claims**

**SEVENTEENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Mich. Comp. Laws §§ 440.2313 440.2803, and 440.2860**
**(By Plaintiff Lucero on his own behalf and on behalf of the Michigan Subclass, and against Defendants MBL and MBI)**

422.    Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

423. Plaintiff Lucero (hereafter "Michigan Plaintiff") brings this count on behalf of themselves and the Michigan Subclass against Defendant

424. Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and a "seller" of motor vehicles under § 440.2103(1)(c).

425. With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

426. The Class Boats are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

427. The Class Boats were manufactured and warranted in the Class Boats by Defendants and are covered by the express warranty.

428. Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Michigan state law.

429. In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

430. Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when Michigan Plaintiff and members of the Michigan Subclass purchased or leased the Class Boats with the Defect.

431. Michigan Plaintiff and members of the Michigan Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform Michigan Plaintiff and members of the Michigan Subclass that the Class Boats defective and unsafe for the use for which they were sold. There is no permanent repair for the Defect.

432. Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

433. Privity is not required here because Michigan Plaintiff and members of the Michigan Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty  The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

434. Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Michigan Plaintiff and the members of the Michigan Subclass.  Among other things, Michigan

Plaintiff and members of the Michigan Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants, and Michigan Plaintiff and members of the Michigan Subclass.

435.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Michigan Plaintiff and the members of the Michigan Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

436.    Michigan Plaintiff were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, Michigan Plaintiff and members of the Michigan Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs. Plaintiff Lucero provided notice to Defendants of its conduct by letter dated March 10, 2025.

437.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

438.    As a direct and proximate result of Defendants' breach of express warranties, Michigan Plaintiff and members of the Michigan Subclass have been damaged in an amount to be determined at trial.

439.    As a result of Defendants' breach of the express warranty, Michigan Plaintiff and Michigan Subclass members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**EIGHTEENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mich. Comp. Laws §§ 440.2314, 440.2315, and 440.2860.**
**(By Plaintiff Lucero, on his own behalf and on behalf of the Michigan Subclass, and against Defendants MBI and MBL)**

440.    Plaintiffs repeats and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

441.    Michigan Plaintiff brings this count on behalf of himself and the Michigan Subclass against Defendants MBL and MBI.

442.    Defendants MBL and MBI are and were at all relevant times each "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2314(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

443.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Mich. Comp. Laws. § 440.2803(1)(p).

444.    The Class Boats are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws. §§ 440.2105(1) and 440.2803(1)(h).

445.    A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Mich. Comp. Laws §§ 440.2314 and 440.2862.

446.    Defendants provided Michigan Plaintiff and the Michigan Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

447.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

448.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Michigan Plaintiff and the Michigan Subclass members with safe transportation. Instead, the Class Boats are defective.

449.    The Defect is inherent and was present in each Class Boat at the time of sale.

450.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, Michigan Plaintiff and the Michigan Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

451.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of Mich. Comp. Laws §§ 440.2314, 440.2315, and 440.2860.

## NINETEENTH CAUSE OF ACTION
### VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT
#### Mich. Comp. Laws §445.903, *et seq.*
**(By Plaintiff Lucero on his own behalf and on behalf of the Michigan Subclass, and against Defendants)**

452.    Plaintiffs repeat and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

453.    Michigan Plaintiff brings this count on behalf of himself and the Michigan Subclass against Defendants MBL and MBI.

454.    Defendants MBL and MBI, Plaintiff, and members of the Subclass are "persons" as that term is defined in Mich. Comp. Laws § 445.902(1)(d).

455.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1).  Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have…characteristics… that they do not have"; "(e) Representing that goods or services are of a particular standard…if they are another"; "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."; "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "(cc) Failing to reveal

facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). By failing to disclose and actively concealing that the Defect rendered the Class Boats unsafe, by marketing the Class Boats as safe and of high quality, and by presenting themselves as reputable manufacturers that valued safety and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Michigan CPA.

456.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses. The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiff.

