IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TERRY BLASINGAME, MICHAEL
FERRANDO, KATHRYN AND BRIAN
HART, JOHN PRINDLE, DOUGLAS
SNOW, MIKE LUCERO, COLBY MAR-
TINO, NICK MOHLER, DANIEL ORR,
and PATRICK CHAFFIN, individually
and on behalf of all
others similarly situated,
        *Plaintiffs*,

        v.

MALIBU BOATS, LLC, a Delaware
Limited Liability Company and MAL-
IBU BOATS, INC., a Delaware Corpo-
ration,
        *Defendants*.

No. 24-cv-00648-SB

---

Russell D. Paul, BERGER MONTAGUE PC, Wilmington, Delaware; Shanon J. Carson, Amey J. Park, BERGER MONTAGUE PC, Philadelphia, PA; Calvin A. Marshall, Mark A. Ozzello, THE OZZELLO PRACTICE PC, Calabasas, CA.

*Counsel for Plaintiffs.*

Steven L. Caponi, Matthew B. Goeller, K&L GATES LLP, Wilmington, Delaware; Kevin S. Asfour, K&L GATES LLP, Los Angeles, CA.

*Counsel for Defendants.*

---

### MEMORANDUM OPINION

August 7, 2026

BIBAS, *Circuit Judge*, sitting by designation.

The two best days in a boater's life are the day he buys his boat and the day he sells it. Boating, while thrilling, can be expensive and even dangerous.

But who is to blame when a boat fails to live up to expectations? Plaintiffs allege that boats manufactured and sold by Malibu Boats did not perform as advertised. They say that sales materials and the owner's manuals made claims about safe seating capacity that the boats failed to fulfill. These shortcomings, they assert, violate the boats' warranties and show that Malibu defrauded buyers. But only some of the plaintiffs' contract, tort, and consumer-protection claims hold water. And because of a jurisdictional issue, this court is the wrong forum for others. So I grant in part and deny in part Malibu's motion to dismiss and deny its motion to strike, as set forth in the attached summary table and an accompanying order.

## I. AFTER PLAINTIFFS BOUGHT MALIBU'S BOATS, THEY LEARNED OF A FLAW

Malibu Boats, LLC and Malibu Boats, Inc., manufacture and sell recreational boats. First Amended Complaint, D.I. 30, at ¶¶ 140–42. A few years ago, a child was killed while riding in one of Malibu's boats. *Id.* ¶ 154. The child, seated in the bow, was "washed out of" his seat "when water c[ame] over the front of the boat." *Id.* ¶ 155 (internal quotation marks omitted). This is called "bow swamping." *Id.* The wave pushed him into the water, where he was struck and killed by the boat's propeller. *Id.* His family sued Malibu and won on a wrongful-death claim. *Id.* ¶ 154.

In response to this incident, Malibu warned owners nationwide that many of its boats were at risk of bow swamping. *Id.* ¶ 155; *see also* D.I. 30-2 (Malibu Boats Service Advisory). Malibu told them it "now prohibit[ed] passengers in the bow area of similar boats while the boat is in motion," which "reduces the boat capacity by two (2) passengers." First Am. Compl. ¶ 155.

2

The plaintiffs, eleven owners of Malibu boats at risk of bow swamping, sued Malibu on behalf of themselves and a class of "all persons who purchased or leased" certain boat models. *Id.* ¶ 1. They allege that Malibu "knew of the existence and severity of" the bow-swamping risk "[a]s early as 1986," yet did nothing to warn those thinking about buying a Malibu. *Id.* ¶¶ 4–5. In fact, Malibu kept telling would-be buyers that the boats could seat those two passengers, as explained in the boats' owner's manuals. *Id.* ¶¶ 40, 51, 61, 71, 82, 92, 103, 114, 124, 135. The plaintiffs say that Malibu's actions violated express and implied warranties, the federal Magnuson-Moss Warranty Act, and state consumer-protection laws. *See id.* ¶¶ 202–617. They also assert claims on behalf of a nationwide class for fraud and unjust enrichment. *Id.* ¶¶ 180–201. None of the plaintiffs has been injured by bow swamping—indeed, none alleges that his or her bow has ever swamped in the roughly two decades since the boats were built. But each asserts that he would not have bought the boat, or would have paid less, had he known of the risk. *Id.* ¶ 613.

Malibu moved to dismiss all twenty-eight causes of action on numerous grounds. *See generally* Defs' Mot. to Dismiss, D.I. 33. It also moved to strike the plaintiffs' class allegations. Defs' Mot. to Strike, D.I. 35.

The result is a split decision. This Court lacks jurisdiction over the federal-warranty claims brought on behalf of the nationwide class because the plaintiffs did not meet a jurisdictional requirement in the Magnuson-Moss Warranty Act, so I dismiss those claims. I reject Malibu's contention that the plaintiffs lack standing to pursue the fraud and unjust-enrichment claims brought on behalf of a putative nationwide

3

class, but I dismiss some of those claims on the merits. I likewise dismiss all of the state-law express- and implied-warranty claims on the merits because no plaintiff plausibly alleges a breach. Plus, some plaintiffs who bought their boats secondhand face additional barriers to recovery. Without the state-law warranty claims, the named plaintiffs' individual Magnuson-Moss claims fail, so I dismiss them too. But the consumer-protection claims survive. Lastly, I deny as premature Malibu's motion to strike the plaintiffs' class allegations.

## II. THIS COURT LACKS JURISDICTION OVER THE MAGNUSON-MOSS CLASS CLAIMS

This Court has jurisdiction over the plaintiffs' state-law claims under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2)(A). At least one plaintiff is diverse from at least one defendant, the proposed class "numbers in the tens of thousands," and the alleged damages exceeds $5 million. First Am. Compl. ¶¶ 31, 174. None of that Act's exceptions applies, so this Court has jurisdiction over the state-law claims.

The plaintiffs also bring individual and class claims under the federal Magnuson-Moss Warranty Act. Since those claims arise under federal law, federal district courts have jurisdiction so long as that Act's requirements are met. Magnuson-Moss has an amount-in-controversy requirement: not less than "$50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). In ordinary diversity cases, claims of multiple plaintiffs cannot be aggregated to meet the amount in controversy. *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008). If that no-aggregation principle applies to those claims, that would be a problem—all plaintiffs bought their boats for far less than that. *See, e.g.*, First Am.

4

Compl. ¶¶ 36 (Blasingame paid over $39,000 in 2005), 120 (Orr paid roughly $21,500 in 2007).

The Third Circuit has not decided whether the no-aggregation rule applies to Magnuson-Moss claims, but courts in other circuits have found that it does not. *See, e.g., Walsh v. Ford Motor Co.*, 130 F.R.D. 514, 515 (D.D.C. 1990). That is the only sensible result, given the statute's text. Subsection (d)(3)(B) requires courts to compute the amount in controversy "on the basis of *all claims to be determined in this suit*." § 2310(d)(3)(B) (emphasis added). That gestures, not so subtly, towards aggregation. And the rest of the statute confirms that reading. Subsection (d)(3)(A) sets out an amount-in-controversy requirement of $25 for each "individual claim." Subsection (d)(3)(B), then, is best understood as allowing aggregation of all those individual claims exceeding the $25 minimum threshold. Because it is not legally certain that all plaintiffs together cannot recover more than $50,000, this Court has jurisdiction over the individual Magnuson-Moss claims. *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 758–59 (6th Cir. 2008).