457.    Defendants participated in unfair or deceptive trade practices that violated the Michigan CPA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

458.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

459.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

460.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

461.    Defendants knew or should have known that their conduct violated the Michigan CPA.

462.    Defendants were under a duty to Plaintiff and the Michigan Subclass members to disclose the defective nature of the Class Boats because:

(a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

(b)    Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

(c)    Defendants actively concealed the defective nature of the Class Boats from Plaintiff and Michigan Subclass members at the time of sale and thereafter.

463.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

464.    The facts concealed or not disclosed by Defendants to Plaintiff and the Michigan Subclass members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area,

as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Plaintiff and the Class members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

465.    Plaintiff and Michigan Class members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

466.    As of result of Defendants' misconduct, Plaintiff and the Michigan Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and Plaintiffs and the Michigan Class members have overpaid for their Class Boats.

467.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the Michigan Class members have suffered and will continue to suffer actual damages.

468.    Defendants' violations present a continuing risk to Plaintiff and the Michigan Class members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

469.    Pursuant to Mich. Comp. Laws § 445.11 Plaintiff seeks an order enjoining Defendants from their unlawful practices described above and a declaration that their conduct violations the Consumer Fraud and Deceptive Business Practices Act, as well as statutory and actual damages, punitive damages, and reasonable attorneys' fees and costs of litigation.

**New Hampshire Subclass Claims**

**TWENTIETH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**N.H. Rev. Stat. Ann §§ 382-A:2-313, 382-A:2A-103, and 382-A:2A-210**

**(By Plaintiff Martino, on his own behalf and on behalf of the New Hampshire Subclass, and against Defendants MBL and MBI)**

470.    Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

471.    Plaintiff Martino (hereafter "New Hampshire Plaintiff") brings this count on behalf of themselves and the New Hampshire Subclass against Defendant.

472.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under N.H. Rev. Stat. Ann § 382-A:2-104(1) and a "seller" of motor vehicles under § 382-A:2A-103(1)(d).

473.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under N.H. Rev. Stat. Ann § 382-A:2A-103(1)(p).

474.    The Class Boats are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. Ann §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

475.    The Class Boats were manufactured and warranted in the Class Boats by Defendants and are covered by the express warranty.

476.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Michigan state law.

477.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects

related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

478.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when New Hampshire Plaintiff and members of the New Hampshire Subclass purchased or leased the Class Boats with the Defect.

479.    New Hampshire Plaintiff and members of the New Hampshire Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform New Hampshire Plaintiff and members of the New Hampshire Subclass that the Class Boats defective and unsafe for the use for which they were sold.  There is no permanent repair for the Defect.

480.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

481.    Privity is not required here because New Hampshire Plaintiff and members of the New Hampshire Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty  The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

482.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing

consumers about the Defect. The time limits are unconscionable and inadequate to protect New Hampshire Plaintiff and the members of the New Hampshire Subclass. Among other things, New Hampshire Plaintiff and members of the New Hampshire Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the New Hampshire Subclass.

483.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make New Hampshire Plaintiff and the members of the New Hampshire Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

484.    New Hampshire Plaintiff was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, New Hampshire Plaintiff and members of the New Hampshire Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs.    Plaintiff Martino provided notice to Defendants of its conduct by letter dated March 10, 2025.

485.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

486.    As a direct and proximate result of Defendants' breach of express warranties, New Hampshire Plaintiff and members of the New Hampshire Subclass have been damaged in an amount to be determined at trial.

487.    As a result of Defendants' breach of the express warranty, New Hampshire Plaintiff and New Hampshire Subclass members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## TWENTY-FIRST CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### N.H. REV. STAT. ANN §§ 382-A:2-314, 382-A:2-315, 382-A:2A-103, and 82-A:2A-212
### (By Plaintiff Martino, on his own behalf and on behalf of the New Hampshire Subclass, and against Defendants MBI and MBL)

488.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

489.    New Hampshire Plaintiff brings this count on behalf of themselves and the New Hampshire Subclass against Defendants MBL and MBI.

490.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under N.H. Rev. Stat. Ann. §§ 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

491.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under N.H. Rev. Stat. Ann. § 382-A:2A-103(1)(p).

492.     The Class Boats are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. Ann. §§ 382-A:2-105(1) and 382-A:2A-103 (1)(h).

493.     A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under N.H. Rev. Stat. Ann. §§ 382-A:2-314 and 382-A:2A-212.