The Magnuson-Moss class claims, however, are a different story. That Act lets consumers "damaged" by a warrantor's failure to comply with a warranty or "service contract" sue the warrantor in federal or state court. § 2310(d)(1). But the Act limits the power of federal courts, explaining that "[n]o claim shall be cognizable in a suit brought [in federal district court] if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." § 2310(d)(3)(C). The Third Circuit treats this limitation as a "jurisdictional requirement[]." *Rowland v. Bissell*

*Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023). So even though we may "presum[e] that federal courts have diversity jurisdiction" when the requirements of diversity are met, that presumption is rebutted by Magnuson-Moss. *Id.* Nor does the Class Action Fairness Act change the result, as the Magnuson-Moss Act's 100-named-plaintiff rule supersedes that law. *Id.*; *see also Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (same).

*Rowland* did not resolve whether the supplemental-jurisdiction statute (§ 1367) permits a court with jurisdiction over other claims to exercise supplemental jurisdiction over Magnuson-Moss class claims without satisfying the 100-named-plaintiff requirement. 73 F.4th at 183 n.10. The Third Circuit previously suggested in a footnote that courts may exercise supplemental jurisdiction over Magnuson-Moss claims even if those claims fall short of that Act's requirements. *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 n.12 (3d Cir. 1997). And the Seventh Circuit has expressly held as much. *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 844–45 (7th Cir. 2014). But numerous courts, including many in this circuit, have disagreed with the *Suber* footnote's dicta. *See, e.g., Costa v. Whirlpool Corp.*, 2025 WL 885245, at *13 (D. Del. Mar. 21, 2025) (collecting cases). Courts in other circuits, too, have disagreed with the reasoning in *Suber*'s footnote and found that Section 1367 does not allow litigants to end-run Magnuson-Moss. *See, e.g.*, *Weisse v. LG Elecs., Inc.*, 650 F. Supp. 3d 1078, 1087 (D. Haw. 2023).

Exercising supplemental jurisdiction in this circumstance would effectively nullify the 100-named-plaintiff requirement. Most (if not all) plaintiffs bringing a Magnuson-

Moss claim also can bring a state-law warranty claim, because the obligations en-forced by Magnuson-Moss usually arise under state law. Additionally, any plaintiff who states an individual Magnuson-Moss claim can get into federal court by virtue of federal-question jurisdiction. If § 1367 permits supplemental jurisdiction over class claims that do not meet the requirements of subsection (d)(3)(C), then as long as a plaintiff can invoke diversity jurisdiction or meet Magnuson-Moss's looser require-ments for individual claims, he or she may also bring a class claim. That reading renders subsection (d)(3)(C) a dead letter, so I must reject it. And other text in sub-section (d)(3) confirms that conclusion. It says "[n]o claim shall be cognizable" in fed-eral district court unless its requirements are met. § 2310(d)(3). That broad language leaves no doubt that supplemental jurisdiction is not available here.

Some courts have suggested that supplemental jurisdiction over Magnuson-Moss claims works differently depending on whether the anchor claim relies on diversity or federal-question jurisdiction. For example, a Wisconsin district court reasoned that though the Act's requirements must supersede the federal-question statute (§ 1331), they do not supersede the diversity-jurisdiction statute (§ 1332). *In re Generac Solar Power Sys. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 735 F. Supp. 3d 1036, 1044 (E.D. Wis. 2024). I respectfully disagree. It would be strange to treat supplemental jurisdiction differently depending on whether the jurisdictional hook is diversity or a federal question given that nothing in the text of § 1331, § 1332, § 1367, or Magnuson-Moss compels that conclusion. And for class actions, the results of this reasoning are untenable. Again, nearly any Magnuson-Moss plaintiff has a state-law claim, since

7

state law creates the obligations that Magnuson-Moss enforces. Thus, permitting supplemental jurisdiction, based on diversity, over Magnuson-Moss class actions that fail to meet the requirements of § 2310(d)(3) would let nearly any Magnuson-Moss class action go forward notwithstanding subsection (d)(3)(C). And while the plaintiffs here rely on the Class Action Fairness Act, not individual diversity jurisdiction, that should make no difference, for there is no reason here to treat different provisions of § 1332 differently.

True, courts in this circuit have permitted supplemental jurisdiction over claims below Magnuson-Moss's amount-in-controversy requirement. *See, e.g.*, *Yagudayev v. BMW of N. Am., LLC*, 2020 WL 6689799, at *4 (D.N.J. Nov. 13, 2020). But amount-in-controversy requirements are different. Courts routinely allow supplemental jurisdiction over claims that do not meet amount-in-controversy requirements. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005). *Allapattah* distinguished between supplemental jurisdiction over claims below the amount-in-controversy requirement, which was permissible, and over claims defeating complete diversity, which was not. *See id.* at 564. Similarly, permitting supplemental jurisdiction over claims falling below Magnuson-Moss's amount-in-controversy requirement is different from permitting class claims that do not meet the 100-named-plaintiffs requirement. The plaintiffs concede that because they fail to name 100 plaintiffs, the Magnuson-Moss class claims must be dismissed. Pls.' Supp. Br., D.I. 58, at 10.

The *Suber* footnote suggesting, in dicta, that courts can exercise supplemental jurisdiction over Magnuson-Moss class claims is "incorrect as a matter of law," a

8

sentiment echoed by a growing number of courts. *Costa*, 2025 WL 885245, at *13 (quoting *Paolucci v. FCA US LLC*, 2024 WL 3355390, at *4 (D.N.J. July 9, 2024)). Because this Court has neither original nor supplemental jurisdiction over them, I dismiss the Magnuson-Moss class claims without prejudice for lack of subject-matter jurisdiction.

### III.   PLAINTIFFS HAVE STANDING TO PURSUE THE NATIONWIDE FRAUD-BY-OMISSION AND UNJUST-ENRICHMENT CLAIMS

Plaintiffs bring claims on behalf of a nationwide class for fraud-by-omission and unjust enrichment. First Am. Compl. ¶¶ 180–201. Yet the named plaintiffs come from only a handful of states. Malibu says this presents a problem, but it does not.