494.     Defendants provided New Hampshire Plaintiff and the New Hampshire Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

495.     Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

496.     Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing New Hampshire Plaintiff and the New Hampshire Subclass members with safe transportation. Instead, the Class Boats are defective.

497.     The Defect is inherent and was present in each Class Boat at the time of sale.

498.     As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value

of their Class Boats. Additionally, as a result of the Defect, New Hampshire Plaintiff and the New Hampshire Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

499.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of N.H. Rev. Stat. Ann. §§ 382-A:2-314, 382-A:2-315, 382-A:2A-103, and 82-A:2A-212.

## TWENTY-SECOND CAUSE OF ACTION
### VIOLATION OF THE N.H. CONSUMER PROTECTION ACT
### N.H. Rev. Stat. Ann. §358-A:1, *et seq.*
### (By Plaintiff Martino, on his own behalf and on behalf of the New Hampshire Subclass, and against Defendants)

500.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

501.    New Hampshire Plaintiff brings this count on behalf of himself and the New Hampshire Subclass against Defendants MBL and MBI.

502.    Defendants MBL and MBI, Plaintiffs, and members of the Subclass are "persons" as that term is defined in N.H. Rev. Stat. Ann. § 358-A:1(I).

503.    Defendants were and are engaged in "trade or commerce" within the meaning of N.H. Rev. Stat. Ann. § 358-A:1(II).

504.    The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … [r]epresenting that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … [r]epresenting that goods or services are of a particular standard, quality, or grade, … if they are of another; … [and]

[] [a]dvertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. Ann. §358A:2(V), (VII), and (IX).

505.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiff.

506.    Defendants participated in unfair or deceptive trade practices that violated the New Hampshire CPA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

507.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

508.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

509.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

510.    Defendants knew or should have known that their conduct violated the New Hampshire CPA.

511.    Defendants were under a duty to New Hampshire Plaintiff and the New Hampshire Subclass members to disclose the defective nature of the Class Boats because:

(a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

(b)    Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

(c)    Defendants actively concealed the defective nature of the Class Boats from Plaintiff and New Hampshire Subclass members at the time of sale and thereafter.

512.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

513.    The facts concealed or not disclosed by Defendants to New Hampshire Plaintiff and the New Hampshire Class members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had New Hampshire Plaintiff and the New Hampshire Subclass

members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

514.    New Hampshire Plaintiff and New Hampshire Subclass members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

515.    As of result of Defendants' misconduct, Plaintiffs and the New Hampshire Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and New Hampshire Plaintiff and the New Hampshire Subclass members have overpaid for their Class Boats.

516.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, New Hampshire Plaintiff and the New Hampshire Subclass members have suffered and will continue to suffer actual damages.

517.    Defendants' violations present a continuing risk to New Hampshire Plaintiff and the New Hampshire Subclass members as well as to the general public. Defendants' unlawful acts and practices.

**Tennessee Subclass Claims**

**TWENTY-THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Tenn. Code §§ 47-2-313 and 47-2A-210**
**(By Plaintiff Mohler and Plaintiff Orr, on their own behalf and on behalf of the Tennessee Subclass, and against Defendants MBL and MBI)**

518.    Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

519.    Plaintiff Mohler and Plaintiff Orr (hereafter "Tennessee Plaintiffs") bring this count on behalf of themselves and the Tennessee Subclass against Defendant.

520.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "seller" of motor vehicles under § 47-2-103(1)(d).

521.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

522.    The Class Boats are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

523.    The Class Boats were manufactured and warranted in the Class Boats by Defendants and are covered by the express warranty.

524.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Michigan state law.

525.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

526.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when Tennessee Plaintiffs and members of the Tennessee Subclass purchased or leased the Class Boats with the Defect.

527.    Tennessee Plaintiffs and members of the Tennessee Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform Tennessee Plaintiffs and members of the Tennessee Subclass that the Class Boats defective and unsafe for the use for which they were sold. There is no permanent repair for the Defect.

528.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

529.    Privity is not required here because Tennessee Plaintiffs and members of the Tennessee Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty  The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

530.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Tennessee Plaintiffs and the members of the Tennessee Subclass.  Among other things, Tennessee Plaintiffs and members of the Tennessee Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining

power and knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the Tennessee Subclass.

531. Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Tennessee Plaintiffs and the members of the Tennessee Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

532. Tennessee Plaintiffs were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, Tennessee Plaintiffs and members of the Tennessee Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs.    Plaintiff Mohler provided notice to Defendants of its conduct by letter dated July 30, 2024.  Plaintiff Orr provided notice to Defendants of its conduct by letter dated March 10, 2025.

533. As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

534. As a direct and proximate result of Defendants' breach of express warranties, Tennessee Plaintiffs and members of the Tennessee Subclass have been damaged in an amount to be determined at trial.

535.    As a result of Defendants' breach of the express warranty, Tennessee Plaintiffs and Tennessee Subclass members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## TWENTY-FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Tenn. Code §§ 47-2-314 and 47-2A-212
### (By Plaintiff Mohler and Plaintiff Orr, on their own behalf and on behalf of the Tennessee Subclass, and against Defendants MBI and MBL)

536.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

537.    Tennessee Plaintiffs bring this count on behalf of themselves and the Tennessee Subclass against Defendants MBL and MBI.

538.    Defendants MBL and MBI are and were at all relevant times each a "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "seller" of motor vehicles under § 47-2-103(1)(d).

539.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

540.    The Class Boats are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) AND 47-2A-103(1)(h).

541.    A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Tenn. Code §§ 47-2-314 and 47-2A-212.

542.    Defendants provided Tennessee Plaintiffs and the Tennessee Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable

and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

543.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

544.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Tennessee Plaintiffs and the Tennessee Subclass members with safe transportation. Instead, the Class Boats are defective.

545.    The Defect is inherent and was present in each Class Boat at the time of sale.

546.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, Tennessee Plaintiffs and the Tennessee Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

547.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of Tenn. Code §§ 47-2-314 and 47-2A-212.

### TWENTY-FIFTH CAUSE OF ACTION
### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

**Tenn. Code Ann. § 47-18-101,** *et seq.*
**(By Plaintiff Mohler and Plaintiff Orr, on their own behalf and on behalf of the**
**Tennessee Subclass, and against Defendants)**

548.    Plaintiffs repeat and re-alleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

549.    Tennessee Plaintiffs bring this count on behalf of themselves and the Tennessee Subclass against Defendants MBL and MBI.

550.    Tennessee Plaintiffs and members of the Tennessee Subclass are "consumers" as defined by the Tenn. Code Ann. § 47-18-103(2).

551.    Defendants MBL and MBI, Plaintiffs, and members of the Subclass are "persons" as that term is defined in Tenn. Code Ann. § 47-18-103(9).

552.    The Class Boats are "goods" within the meaning Tenn. Code Ann. § 47-18-103(5).

553.    Defendants were and are engaged in "trade," "commerce," and/or "consumer transaction[s]" within the meaning of Tenn. Code Ann. § 47-18-103(11).

554.    The Tennessee Consumer Protection Act ("Tennessee CPA") provides that, "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices", including but not limited to, "(2) causing likelihood of confusion or misunderstanding as to the certification of goods . . . ;" "(5) representing that goods . . . have . . . characteristics . . . uses, benefits . . . that they do not have;" "(7) representing that goods . . . are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertising goods or services with intent not to sell them as advertised;" "(22) using any advertisement containing an offer to sell goods . . . when the offer is not a bona fide effort to sell the advertised goods . . . ;" "(27) engaging in any other act or practice which is deceptive to the consumer or any other person…" Tenn. Code Ann. § 47-18-104(a), (b).

Defendants engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Tennessee CPA.

555.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiff.

556.    Defendants participated in unfair or deceptive trade practices that violated the Tennessee CPA. As described below and alleged throughout the Complaint, by failing to disclose the Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

557.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

558.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

559.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

560.    Defendants knew or should have known that their conduct violated the Tennessee CPA.

561.    Defendants were under a duty to Tennessee Plaintiffs and the Tennessee Subclass members to disclose the defective nature of the Class Boats because:

(a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

(b)    Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

(c)    Defendants actively concealed the defective nature of the Class Boats from Plaintiffs and Tennessee Subclass members at the time of sale and thereafter.