Courts are split on what to do with class claims arising under the law of a state where no named plaintiff lives, was harmed, or otherwise has some meaningful connection. But the bulk of courts to consider the issue, including four circuit courts, punt this problem to the class-certification stage. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 48–51 (1st Cir. 2018); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92–96 (2d Cir. 2018); *Mayor of Balt. v. Actelion Pharms. Ltd.*, 995 F.3d 123, 133–34 (4th Cir. 2021); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *see also In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *4–6 (11th Cir. Nov. 7, 2022). True, some courts dismiss the out-of-state claims. *See McCoy v. Samsung Elecs. Am., Inc.*, 2025 WL 3754157, at *3 (D.N.J. Dec. 29, 2025); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11–12 (D.N.J. Oct. 2, 2013); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *8–10 (D.N.J. Oct. 20, 2011); *Pardini v. Unilever U.S., Inc.*, 961

F. Supp. 2d 1048, 1061 (N.D. Cal. 2013). But most wait until class certification.

That is consistent with the Third Circuit's approach to other class action-standing issues. To have standing, a plaintiff must have a "personal stake" in a lawsuit's outcome. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). Moreover, "standing is not dispensed in gross"—courts must ask whether plaintiffs have standing "for each claim … and for each form of relief that they seek." *Id.* at 431. But in class actions, that rule applies only to named plaintiffs; they need not show that all *unnamed* class members have Article III standing. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366–67 (3d Cir. 2015). Contrary to defendants' view, the Third Circuit's rationale in *Neale* suggests that it would probably follow the circuits holding that named plaintiffs may bring claims based on the law of a state where no named plaintiff lives or was harmed. *See* Opening Br. in Support of Defs.' Mot. to Dismiss, D.I. 34, at 12–13.

To be sure, other rules pose barriers to named plaintiffs bringing claims based on other states' laws. In particular, Rule 23's adequacy, typicality, commonality, and predominance requirements bar bringing claims that are too different from plaintiffs' own claims. *Neale*, 794 F.3d at 368. And differences in state law can undermine plaintiffs' efforts to meet those class-certification requirements. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). But those are Rule 23 hurdles, not questions of Article III standing.

### IV. MANY OF PLAINTIFFS' CLAIMS MUST BE DISMISSED

Standing is one thing; viability on the merits is another. And many of plaintiffs' claims fail on the merits.

### A. Some fraud-by-omission claims survive

The defendants challenge the fraud-by-omission claims five ways. *First*, they assert that the complaint falls short of particularity. Opening Br. 14 (relying on Fed. R. Civ. P. 9(b)). But the complaint adequately sets out "the date, place or time of the fraud, … who made the misrepresentation to whom[,] and its general content." *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, 2022 WL 911253, at *2 (D. Del. Mar. 28, 2022) (cleaned up). It alleges that the owner's manual for each boat stated a higher seating capacity than is safe, given the recall. First Am. Compl. ¶¶ 40, 51, 61, 71, 82, 92, 103, 114, 124, 135. And each plaintiff alleges that he relied on those representations "at the time [he] purchased" his boat. *Id.* That is specific enough.

*Second*, defendants assert that several plaintiffs bought from private sellers, not authorized dealers, which bars recovery. But they do not explain why that is legally relevant to the fraud claims, other than saying that plaintiffs fail to allege "particularized facts regarding any fraudulent statements made at the time of purchase." Opening Br. 14. But again, the allegations about the owner's manuals suffice, and they do not turn on who sold the boats. If defendants mean to suggest that these buyers cannot state a fraud claim, they must cite some authority showing why that is so.

*Third*, they object that plaintiffs never alleged that Malibu or its agents actually knew of the risk of bow swamping. Opening Br. 14. But the complaint does allege

knowledge. *See, e.g.*, First Am. Compl. ¶¶ 20, 182. And though the knowledge allegations are a bit vague, mental states, such as knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b). So that is no issue.

*Fourth*, defendants state they had no duty to disclose the bow-swamping problem. Opening Br. 15. They assert that a duty to disclose "arises only where there is a fiduciary or 'transactional' relationship between the plaintiff and the defendant." *Id.* But their own authority contradicts that assertion. A duty to disclose also arises (under California law) "when the defendant had exclusive knowledge of material facts not known to the plaintiff." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 467 F. Supp. 3d 849, 860 (N.D. Cal. 2020); *see* Opening Br. 15 (citing *In re Volkswagen*). That is what plaintiffs allege happened here. They allege that defendants knew about the bow-swamping problem but nonetheless told plaintiffs (via the owner's manuals) that it was safe to seat people in the bow seating area. So this objection fails the defendants, too.

*Fifth*, they posit that recovery is barred by the economic-loss rule. Opening Br. 16. The economic-loss rule enforces the oftentimes blurry line between contract and tort law by shepherding claims for pure economic loss arising in a contractual relationship into contractual causes of action. Plaintiffs contend that the rule does not apply here because fraudulent inducement to contract is an exception to the economic-loss rule in each state at issue here. Answering Br. 20. But that is true for only some states.

In most states, the economic-loss rule does not apply "where a party has made affirmative representations" that are fraudulent. *Drake v. Toyota Motor Corp.*, 2020

12

WL 7040125, at \*12 (C.D. Cal. Nov. 23, 2020) (emphasis omitted); *see also Scherer v. FCA US, LLC*, 565 F. Supp. 3d 1184, 1191–93 (S.D. Cal. 2021). But, in some states, the fraudulent-inducement exception itself has an exception: A fraudulent-inducement claim must be independent of the plaintiff's breach-of-contract and breach-of-warranty claims. That is, the economic-loss rule bars a claim if, and only if, "the duty breached is a contractual duty." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1226 (10th Cir. 2000) (internal quotation marks omitted), *aff'd on other grounds*, 532 U.S. 588 (2001). The economic-loss rule originated to separate warranty claims from tort claims. *See Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965) (Traynor, C.J.). The independence requirement furthers that goal by confining claims based on the parties' bargain to the domain of contract law. The fraudulent-inducement exception fits this rationale because parties cannot bargain over fraud—fraudulent inducement undermines the validity of the bargain itself.

Courts in different states dispute the precise definition of this exception-within-an-exception. One oft-cited Michigan decision looked at the nature of the fraudulent statements, holding that the fraudulent-inducement exception does not apply if the allegedly fraudulent statements are related to the "quality and characteristics" of the goods sold. *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995). Other courts look at the plaintiffs' *claims*, dismissing tort claims only if they are not "independent" of the contract claims. *Dhital v. Nissan N. Am., Inc.*, 300 Cal. Rptr. 3d 715, 726–27 (Cal. Ct. App. 2022). And some states also let fraudulent-performance claims proceed despite the economic-loss doctrine.

13

*Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273, 275 (Cal. 2004). So to determine which claims proceed, I must examine each state's law.

Michigan bars fraud claims based on allegedly fraudulent representations about "the quality or character of the goods sold." *Huron Tool*, 532 N.W.2d at 545; *see also In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 783 (C.D. Cal. 2022) (Michigan law); *Sunrise Foods Int'l, Inc. v. Agridient, Inc.*, 2025 WL 1643741, at *11 (E.D. Mich. Jan. 24, 2025). So does Tennessee. *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 153–54 (Tenn. 2021).

Here, the plaintiffs' fraud-by-omission claim overlaps substantially with their warranty claims. At bottom, the "fraud" they allege is that the defendants falsely represented that the boats were "fully functional, safe, and capable of seating [the requisite number of passengers]" and omitted details about the inability to safely seat passengers in the bow seating area. Answering Br. 15, 18 (internal quotation marks omitted). Those are the same allegations that plaintiffs rely on for their warranty claims. *See* Answering Br. 11 ("The Class Boats suffer from a dangerous admitted bow-swamping defect. They were designed and/or manufactured with advertised seating capacities that exceeded by two the number of seats that could be safely used.") So under Michigan and Tennessee law, the claims are barred: the alleged fraudulent statements and omissions relate to the quality and characteristics of the boats. In essence, the plaintiffs' fraud claims are wolves in sheep's clothing—contract claims masquerading as tort claims. Since the economic-loss rule exists to keep the wolves away from the sheep, it bars plaintiffs' Michigan and Tennessee fraud claims.