562.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

563.    The facts concealed or not disclosed by Defendants to Tennessee Plaintiffs and the Tennessee Class members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Tennessee Plaintiffs and the Class members known that the Class Boats

suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

564.    Tennessee Plaintiffs and Tennessee Subclass members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

565.    As of result of Defendants' misconduct, Tennessee Plaintiffs and the Tennessee Subclass members have been harmed and suffered actual damages in that the Class Boats are defective and Plaintiffs and the Tennessee Class members have overpaid for their Class Boats.

566.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Tennessee Plaintiffs and the Tennessee Subclass members have suffered and will continue to suffer actual damages.

567.    Defendants' violations present a continuing risk to Tennessee Plaintiffs and the Tennessee Class members as well as to the general public. Defendants' unlawful acts and practices.

**Virginia Subclass Claims**

**TWENTY-SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Va. Code Ann. §§ 8.2-313 and 8.2A-210**
**(By Plaintiff Chaffin, on his own behalf and on behalf of the Virginia Subclass, and against Defendants MBL and MBI)**

568.    Plaintiffs repeat and re-allege each and every allegation contained above in paragraphs 1 through 168 above as if fully set forth herein.

569.    Plaintiff Chaffin (hereafter "Virginia Plaintiff") bring this count on behalf of themselves and the Virginia Subclass against Defendant.

570.    Defendants MBL and MBI are and were at all relevant times each a "merchant" with respect to motor vehicles under Va. Code Ann. § 8.2-104(1) and § 8.2A-103(1)(t), and a "seller" of motor vehicles under § 8.2-103(1)(d).

571.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Va. Code Ann. § 8.2A-103(p).

572.    The Class Boats are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105(1) and § 8.2A-103(1)(h).

573.    The Class Boats were manufactured and warranted in the Class Boats by Defendants and are covered by the express warranty.

574.    Defendants provided all purchasers and lessees of the Class Boats with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Virginia state law.

575.    In a section entitled "What 'Is' Covered by the Malibu Boats Limited Warranty" Defendant's express warranty ("Limited Warranty") provides in relevant part that "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat" for a period of three to five years.  The "Limited Warranty" also provides that "[f]or the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame."

576.    Defendants' Limited Warranty and other warranties regarding the Class Boats formed a basis of the bargain that was breached when Virginia Plaintiff and members of the Virginia Subclass purchased or leased the Class Boats with the Defect.

577.     Virginia Plaintiff and members of the Virginia Subclass experienced defects within the warranty period, as tolled by Defendants' fraudulent concealment. Despite the existence of the Limited Warranty, Defendants failed to inform Virginia Plaintiff and members of the Virginia Subclass that the Class Boats defective and unsafe for the use for which they were sold.  There is no permanent repair for the Defect.

578.     Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials of any part supplied by Defendant and then failing to do so. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Class Boats materials defects.

579.     Privity is not required here because Virginia Plaintiff and members of the Virginia Subclass are intended third-party beneficiaries of contracts between Defendants and its distributors and dealers, and specifically, of Defendants' express warranties, including the Limited Warranty The dealers were not intended to be the ultimate consumers of the Class Boats and have rights under the warranty agreements provided with the Class Boats; the warranty agreements were designed for and intended to benefit the consumer only.

580.     Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Defendants knowingly sold or leased defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Virginia Plaintiff and the members of the Virginia Subclass.  Among other things, Virginia Plaintiff and members of the Virginia Subclass did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonable favored Defendants. A gross disparity in bargaining power and

knowledge of the extent, severity, and safety risk of the Defect existed between Defendants and members of the Virginia Subclass.

581.    Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Virginia Plaintiff and the members of the Virginia Subclass whole, because Defendants have failed and/or has refused to adequately provide the promised remedies, i.e., a permanent repair, within a reasonable time.

582.    Virginia Plaintiff were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from, among other sources, internal sources including but not limited to its knowledge of the design, the pre-production testing, complaints for consumers and litigation against them for injuries and wrongful death as a result of the Defect. Nonetheless, Virginia Plaintiff and members of the Virginia Subclass provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendant-authorized providers of warranty repairs.   Plaintiff Chaffin provided notice to Defendants of its conduct by letter dated March 10, 2025.