California lets parties to a contract recover in tort when "the alleged harm arises independently from the contract." *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1228 (Cal. 2024). The *Rattagan* court explained that "[i]f the alleged breach is based on a failure to perform as the contract provides, and the parties reasonably anticipated and allocated the risks associated with the breach," the claim is contractual. *Id.* But if the conduct undergirding the claim "w[as] not reasonably contemplated when the contract was entered and the duty to avoid causing such a harm has an independent statutory or public policy basis, exclusive of the contract," the claim sounds in tort. *Id.*

Many courts also put a good deal of weight on the California Supreme Court's refusal to overturn *Dhital v. Nissan North America, Inc.*, 300 Cal. Rptr. 3d 715 (Ct. App. 2022). In that decision, an intermediate appellate court had found that the economic-loss rule did not bar a fraudulent-inducement claim. *Id.* at 718. The state's highest court dismissed the following appeal without commenting on the intermediate court's reasoning. *Dhital v. Nissan N. Am.*, 559 P.3d 1083 (Cal. 2024). This suggests, other courts have reasoned, that *Dhital*'s approach was right. *See Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 2025 WL 3141496, at *4 (N.D. Cal. Nov. 10, 2025) (collecting cases).

The allegations in *Dhital* are materially identical to this case. There, as here, the plaintiffs bought a product (a car) that contained a defect. *Dhital*, 300 Cal. Rptr. 3d at 718. And like here, the *Dhital* plaintiffs alleged that the manufacturer knew about the defect but concealed or failed to disclose facts about it to induce the plaintiffs to

15

buy the cars. *Id.* at 719. Even though both the warranty claim and the fraud claim arose from the defect, the fraud claim was "independent" and so not barred by the economic-loss rule. *Id.* at 724–27. Intermediate appellate-court rulings "must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). With that guiding principle in mind, since the plaintiffs' allegations here nearly mirror *Dhital*'s, I reach the same conclusion—the economic-loss rule does not bar the plaintiffs' California claims.

Under Illinois law, any intentional fraudulent statement can go forward despite the economic-loss doctrine. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–69 (7th Cir. 2012). So the Illinois claim survives. Louisiana does not recognize the economic-loss doctrine; it instead assesses the availability of purely economic damages on an ad-hoc basis. *See PPG Indus., Inc. v. Bean Dredging*, 447 So. 2d 1058, 1061 (La. 1984). The defendants make no argument about the availability of economic damages under Louisiana law. So the claims under Louisiana law may go forward. The Massachusetts claim can also proceed. Though the Bay State polices the contract-tort boundary by preventing plaintiffs from repackaging contract claims as torts, it nonetheless allows economic damages for fraud claims related to inducing a contract. *See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 47–50 (Mass. 2009); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1205 (D. Mass. 1996).

In New Hampshire, "allegations [that] merely relate to a breached promise to perform the terms of the contract or attempt to recharacterize a breach of contract claim

16

as a negligent misrepresentation .… would be barred by the economic loss doctrine." *Wyle v. Lees*, 33 A.3d 1187, 1192 (N.H. 2011). That decision cites cases applying this rule to fraud claims, too. *See id.* (citing *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 964–65 (7th Cir. 2000) and *Closed Cir. Corp. of Am. v. Jerrold Elecs.*, 426 F. Supp. 361, 364 (E.D. Pa. 1977)). And a later decision of the state supreme court distinguished negligence claims based on a breach of a contractual duty (barred by the economic-loss doctrine) from those based on inducement (not barred). *Mentis Scis., Inc. v. Pittsburgh Networks, LLC*, 243 A.3d 1223, 1232 (N.H. 2020). I predict that it would draw the same distinction for fraud claims. Because the plaintiffs allege fraudulent inducement, the New Hampshire fraud claim is not barred.

Likewise, intentional-fraud claims are excluded from Virginia's economic-loss doctrine. *See Ward v. Ernst & Young*, 435 S.E.2d 628, 632 n.2 (Va. 1993); *Thompson v. Specialized Loan Servicing, LLC*, 2026 WL 352874, at \*9 (W.D. Va. Feb. 9, 2026). So the Virginia fraud claim survives.

### B. Several unjust enrichment claims must be dismissed

California does not recognize "unjust enrichment" as such. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 385 (Ct. App. 2023). Instead, California recognizes restitution as a freestanding claim in equity, but its elements parallel those of unjust enrichment: the receipt and unjust retention of a benefit by the defendant *at the expense of the plaintiff. Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 225–26, 229 (Ct. App. 2003). That last requirement bars Ferrando's restitution claim.

Because the defendant must retain a benefit at the plaintiff's expense, used-car

17

buyers generally cannot recover from the cars' manufacturers. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (California law); *Stanley v. Dr. Ing. h.c.F. Porsche AG*, 2025 WL 3199460, at *7 (C.D. Cal. Nov. 13, 2025); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2011 WL 601279, at *6 (D.N.J. Feb. 16, 2011) (California law). Boats are no different.

Ferrando bought his boat on the secondary market from a private seller in 2020, more than a decade after it was made. First Am. Compl. ¶ 47. He alleges nothing showing that his purchase enriched Malibu. So his restitution claim is not viable. Resisting that conclusion, he claims to be "a foreseeable and intended beneficiary of California's equitable protections." Pls.' Supp. Br. at 14. But numerous courts, including those listed above, have refused to travel that path. I too refuse to find that a private-party sale a decade after the boat was manufactured enriches the manufacturer.

Lucero also bought his boat on the secondary market, roughly two decades after it was made. First Am. Compl. ¶ 88. But Michigan's law is less clear than California's. Some courts applying Michigan law agree that a plaintiff must allege that he directly benefitted the defendant. *See, e.g.*, *Trotta v. Am. Airlines, Inc.*, 741 F. Supp. 3d 673, 681 (E.D. Mich. 2024), *aff'd on other grounds*, 2025 WL 1144779 (6th Cir. Apr. 18, 2025); *Hershey v. Cap. Realty Servs., Inc.*, 2009 WL 1163409, at *3 (E.D. Mich. Apr. 28, 2009). Other courts do not. *E.g.*, *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014). Because Michigan's highest court has not resolved this question, I must make an educated guess at how it would do so.

18

A plaintiff may recover from a defendant "who has been unjustly enriched at the expense of" the plaintiff. *Kammer Asphalt Paving Co. v. E. China Twp. Schs.*, 504 N.W.2d 635, 640 (Mich. 1993) (quoting Restatement (First) of Restitution § 1 (1937)). But Michigan courts "employ the fiction [of quasi-contract] with caution." *Id.* (internal quotation marks omitted). Michigan's intermediate appellate courts, perhaps heeding that guidance, usually limit unjust enrichment to cases featuring "direct contact between" the plaintiff and the defendant or where the defendant "received any direct payment or other benefit from" the plaintiff. *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008); *see also Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016). Malibu got no direct payment from Lucero.