583.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Boats suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Boats.

584.    As a direct and proximate result of Defendants' breach of express warranties, Virginia Plaintiff and members of the Virginia Subclass have been damaged in an amount to be determined at trial.

585.    As a result of Defendants' breach of the express warranty, Virginia Plaintiff and Virginia Subclass members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## TWENTY-SEVENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Va. Code Ann. §§ 8.2-314 and 8.2A-212
### (By Plaintiff Chaffin, on his own behalf and on behalf of the Virginia Subclass, and against Defendants MBI and MBL)

586.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

587.    Virginia Plaintiff brings this count on behalf of himself and the Virginia Subclass against Defendants MBL and MBI.

588.    Defendants MBL and MBI are and were at all relevant times each a "merchants" with respect to motor vehicles under Va. Code Ann. § 8.2-104(1) and § 8.2A-103(1)(t), and a "seller" of motor vehicles under § 8.2-103(1)(d).

589.    With respect to leases, Defendants are and were at all relevant times each a "lessor" of motor vehicles under Va. Code Ann. § 8.2A-103(p).

590.    The Class Boats are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105(1) and § 8.2A-103(1)(h).

591.    A warranty that the Class Boats were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Va. Code Ann. § 8.2-314 and § 8.2A-212.

592.    Defendants provided Virginia Plaintiff and the Virginia Subclass members with an implied warranty that the Class Boats and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Boats are not fit for their

ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Boats suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

593.    Defendants impliedly warranted that the Class Boats were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Boats, which were manufactured, supplied, distributed, and/or sold by Defendants, would provide safe and reliable transportation; and (ii) a warranty that the Class Boats would be fit for their intended use.

594.    Contrary to the applicable implied warranties, the Class Boats at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Virginia Plaintiff and the Virginia Subclass members with safe transportation. Instead, the Class Boats are defective.

595.    The Defect is inherent and was present in each Class Boat at the time of sale.

596.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Boats suffered an ascertainable loss of money, property, and/or value of their Class Boats. Additionally, as a result of the Defect, Virginia Plaintiff and the Virginia Subclass members were harmed and suffered actual damages in that the Class Boats' cannot be used for their intended purpose, including the seating of passengers in the bow.

597.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Boats were of merchantable quality and fit for such use in violation of Va. Code Ann. §§ 8.2-314 and 8.2A-212.

**TWENTY-EIGHTH CAUSE OF ACTION**
**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code Ann. § 59.1-200(A),** *et seq.*
**(By Plaintiff Chaffin, on their own behalf and on behalf of the Virginia Subclass, and against Defendants)**

598.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

599.    Virginia Plaintiff bring this count on behalf of themselves and the Virginia Subclass against Defendants MBL and MBI.

600.    Defendants, Virginia Plaintiffs and members of the Virginia Subclass are "person[s]" within the meaning of within the meaning of Va. Code Ann. § 59.1-198.

601.    The sale or lease of the Class Boats by Virginia Plaintiff and the Virginia Subclass members were for personal, family or household purposes and are "consumer transaction[s]" as defined by Va. Code Ann. § 59.1-198.

602.    The Class Boats are "goods" within the meaning Va. Code Ann. § 59.1-198.

603.    Defendant is a "supplier" as defined by Va. Code Ann. § 59.1-198.

604.    The Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-200(A), prohibits, *inter* alia: (1) "[m]isrepresenting that the Class Boats have certain quantities, characteristics, ingredients, uses, or benefits;" (2) "[m]isrepresenting that the goods or services are of a particular standard, quality, grade, style, or model;" (3) "[a]dvertising goods or services with the intent not to sell them as advertised;" and (4) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

605.    Defendants repeatedly engaged in these unfair and deceptive acts or practices in the course of their businesses.  The acts or practices were material, capable of deceiving a substantial portion of the purchasing public and caused economic harm to the purchasers and lessees of the Class Boats, including Plaintiff.