Courts have let plaintiffs recover from defendants without showing a direct benefit when the plaintiff bought goods, manufactured by the defendant, through an intermediary. *See In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 878, 895 (E.D. Mich. 2014). But Lucero did not buy his boat from a distributor or another party "in the chain of distribution" like a "third-party dealer[]." *Id.* at 897 (first quotation); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 693 (E.D. Mich. 2020) (second quotation). He purchased the boat "from a private seller." First Am. Compl. ¶ 88. Nor were the proceeds of Lucero's purchase "passed through" to Malibu in any meaningful sense. *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 669 (E.D. Mich. 2008). Viewed this way, none of the plaintiffs' cases shows that a plaintiff can recover on such attenuated facts. *See* Plaintiffs' Supp. Br. at 18–19. So I dismiss Lucero's

19

unjust-enrichment claim.

Orr's unjust-enrichment claim under Tennessee law meets the same fate. Like Ferrando and Lucero, Orr bought his boat on the secondary market from a private seller. First Am. Compl. ¶ 120. The parties agree that Tennessee law does not impose a strict direct-benefit requirement. *See* Defs.' Supp. Br., D.I. 57, at 20; Pls.' Supp. Br. 20. But an unjust-enrichment plaintiff must still plausibly allege the defendant actually got some benefit from the plaintiff. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). And the relationship between the plaintiff and the defendant cannot be "too attenuated." *Wilson Bank & Tr. v. Consol. Util. Dist. of Rutherford Cnty.*, 2022 WL 2092540, at *10 (Tenn. Ct. App. June 10, 2022).

The facts of Orr's unjust-enrichment claim are too attenuated. No money passed from Orr to Malibu. Nor did Orr buy the boat indirectly from Malibu through a distributor or retailer. None of the cases plaintiffs cite permitted recovery against a manufacturer by a buyer of a used good on the secondary market several years after the good's first retail sale. Pls.' Supp. Br. 20. So I dismiss Orr's unjust enrichment claim.

The only basis for Malibu's motion to dismiss the rest of the unjust enrichment claims is that plaintiffs lack standing to bring these claims on behalf of a nationwide class. Opening Br. 12. As I explained above, that is not an issue, whether or not any named plaintiff is from one of the relevant states. *See supra*, Part III. So the rest of the unjust-enrichment claims may proceed.

20

## C. No express-warranty theory survives

Turning to the warranty claims, plaintiffs allege that Malibu violated terms of both express and implied warranties. Plaintiffs point to two relevant express warranties. The first reads: "Malibu Boats will repair substantial manufacturing defects related to materials or workmanship supplied by it during construction of the boat." First Am. Compl. ¶ 228. The other reads: "For the life of the boat, Malibu Boats will repair substantial manufacturing defects related to structural materials or structural workmanship supplied by it during the construction of the hull, deck, liner, stringer or upholstery frame." *Id.*

What do these warranties cover? The first straightforwardly explains that it covers "substantial manufacturing defects." *Id.* The second covers "defects related to structural materials or structural workmanship." *Id.* Under California law, "express warranties covering defects in materials and workmanship exclude defects in design." *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013); *see also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (collecting cases). So both warranties cover only manufacturing defects. A manufacturing defect occurs when a product "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978); *see also Gall v. Smith & Nephew, Inc.*, 71 Cal. App. 5th 117, 124 (2021). That is, a manufacturing defect must result from a "flaw in the manufacturing process." *Brown v. Superior Ct.*, 751 P.2d 470, 474 (Cal. 1988). So workmanship-and-materials warranties cover only defects caused by an error in the manufacturing

21

process—not design defects. Indeed, "the vast weight of authority" rejects claims under warranties like these for design defects. *Nelson v. Nissan N. Am., Inc.*, 2014 WL 7331922, at \*3 (D.N.J. Dec. 19, 2014); *see also Coba v. Ford Motor Co.*, 932 F.3d 114, 122 (3d Cir. 2019) ("[C]ourts have regularly rejected arguments … that a design defect is within the scope of a materials-and-workmanship warranty clause.").

This poses an insurmountable problem for plaintiffs. *See* Defendants' Supp. Br. 9–13. They try to avoid taking a position on whether the alleged defect is due to faulty manufacturing or faulty design. They hedge, asserting that their claims arise from "defective design and/or manufacturing of the Class Boats." First Am. Compl. ¶ 6. But elsewhere plaintiffs show their hand. In one paragraph they complain that the issue is the "bow design." *Id.* ¶ 8. In another, they allege that the "*design* of the Class Boats is defective and dangerous." *Id.* ¶ 149 (emphasis added). And again, in another paragraph, they allege that the "*design* decision" to have a low-slung bow "has major safety implications" and "constitutes a serious *design* defect." *Id.* ¶ 150 (emphases added). Plaintiffs also note that the alleged defect cannot be repaired. *Id.* ¶¶ 10, 11. Based on the complaint, that seems true, because no particular part is faulty. Rather, the alleged harm comes from the positioning of the seats—that is, the *design* of the boat. In short, plaintiffs allege a design defect. Under California law, these warranties do not cover design defects. So I dismiss Blasingame's and Ferrando's express-warranty claims.

The same goes for the Harts' express-warranty claims. Under Illinois law, express warranties covering "defect[s] in material or workmanship under normal use" do not

cover design defects. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 520, 527 (7th Cir. 2003). And Illinois law parallels California's distinction between design and manufacturing defects: "A manufacturing defect differs from a design defect in that the former occurs in only a small percentage of units in a product line, whereas the latter arises when the specific unit conforms to the intended design but the intended design itself … renders the product not reasonably safe." *Blue v. Env't Eng'g, Inc.*, 828 N.E.2d 1128, 1137 (Ill. 2005).

I predict that most of the other states here would follow suit. At least one other federal court thinks Massachusetts would. *Schneider v. BMW of N. Am., LLC*, 2019 WL 4771567, at *6 (D. Mass. Sept. 27, 2019). Same for Michigan and New Hampshire. *See Flores v. FCA US LLC*, 2021 WL 1122216, at *9 (E.D. Mich. Mar. 24, 2021) (applying Michigan law, in addition to the law of other states); *Price v. BIC Corp.*, 702 A.2d 330, 332 (N.H. 1997); *Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, 2014 WL 1976624, at *12 (D.N.H. May 15, 2014). I also predict that Tennessee and Virginia would adopt the same rule. Tennessee courts have not addressed this exact question. But decisions explain that by warranting a good's "workmanship and materials," a manufacturer "is telling the purchaser that the product is in good shape when he takes delivery." *Poppenheimer v. Bluff City Motor Homes, Div. of Bluff City Buick Co.*, 658 S.W.2d 106, 110 (Tenn. Ct. App. 1983). It follows that Tennessee draws the same distinction as the other states discussed here: namely, that "workmanship and materials" warranties cover only products that are not "in good shape" relative to other products from that manufacturing line (i.e., those with manufacturing defects).