606.    Defendants participated in unfair or deceptive trade practices that violated the VCPA. As described below and alleged throughout the Complaint, by failing to disclose the

Defect, by concealing the Defect, by marketing its recreational boats as safe and well-designed and of high quality, and by presenting themselves as reputable manufacturers, warrantors, and/or distributors that valued safety and performance, and stood behind its vehicles as they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Boats. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Boats and the Defect in the course of their businesses.

607.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the sale of the Class Boats.

608.    Defendants' unfair and deceptive acts or practices occurred repeatedly in their trade or business, were capable of deceiving and did in fact deceive a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

609.    Defendants knew that the Class Boats suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

610.    Defendants knew or should have known that their conduct violated the VCPA.

611.    Defendants were under a duty to Virginia Plaintiffs and the Virginia Class members to disclose the defective nature of the Class Boats because:

    (a)    Defendants were in a superior position to know the true state of facts about the Defect and its associated safety risk in the Class Boats;

(b)     Defendants made partial disclosures about the safe seating capacity and quality of the Class Boats without revealing the defective nature of the Class Boats; and

(c)     Defendants actively concealed the defective nature of the Class Boats from Plaintiff and Virginia Class members at the time of sale and thereafter.

612.    By failing to disclose the Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

613.    The facts concealed or not disclosed by Defendants to Virginia Plaintiff and the Virginia Class members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Boats, or to pay less for them. Whether a recreational boat is prone to bow swamping when passengers are seated in the bow area, as Defendants indicated that passengers could safely do at the time of sale, is a material safety concern. Had Virginia Plaintiff and the Virginia Subclass members known that the Class Boats suffered from the Defect described herein, they would have not purchased or leased the Class Boats or would have paid less for them.

614.    Virginia Plaintiff and Virginia Subclass members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for recreational boats.

615.    As of result of Defendants' misconduct, Virginia Plaintiff and the Virginia Class members have been harmed and suffered actual damages in that the Class Boats are defective and Plaintiff and the Virginia Class members have overpaid for their Class Boats.

616.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Virginia Plaintiff and the Virginia Subclass members have suffered and will continue to suffer actual damages.

617.     Defendants' violations present a continuing risk to Virginia Plaintiff and the Virginia Subclass members as well as to the general public. Defendants' unlawful acts and practices.

## VIII.    **PRAYER FOR RELIEF**

618.     WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide and State Subclasses, respectfully request that the Court certify the proposed Nationwide and State Subclasses, including designating the named Plaintiffs as representatives of the Nationwide Class and their respective State Subclass and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiffs', the Nationwide Classes' and State Subclasses' favor and against Defendants including the following relief:

     i.    A declaration that any applicable statues of limitations are tolled due to Defendants' fraudulent concealment and that Defendants are estopped from relying on any statutes of limitations in defense;

     ii.    Restitution, compensatory damages, and costs for economic loss and out-of- pocket costs;

     iii.    Punitive and exemplary damages under applicable law;

     iv.    Reimbursement and compensation of the full purchase price for any repairs or replacements purchased by Plaintiffs or Class member to remedy the Defect;

     v.    A determination that Defendants are financially responsible for all Class notices and the administration of Class relief;

vi.        Any applicable statutory or civil penalties;

vii.       An order requiring Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded;

viii.      An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts;

ix.        Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

x.        Any such other and further relief the Court deems just and equitable.

## IX.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

Dated: March 17, 2025          Respectfully submitted,

By: /s/*Russell D. Paul*
Russell D. Paul (Bar No. 4647)
**BERGER MONTAGUE PC**
800 N. West Street, Suite 200
Wilmington, DE 19801
Tel.:  (302) 691-9545
Email: rpaul@bm.net

Shanon Carson (admitted *pro hac vice*)
Amey Park
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:  (215) 875-3000
Fax:  (215) 875-4604
Email: scaron@bm.net
       apark@bm.net

Mark Ozzello (admitted *pro hac vice*)
Calvin Marshall (admitted *pro hac vice*)
**THE OZZELLO PRACTICE PC**
400 Continental Blvd., 6th Floor
El Segundo, California 90245
Telephone:   (844) 774-2020

Facsimile:      (844) 774-2020
cmarshall@ozzellolaw.com
mark@ozzellolaw.com

*Attorneys for Plaintiffs and the Proposed Classes*