23

Finally, Virginia also distinguishes manufacturing defects from design ones. *Knapp v. Zoetis Inc.*, 2022 WL 989015, at *5 (E.D. Va. Mar. 31, 2022). At least one other federal court applying Virginia law has dismissed claims arising from a workmanship-and-materials warranty because the complaint did not plausibly allege a manufacturing defect. *See Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1050–51 & n.10 (N.D. Cal. 2023). So I predict that Virginia would adopt the "majority rule." *Bontly v. Audi of Am., LLC*, 2025 WL 1555993, at *5 (D. Nev. June 2, 2025). Thus, I dismiss the express-warranty claims under Virginia law.

Lucero, one of the secondary-market buyers, has another problem: He lacks privity with Malibu. *See* Opening Br. 18. Michigan law requires a plaintiff to "allege that she was in privity with [the] [d]efendant[]" in order to "properly plead a breach-of-express-warranty claim." *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016); *see Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 n.12 (Mich. Ct. App. 2009) (same). Tennessee applies a similar rule. There, privity is required for express and implied warranty claims arising from pure economic loss. *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003). Because Orr alleges pure economic loss and lacks privity with Malibu, his express-warranty claim is barred.

Malibu says that Ferrando has a privity problem too, but California has a different rule from Michigan and Tennessee. Opening Br. 18. Under the Golden State's law, the absence of privity is not a bar to recovery. Rather, when the buyer and the seller are not in privity, "California law requires a showing that a plaintiff relied on an

24

alleged warranty." *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1174 (C.D. Cal. 2022) (internal quotation marks omitted). Ferrando alleges that he relied on Malibu's representations when purchasing the boat. First Am. Compl. ¶¶ 49–51. So the lack of privity is not a bar, even if the language of the warranty is.

Plus, Malibu points out, the plaintiffs do not allege a defect in the boats' "hull, deck, liner, stringer or upholstery frame." Opening Br. 17. That is right, as far as it goes. The "hull" is the "body or frame" of the boat. *Hull, Oxford English Dictionary* (2025) (def. a). The "deck" is the "floor" of the boat, a "platform extending from side to side of a ship or part of a ship." *Deck, Oxford English Dictionary* (2025) (def. I.2.a). The "stringer," likewise, is part of the bones of a boat, "[a]n inside strake of planking or plating, secured to the ribs and supporting the ends of the beams." *Stringer, Oxford English Dictionary* (2025) (def. 5.b). These definitions show that the warranty covers defects in the boats' components. But, as I explain above, the plaintiffs really allege a defect in the design of the boat as a whole. So to the extent plaintiffs rely on this language, their express-warranty claims fail for a different reason. Resisting this conclusion, plaintiffs argue that I should infer a defect in the manufacturing of the hulls, decks, liners, or stringers that causes the bow swamping. Answering Br. 23. But that suggestion falls well short of being plausible, not least because the plaintiffs elsewhere in the complaint allege a design defect. *See* First Am. Compl. ¶¶ 8, 149–50.

So plaintiffs try to pivot to a different theory. They argue that "Defendants [in the owner's manuals] represented and described the Class Boats as suitable and safe for boating when passengers occupied the full seating capacities and seating

25

arrangements in the bow area." Plaintiffs' Supp. Br. 11. But plaintiffs did not raise that theory in their complaint. There, they asserted an express warranty theory based on the limited warranty language quoted above. *See, e.g.*, First Am. Compl. ¶ 379. Plaintiffs may want to amend their complaint to rely on the owner's manual language instead. Maybe that language would cover the design defect alleged. But for now, I must dismiss all the plaintiffs' express warranty claims.

Also in their supplemental briefing, plaintiffs raise a different warranty, one not mentioned in the complaint. *See* Plaintiffs' Supp. Br. 12. Moreover, it remains to be seen whether most of the plaintiffs would be covered by this "2005 Malibu Transferable Lifetime Limited Warranty." The Harts purchased a 2000 model year boat, as did Snow, Lucero, and Martino. First Am. Compl. ¶¶ 57, 78, 88, 99. Prindle's is a 2001 model year. *Id.* ¶ 67. Mohler's is from 1999. *Id.* ¶ 110. If different warranties apply to different plaintiffs, that may present problems the class certification. But, given no reference to this "Transferrable Lifetime Limited Warranty" in the complaint, I will not pass on its language at this stage. If plaintiffs can plausibly allege that a warranty like this applies to their boats, they may do so in an amended complaint. Until then, the express-warranty claims are dismissed.

Because all of plaintiffs' express-warranty claims are gone, I do not address the balance of Malibu's arguments. *See* Opening Br. 17–18.

### D. Several implied-warranty claims must be dismissed

Malibu moves to dismiss the implied-warranty claims because, it asserts, the plaintiffs have not alleged that the boats were not merchantable. Opening Br. 19. The

plaintiffs respond that they properly alleged a violation of the implied warranty of merchantability because the boats "were clearly sold with the intended and stated purpose of being able to seat the advertised number of passengers" yet failed to live up to that description. Answering Br. 25. But they have not plausibly alleged that such a failure, if true, makes the boats unmerchantable.

California law shows why the plaintiffs are wrong. There are several ways for plaintiffs to show an implied-warranty violation. One is to show that the "product lacks even the most basic degree of fitness for ordinary use." *Hawkins v. Walmart, Inc.*, 766 F. Supp. 3d 1036, 1044 (E.D. Cal. 2025) (internal quotation marks omitted). The other is to allege that the goods did not "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Civil Code § 1791.1(a)(4); *see also Hauter v. Zogarts*, 534 P.2d 377, 385 (Cal. 1975); *Hawkins*, 766 F. Supp. 3d at 1044. The California plaintiffs try both routes but run aground on each.

In the complaint, plaintiffs assert that the boats "are not fit for their ordinary purpose of providing reasonably reliable and safe transportation via waterways." First Am. Compl. ¶ 242. But that is inconsistent with the complaint's more specific facts. The alleged defect does not render the boat unseaworthy: It reduces its passenger capacity by only two (from eight, nine, or ten, depending on the boat). *Id.* ¶¶ 4, 38, 49, 59, 69, 80, 90, 101, 112, 122, 133. But even "a substantial decrease in a product's usefulness is not tantamount to a lack of basic degree of fitness for ordinary use." *Miller v. Fuhu Inc.*, 2015 WL 2085490, at *14 (C.D. Cal. May 4, 2015) (internal quotations omitted). The ordinary use of a boat is boating. And while enough diminished

capacity may, at some point, undercut a boat's fitness for its ordinary purpose, Malibu's boats have not been so changed by the alleged defect as to render them unseaworthy. Several cases the plaintiffs cite—involving one defect that "caus[ed an] engine to tick[] and lose power" and another that "caused vehicles to unexpectedly stall"—further confirm that conclusion. Answering Br. 26. Plaintiffs do not allege that they were unable to use their boats; they complain only of diminished capacity. So plaintiffs cannot show a lack of fitness for ordinary use.

Elsewhere, plaintiffs complain that the boats are unmerchantable because they cannot "seat the advertised number of passengers." Answering Br. 25. They also reference "written labels" and Malibu's "advertisements." *Id.* at 26–28. They never explain specifically what labels or advertisements, other than the owner's manual, they refer to. That is a problem: "Information on an owner's manual or a 'specs' sticker may be relevant to express warranty claims, but neither has anything to do with promises or affirmations of fact made on the container or label for purposes of establishing a breach of implied warranty." *Riley v. Volkswagen Grp. of Am., Inc.*, 2022 WL 17829997, at *1 (9th Cir. Dec. 21, 2022) (cleaned up) (applying Cal. Civ. Code §1791.1). Without specific allegations about what—if any—stickers or labels appeared on the boats at the time of sale, plaintiffs cannot pass via this path either.

Illinois courts also recognize that the "ordinary purpose of" a car is "driving," so it stands to reason they would find that the ordinary purpose of a boat is boating. *Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 791 (Ill. Ct. App. 2007). Plaintiffs nowhere plausibly allege a defect that would prevent the boats from "pass[ing] without

28

objection in the trade." *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*, 794 N.E.2d 829, 838 (Ill. Ct. App. 2003). Compare the defect alleged here with the defects in the cases plaintiffs cite. One was an engine defect that caused "significant power loss, decreased engine performance, hesitation and/or catastrophic engine failure." *Maugain v. FCA US LLC*, 2023 WL 1796113, at \*17 (D. Del. Feb. 7, 2023). In another, engines "could unexpectedly stall at any time due to a fuel pump failure, which could also result in extensive and expensive repairs." *Stanley v. Nissan N. Am., Inc.*, 719 F. Supp. 3d 786, 809 (M.D. Tenn. 2024). Both impair basic functionality; the defect alleged here does not.

Louisiana has not adopted Article 2 of the UCC. *Banque de Depots v. Ferroligas*, 569 So. 2d 40, 43 (La. Ct. App.), *writ denied*, 571 So. 2d 617 (La. 1990). Because Malibu cites no authorities on Louisiana law and instead relies on sources that apply the UCC, I deny Malibu's motion to dismiss the Louisiana warranty claims. *See* Opening Br. 19–21.

As in most other states, in Massachusetts, "[m]anufacturers warrant that their products will be fit for the ordinary purposes for which such goods are used." *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001) (internal quotation marks omitted). Like with California, not just any reduction in usefulness will do. For example, with cars, "a breach of the implied warranty of merchantability occurs only where a defect is so basic as to render the vehicle unfit for its ordinary purpose of providing safe, reliable transportation." *Finigan-Mirisola v. DaimlerChrysler Corp.*, 2007 WL 1977505, at \*1 (Mass. App. Ct. July 9, 2007). At the other end of the

29

spectrum, a defect that "inconvenience[s]" an owner, like a bad smell or a rattling sound, does not breach the implied warranty. *Id.*

The defect plaintiffs allege falls somewhere in the middle. It is more serious than a bad smell or an obnoxious sound. But a reduction in total passenger capacity does not make the boat incapable of "providing safe, reliable transportation" for boaters. *Id.* So like the California claims, the Massachusetts implied-warranty claim falls on the wrong side of the line.

Michigan law is similar. *Kappes v. FCA US LLC*, 829 F. Supp. 3d 214, 276 (E.D. Mich. Mar. 3, 2026). As is New Hampshire's. *See Trombly v. City Cars, LLC*, 343 A.3d 101, 104 (N.H. 2025). And Tennessee's. *Patton v. McHone*, 822 S.W.2d 608, 617 (Tenn. Ct. App. 1991). Lastly, the Virginia claim is the clearest because a leading implied-warranty case in Virginia involved boats. *See Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999). The commonwealth's supreme court rejected an implied-warranty claim for an "offshore sport fishing boat" because the owner "used the boat for offshore fishing," even though the boat had some issues. *Id.* Likewise, because the plaintiffs do not plausibly allege that Malibu's boats are unusable—instead relying only a reduction in seating capacity—their claim fails.

Ferrando, because he lacks privity with Malibu, hits another iceberg. Under California's Song-Beverly Act, manufacturers are liable under an implied-warranty theory for new products. But "for used products, liability extends to the distributor or retail seller and not to the manufacturer, at least where the manufacturer has not issued a new warranty or played a substantial role in the sale of a used good."

30

*Rodriguez v. FCA US LLC*, 557 P.3d 735, 741 (Cal. 2024). So it is unsurprising that Ferrando "concedes" his implied-warranty claim. Plaintiffs' Supp. Br. 15.

The Harts, like Ferrando, bought a used boat. "[U]nder Illinois law, a claim for breach of implied warranty is a contract claim requiring privity of contract." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121 (N.D. Ill. 2019). But the Harts respond that their claim should live, citing a case that explains four exceptions to the privity requirement: (1) claims by "a person in the household of the buyer"; (2) personal injury claims; (3) Magnuson-Moss claims, if the manufacturer "extended a written warranty on the product"; and (4) claims where the manufacturer knows "the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*, 2009 WL 3147315, at *2 (N.D. Ill. Sept. 28, 2009) (internal quotation marks omitted); *see* Answering Br. at 26 (citing *Allstate*). The only exception that might apply is the one for Magnuson-Moss claims.

But that exception does not save the Harts' Illinois cause of action. Illinois courts treat Magnuson-Moss claims and state-law implied-warranty claims as different causes of action with different requirements. This includes different privity requirements: Illinois courts require privity for Illinois-law claims but not for Magnuson-Moss claims based on Illinois-law claims. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030–31 (Ill. 1988). Other federal courts have doubted this interpretation of Magnuson-Moss. *See Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1069 (N.D. Ill. 2004) (collecting cases). They also doubt whether the Illinois Supreme

31

Court's interpretation of Magnuson-Moss, a federal statute, binds federal courts. *See id.* In any event, this much is clear: The Harts lack privity, and that bars their Illinois implied-warranty claim, even if it might not bar their parallel Magnuson-Moss claim. But as I explain below, the Magnuson-Moss claim fails anyway, since none of the plaintiffs have plausibly pleaded that the boats were not merchantable.

Orr also bought his boat secondhand. First Am. Compl. ¶ 120. That bars his implied-warranty claim (which fails anyway for failure to plausibly allege breach). *Leach v. Wiles*, 429 S.W.2d 823, 831–32 (Tenn. Ct. App. 1968). Orr tries to save his claim by asserting that third parties can sometimes bring Tennessee implied-warranty claims. But his sole Tennessee case applied Kansas law, not Tennessee's. *JWM Memphis, LLC v. Terracon Consultants, Inc.*, 2025 WL 938633, at *13 (W.D. Tenn. Mar. 27, 2025); *see* Answering Br. 26 (citing *JWM*). So his implied-warranty claim is out.

Lucero also bought his boat on the secondary market. First Am. Compl. ¶ 88. But Michigan law, unlike California law, permits implied-warranty claims—even for economic loss—without privity. *See Farley v. Country Coach Inc.*, 403 F. App'x 973, 977 (6th Cir. 2010) (collecting cases). Chaffin also lacks privity, which means he cannot recover consequential damages. First Am. Compl. ¶ 131; *see Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 491 S.E.2d 731, 734 (Va. 1997). Because I dismiss Chaffin's claim for failure to plausibly plead that the boats were not merchantable, I will not address whether he plausibly alleges direct or consequential damages.

32

### E. The individual Magnuson-Moss claims rise and fall with the state-law claims (mostly)

The plaintiffs and Malibu agree that the Magnuson-Moss claims rise and fall with the express and implied warranty claims. *See* Answering Br. 28. I agree, though Illinois's treatment of privity presents an odd wrinkle. But I need not iron that out today, since I hold that all the express and implied warranty claims fail because plaintiffs have not plausibly pleaded a breach. So I dismiss the individual Magnuson-Moss claims on the merits.

### F. Most consumer-protection claims survive

Lastly, the plaintiffs bring state-law consumer-protection claims. Malibu moves to dismiss them for failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See* Opening Br. 22–26. As I explained with the fraud claims, Rule 9(b) requires that allegations "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Malibu asserts that the plaintiffs failed to plead the "'who, what, when, where, and how' of the alleged" consumer-protection act violations. Opening Br. 23. As with the fraud claims, I disagree.

The complaint puts Malibu "on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (cleaned up). Consider Blasingame. She alleges that representatives of Malibu Boats spoke to her at a boat show in or around December 2004. First Am. Compl. ¶ 38. She allegedly "reli[ed] on" representations Malibu made, particularly that the boat could seat ten passengers. *Id.* She also allegedly "relied on the representations in the boat's Owner's Manual that the boat had a seating capacity of ten persons." *Id.* ¶ 40. She alleges that

33

the boat cannot safely seat ten passengers, and that Malibu knew this all along but hid it from customers. *Id.* ¶¶ 42–44, 20. This puts Malibu on notice of what statements were fraudulent, when they were made, and by what medium. As for Malibu's knowledge of the defect, that "may be alleged generally." Fed. R. Civ. P. 9(b). The other plaintiffs' allegations are similarly detailed. *See, e.g.*, First Am. Compl. ¶ 66–76. Altogether, these allegations are not the sort of "generic references" inadequate under Rule 9(b). *Frederico*, 507 F.3d at 200. Since Malibu moved to dismiss the consumer-protection claims based on Rule 9(b) only, I deny its motion to dismiss them.

The parties also filed supplemental briefing on Prindle's Louisiana Products Liability Act claim. *See* Plaintiffs' Supp. Br. 16–17; Defendants' Supp. Br. 14–15. Prindle asserts two distinct theories for that claim: one based on an allegedly defective design, and one based on an allegedly inadequate warning. As alleged in the operative complaint, the design defect theory is inadequate. Prindle had to allege alternative designs to plead a claim based on defective design. *See Fuller v. Eisai Inc.*, 513 F. Supp. 3d 710, 718 (E.D. La. 2021); La. Stat. Ann. § 9:2800.56 (requiring that an alternative design exist and that the risk of the original design "outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product"). He did not. He argues in the supplemental briefing that Malibu could have used "an alternative design without [the] 'low-slung bow'" that causes the swamping. Pls.' Supp. Br. at 16. That is akin to saying Malibu could have used a design that was not defective. He needs more specificity than that, even at the motion-to-dismiss stage. *See Rivers v. Remington Arms*

*Co., LLC*, 2018 WL 746392, at \*4 (E.D. La. Feb. 7, 2018). This is not the sort of case where, as with patented drugs, "any alternative design would be in the sole possession of the company that designed it." *Fuller*, 513 F. Supp. 3d at 719. And in any event, the complaint itself does not explicitly mention the possibility or feasibility of any alternative design—it does not even use the phrase "alternative design." Prindle needs more. So as far as he relies on a design theory, his Louisiana Products Liability Act claim is dismissed.

Prindle also alleges a failure-to-warn theory. Plaintiffs' Supp. Br. at 16–17. Because he needed an alternative design only for his design-defect claim, the Louisiana Products Liability Act claim can proceed on that theory.

## V.  I DENY MALIBU'S MOTION TO STRIKE

Malibu moves to strike the plaintiffs' class allegations. Only in rare cases, where certification is impossible on the face of the complaint, do Third Circuit courts address class certification before a motion to certify the class. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 & n.30 (3d Cir. 2011), *opinion reinstated in part*, 2012 WL 2052685 (3d Cir. Apr. 17, 2012). This complaint is not rare: Addressing class certification would be premature at this stage, so Malibu's motion to strike is denied.

\* \* \* \* \*

When a buyer gets less than he bargained for, he deserves recompense. That age-old principle cleaves the plaintiffs' complaint in two. Some of the plaintiffs' claims—for fraud, unjust-enrichment, and consumer-protection act violations—survive

35

because they plausibly allege that Malibu misled them about seating capacity. In short, they got less than they bargained for. The warranty claims fail for the opposite reason. The plaintiffs got what they bargained for under the warranties: boats that float, free from the manufacturing defects covered by the express warranties and fit for use as transportation on the water. But even where Malibu allegedly did wrong, Magnuson-Moss limits this court's jurisdiction over class claims. Accordingly, I partially grant Malibu's motion to dismiss.

As for class certification, we will revisit that issue when the time is right. For now, Malibu's motion to strike is denied.

## Summary Table

| | Relevant State | Magnuson-Moss | Fraud | Unjust Enrichment | Express Warranty | Implied Warranty | Consumer Protection |
|---|---|---|---|---|---|---|---|
| **Nationwide Class** | n/a | Dismissed—No jurisdiction | Survives | Survives | n/a | n/a | n/a |
| **Blasingame** | California | Dismissed—State-law warranty claims failed | Survives | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |
| **Ferrando** | California | Dismissed—State-law warranty claims failed | Survives | Dismissed—No enrichment | Dismissed—No manufacturing defect | Dismissed—Merchantability, no privity | Survives |
| **Harts** | Illinois | Dismissed—State-law warranty claims failed | Survives | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability, no privity | Survives |
| **Prindle** | Louisiana | Survives—Defendants did not brief | Survives—Defendants did not brief | Survives | N/A | Survives—Defendants did not brief | Dismissed in part—design-defect theory inadequately pleaded |
| **Snow** | Massachusetts | Dismissed—State-law warranty claims failed | Survives | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |
| **Lucero** | Michigan | Dismissed—State-law warranty claims failed | Dismissed—Economic Loss Rule | Dismissed—No benefit | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |
| **Martino** | New Hampshire | Dismissed—State-law warranty claims failed | Survives | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |

37

**Summary Table**

| | Relevant State | Magnuson-Moss | Fraud | Unjust Enrichment | Express Warranty | Implied Warranty | Consumer Protection |
|---|---|---|---|---|---|---|---|
| **Mohler** | Tennessee | Dismissed—State-law warranty claims failed | Dismissed—Economic Loss Rule | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |
| **Orr** | Tennessee | Dismissed—State-law warranty claims failed | Dismissed—Economic Loss Rule | Dismissed—too attenuated | Dismissed—No manufacturing defect | Dismissed—Merchantability, no privity | Survives |
| **Chaffin** | Virginia | Dismissed—State-law warranty claims failed | Survives | Survives | Dismissed—No manufacturing defect | Dismissed—Merchantability | Survives |

38